#100036

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO | |
| NORMA MARTIN v. AMERICAN HOME PRODUCTS CORP., et al. | CIV. NO. 98-20034 |
| JOY AUDIBERT, et al. v. AMERICAN HOME PRODUCTS CORP., et al. | CIV. NO. 98-20077 |

FILED APR 16 1998
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## MEMORANDUM AND PRETRIAL ORDER NO. 37
### STATE COURT REMANDS

AND NOW, TO WIT, this 16 day of April, 1998, presently before the court are motions to remand filed in Norma Martin v. American Home Products Corp., et al., Civ. No. 98-20034 and Joy Audibert v. American Home Products Corp., et al., Civ. No. 98-20077. These civil actions were filed in state courts and subsequently removed by defendants to the appropriate federal courts. The actions were then transferred by the Judicial Panel on Multidistrict Litigation to this transferee district court for inclusion in MDL 1203. These civil actions have a number of common issues and will be dealt with in this single Order.

In both civil actions, the removing defendants contend that the action was properly removed from state court to federal court because, excluding fraudulently joined defendants, complete diversity of citizenship exists. The plaintiffs in both actions argue that the actions should be remanded because federal courts, including this transferee court, have no federal question

jurisdiction or diversity of citizenship jurisdiction.

The court has reviewed the parties' moving papers and responses, together with the record of each case as presented to this court, and makes the following general and specific findings.

I. **GENERAL FINDINGS**

　A. **Removal**

The removing party bears the burden of establishing federal jurisdiction. <u>Wilson v. Republic Iron & Steel Co.</u>, 257 U.S. 92, 97 (1921); <u>Boyer v. Snap-On Tools Corp.</u>, 913 F.2d 108, 111 (3d Cir. 1990) <u>cert. denied</u>, 498 U.S. 1085 (1991). The removal statute is "strictly construed against removal" and all doubts are resolved in favor of remand. <u>Id.</u> "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). An action based upon diversity shall be removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought." 28 U.S.C. § 1441(b). Thus, only if an action could originally have been brought in federal court may it be removed from state court to federal court.

　B. **28 U.S.C. §§ 1331 and 1332**

Federal district courts are courts of limited jurisdiction that may hear only those cases and controversies authorized by

Congress or the Constitution. The original jurisdiction of the United States district courts includes actions involving federal questions and those in which complete diversity of citizenship exists. 28 U.S.C. §§ 1331, 1332.

"[T]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. Neither the complaints, nor the notices of removal rely on federal question jurisdiction. The court does not see a basis for federal question jurisdiction. Therefore, only if there is complete diversity of citizenship,[1] or "diversity jurisdiction," may this court exercise subject matter jurisdiction over these actions.

> The district courts shall have original jurisdiction of all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-
> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state, defined in Section 1603(a) of this title, as plaintiff and citizens of a State or of different

---

1. In the class action context, the citizenship of the named representative must be diverse from the citizenship of each defendant. Snyder v. Harris, 394 U.S. 332, 340 (1969); In re School Asbestos Litig., 921 F.2d 1310, 1317 (3d Cir. 1990). Prior to class certification, the court also looks to the citizenship of the named party. See Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc., 958 F. Supp. 947, 962 (D. Del. 1997).

States.

28 U.S.C. § 1332(a). If there is no federal question presented and a non-diverse defendant is named, the only way that a removed defendant can avoid remand to state court is to prove that the non-diverse defendant was fraudulently joined.

C. **Fraudulent Joinder**

In both actions presently before the court, the removed defendants argue that diversity of citizenship exists because the joinder of the non-diverse defendants was fraudulent--that is the non-diverse defendants were named solely for the purpose of destroying diversity. Therefore, they urge the court to disregard the citizenship of those parties, and find that diversity jurisdiction exists.

A defendant's right of removal "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson, 257 U.S. at 97. However, the defendant claiming fraudulent joinder bears a heavy burden of persuasion in demonstrating that the resident defendant was fraudulently joined. Batoff v. State Farm Ins. Co., 977 F.2d 848, 851, 853 (3d Cir. 1992). Joinder is fraudulent where "there is no reasonable basis in fact or colorable ground supporting the claim against the joined [non-diverse] defendants, or no real intention in good faith to prosecute the action against the defendant . . . ." Id. at 851 (quoting Boyer, 913 F.2d at 111); see also McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) (fraudulent joinder is "a term of art [meaning] the

4

plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.").

To avoid remand, the defendant must prove that the claims against the non-diverse defendant are "wholly insubstantial and frivolous," because "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Batoff at 852. Although the existence of jurisdiction is normally determined from the plaintiff's pleadings, when fraudulent joinder is alleged, the court looks beyond the plaintiff's pleadings because the defendant seeking removal is entitled to present the facts showing the joinder to be fraudulent. See Wilson, 257 U.S. 92, 97-99.

D. **Remand**

A motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(a). However, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

II. **SPECIFIC FINDINGS**

In light of the foregoing, the court makes the following

specific findings:

### Norma Martin v. American Home Products Corp., et al., 98-20034

On September 30, 1997, Norma Martin ("Martin") filed this action in the District Court of Hennepin County, Fourth Judicial District for the state of Minnesota. Martin is a citizen of Minnesota. In her second amended complaint, she named Robin Drug, d/b/a Merwyn Drug Co., a Minnesota Corporation, as a defendant. In the only count naming Robin Drug, Count Nine, she alleges that Robin Drug breached its implied warranty of merchantability. The allegations are that Robin Drug "impliedly warranted to prospective purchasers and users, including the plaintiff, that the drug fenfluramine was safe, merchantable, and fit for the ordinary purpose for which such goods are used." She further alleges that this breach "has directly resulted in the plaintiff's damages and injuries set forth above." (2d Am. Compl. 9th Cause of Action.)

On October 27, 1997, the defendants removed this action to federal court. Plaintiff subsequently filed a motion to remand. Defendants, in opposition to that motion, argue that Robin Drug was fraudulently joined to defeat jurisdiction. They cite Minnesota case law that states that there is no instance in which a distributor or wholesaler that has not altered a product has been found to have an implied warranty with the ultimate purchaser. Masepohl v. American Tobacco Co., 974 F. Supp. 1245 (D. Minn. 1997). Plaintiff has not alleged any alteration of the product. However, Defendant's reliance on this case is misplaced

because Robin Drug is not a distributor, but a retailer.

Defendants also argues that Martin can have no strict liability claim because Minnesota law, codified at Minn. Stat. § 5541, precludes claims of strict liability against non-manufacturers. (Def.s' Mem. Opp. Remand at 1.)  Under Minnesota strict liability in tort law, the liability of non-manufacturers is limited, and if the manufacturer of a product is named, the non-manufacturer shall be dismissed unless one of the statutory exceptions can be proven.  Those exceptions include: significant control over the design or manufacture, providing instructions or warnings to the manufacturer, actual knowledge of the defect, or creation of the defect.  Minn. Stat. § 5541. Plaintiff has alleged no facts under which a court could find that defendant fell under an exception.  Therefore, Robin Drug could not be sued under this statute.

Martin maintains that she does not rely on strict liability in tort, but instead on a viable breach of implied warranty theory.[2] However, in Minnesota, strict liability has effectively preempted implied warranty claims where personal injury is involved. See, e.g., Continental Ins. Co. v. Locite Corp., 352 N.W.2d 460, 463 (Minn. App. 1984).  Thus, neither cause of action states a colorable claim against Robin Drug.  Defendants have

---

2.  The court also notes Defendants' argument that plaintiff's claim that Robin Drug should have been aware of the dangers of the product is based upon articles printed in languages other than English, and published after the suit was filed. (Mem. Opp. Remand at 4.)

7

shown that there is no possibility that a state court could find that a cause of action exists against Robin Drug. Defendants have also shown that the amount in controversy requirement has been met. Therefore the court will deny the motion to remand.

**Audibert v. American Home Products Corp., et al.**, 98-20077

On September 18, 1997, Joy Audibert ("Audibert") filed this proposed class action in the Civil District Court for the Parish of Orleans, State of Louisiana. Audibert, the named plaintiff, is a citizen of Louisiana. Among the defendants she named were Ciolino's Pharmacy d/b/a C&G, Inc.[3] and K&B Louisiana Corporation.[4] These corporations are Louisiana corporations with principal places of business in the state of Louisiana. (Pl.s' Mot. Rem. ¶ 18.)

On October 20, 1997, Defendants removed this action to federal court. Defendants argue that diversity of citizenship exists because joinder of Ciolino's Pharmacy and K&B is

---

3. Defendants filed an affidavit by the registered agent of Ciolino's Pharmacy, Inc. stating that it never conducted business under the name "C&G Discount Pharmacy" ("C&G"). Service was made upon the agent of Ciolino's Pharmacy, Inc. Plaintiff argues that even if she does not have a colorable claim against Ciolino's Pharmacy, she has one against C&G. (Mem. Supp. Remand at 4.) There is no indication that C&G was ever served and there is no evidence that the company even exists. The court will not consider C&G's citizenship.

4. Plaintiff also argued that the citizenship of defendant Eckerd Corp. was not diverse. Defendants have filed an affidavit by Eckerd which proves that its citizenship is diverse. Therefore, the court will not consider Eckerd Corp. in this Order.

8

fraudulent for two reasons. First they argue that no recovery can be had against the two corporations and, second, they argue that Audibert's individual claims against these pharmacies are not representative of class claims, and are improperly[5] included in this action. (Mem. Opp. Remand at 6.) Therefore, defendants ask the court to disregard the citizenship of these two defendants and to exercise supplemental jurisdiction over the non-diverse claims under 28 U.S.C. § 1367. The court will disregard the citizenship of the pharmacies but will not exercise supplemental jurisdiction over the claims.

Ciolino's Pharmacy went out of business in 1977. Last year K&B sold its interest to a large national pharmacy chain, Rite Aid, which is of diverse citizenship. Defendants assert that Ciolino's Pharmacy sold very few diet drugs prior to closing and because of the nature of its business it is highly unlikely any plaintiff in this action other than Audibert could have purchased the drugs from Ciolino's Pharmacy. They further assert that because K&B sold its interest to Rite Aid, and Rite Aid assumed "most of" K&B's liabilities, there can be no recovery against

---

5. The Audibert defendants rely on Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996). In Tapscott, the court found that while not all misjoinder is fraudulent, in some cases, misjoinder of a defendant is so egregious that it constitutes fraudulent joinder. Tapscott, 77 F.3d at 1360. In that action, the court found that the joinder was fraudulent. The court severed the misjoined claims and remanded them to state court. Id.

9

K&B.[6]

The court agrees that Ciolino's Pharmacy and K&B are improper defendants in this action. The claims against these two pharmacies are tenuous at best and appear to be unique to Audibert's claim. Coincidentally, Audibert is the named party and it is her citizenship the court scrutinizes. In this purported nationwide class action, the claims against a small local pharmacy that went out of business eleven years ago and another local pharmacy that was acquired by a large national pharmacy chain one year ago are improper at best and fraudulent at worst. From the evidence submitted, it appears that these defendants were fraudulently joined and included in the action for the purpose of destroying diversity of citizenship. Therefore, the court will disregard their citizenship, and find that diversity jurisdiction exists. The court will also sever Audibert's claims against the pharmacies and remand them to the state court from whence they came. Defendants have shown

---

6. The court notes that under Louisiana law, a retailer can be liable to a consumer for breach of an implied warranty only upon a showing that the retailer knew or should have known that the product is unwholesome. <u>Horowitz v. Schwegmann Brothers Giant Supermarkets, Inc., et al.</u>, 376 So.2d 603 (La. App. 4th Cir. 1979).

that the statutory amount in controversy is met with regard to each plaintiff. The court will retain jurisdiction over the remaining claims.[7]

---

7. Because this state court action comes to federal court as a class action, the court refers to it as such for purposes of this Order. However, it notes that federal courts do not automatically accept state court class certifications. In order to proceed in this forum as a class, a motion for class certification must be filed and ruled upon by a federal district court. See, e.g. Johnson v. Gerber Prods. Co., 949 F. Supp. 327, 328 (E.D. Pa. 1996); Marino v. The Sports Authority, 940 F. Supp. 792, 796 (E.D. Pa. 1996); In re Tetracycline Cases, 107 F.R.D. 719, 721 (W.D. Mo. 1985).

11