IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: SHEILA BROWN, et al. v. AMERICAN HOME PRODUCTS CORPORATION | CIVIL ACTION NO. 99-20593 |

**MEMORANDUM AND PRETRIAL ORDER NO. \_\_\_\_\_**

Bartle, C.J.                                                November 15, 2007

Before the court is the motion of Wyeth[1] to enforce the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") and Pretrial Order ("PTO") No. 1415 (Aug. 28, 2000) against class member Emmitt Ray Edwards, as husband and administrator of the Estate of Teresa Ann Edwards, ("plaintiff" or "Mr. Edwards"), and the motion of Mr. Edwards to be allowed to opt-out of Settlement Agreement or, in the alternative, for leave to conduct discovery pertaining to Disciplinary Rule 7-104(a)(1).

On April 27, 1998,[2] Mr. Edwards filed a civil action in the Circuit Court of Fayette County, Kentucky, captioned as

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

2. On July 6, 2000, Mr. Edwards filed a First Amended Complaint.

Edwards v. Baehler, et al., No., 98-CI-1333 (the "Kentucky action"), against various Wyeth entities and other defendants, alleging wrongful death claims as a result of his wife's ingestion of Redux™.[3]  Wyeth seeks to prevent Mr. Edwards from proceeding as the plaintiff in this action.  In response, Mr. Edwards is seeking an extension to opt-out of the Settlement Agreement.[4]  He maintains that the delay was due to "excusable neglect."

This matter is before us as part of our continuing and exclusive jurisdiction over the Settlement Agreement.  See PTO No. 1415, at ¶ 11.  This court has the authority to oversee and supervise the Settlement Agreement, including the power to bar class members from pursuing lawsuits in violation of its terms.  Id.

I.

According to Wyeth's motion and accompanying exhibits, Jeffrey M. Blum, counsel for Mr. Edwards, received actual notice of the Settlement Agreement as early as November, 1999.  In a declaration that Mr. Blum submitted to the Circuit Court of Fayette County in response to an Order to show cause why the

---

3. Redux™ was the trade name under which Wyeth marketed dexfenfluramine, half of the diet drug combination known as "Fen-Phen."  Fenfluramine, containing the same active ingredient as dexfenfluramine, was also marketed by Wyeth, and was known under the trade name Pondimin®.

4. Although plaintiff did not file a response to Wyeth's motion, we are treating plaintiff's motion as a response, as well as an independent motion for relief.

Kentucky action should not be dismissed for non-prosecution, Mr. Blum stated that "[p]laintiff has voluntarily slowed down the litigation" pursuant to a pending class action settlement with Wyeth.  (Wyeth's Mot., Ex. 3, Blum Decl. ¶ 3, Nov. 5, 1999). Shortly thereafter, on November 23, 1999, this court granted preliminary approval of the class action Settlement Agreement and authorized a nationwide notice plan.  See PTO No. 997 (Nov. 23, 1999).  Pursuant to PTO No. 997, class members had until March 30, 2000 to opt-out of the Settlement Agreement.

Wyeth asserts that, as part of the notice plan, detailed notice packages were sent to the attorneys for class members with pending lawsuits against Wyeth apprising them of the March 30, 2000 deadline to opt-out of the Settlement Agreement.[5] In support, Wyeth has submitted the affidavit of Marcus McCloskey, an attorney with one of the law firms representing it, wherein Mr. McCloskey avers that he provided the name of Mr. Blum to the mailing house responsible for mailing notice of the Settlement Agreement.  (Wyeth's Mot., Ex. 5, McCloskey Aff. ¶ 3).[6]  Wyeth also argues that plaintiff and Mr. Blum had constructive notice of the opt-out deadline as a result of the

---

5.  In PTO No. 997, we authorized an extensive two-part nationwide notice plan.  The first part of the plan involved extensive multimedia notice apprising class members of the Settlement Agreement and their right to opt-out no later than March 30, 2000. The second part involved the direct mailing of notices to individual class members and/or their attorneys.

6.  Wyeth admits that it did not have Mr. Edwards' home address at the time of the mailing.

extensive media coverage. Mr. Edwards, however, did not file an Initial Opt-Out form[7] by March 30, 2000.[8]

In August 2000, Mr. Blum sent correspondence to Wyeth's Kentucky counsel in which he stated that he "was not necessarily adverse to [the claims against Wyeth] being handled as part of the class action if she was indeed a member of the class." Wyeth's Mot., Ex. 6. Wyeth's Kentucky counsel informed Mr. Blum that this court had approved the Settlement Agreement in PTO No. 1415 and provided him with a copy of the PTO and the website for the AHP Settlement Trust ("Trust"). In response to Mr. Blum's inquiries concerning the Settlement Agreement, in December 2000, Wyeth's Kentucky counsel instructed Mr. Blum to contact the Trust directly and provided him with the Trust's telephone number, address and website. On May 30, 2001, Wyeth informed Mr. Blum that, as Mr. Edwards did not opt-out of the Settlement Agreement, he was a member of the settlement class, and he was enjoined from

---

7. Class members who properly exercise an Initial Opt-Out "may initiate, continue with, or otherwise prosecute any legal claim" against Wyeth without being limited by the Settlement Agreement. See Settlement Agreement § IV.D.2.c. The Initial Opt-Out form is commonly referred to as the Orange Form #1.

8. The deadline for submitting the Intermediate Opt-Out form was May 3, 2003. See Settlement Agreement § IV.D.3.b. A class member may exercise an Intermediate Opt-Out only if he or she is "FDA Positive." Id. § IV.D.3.a. Under the Settlement Agreement, FDA Positive requires either mild aortic regurgitation or moderate mitral regurgitation diagnosed by a Qualified Physician by an echocardiogram performed between the commencement of diet drug use and May 3, 2003. Id. § IV.D.3.c. As the decedent was not FDA Positive, Mr. Edwards was not eligible to submit an Intermediate Opt-Out form.

pursuing claims against Wyeth in the Kentucky action.  Mr. Blum did not respond.  On January 21, 2003, Wyeth sent a letter to Mr. Blum requesting that he dismiss the pending action.  Wyeth enclosed a stipulation and order of dismissal.  Mr. Blum again did not respond.

In February, 2003, the Circuit Court of Fayette County issued its second notice for Mr. Edwards to show cause why the case should not be dismissed for non-prosecution.  In response, Mr. Blum again informed the court that "[p]laintiff has voluntarily slowed down the litigation because of the ongoing nationwide class action suit and impending settlement creating a fund of settlement proceeds for [Wyeth]."  (Wyeth's Mot., Ex. 18, Blum Decl. ¶ 3, Feb. 20, 2003).  Mr. Blum, however, stated that, as the Settlement Agreement did not compensate hypercoagulability claims, the Settlement Agreement was "quite clearly constitutionally suspect."[9]  Id. ¶ 7.  Mr. Blum informed the Circuit Court of Fayette County that it could adjudicate the constitutionality of the bar against plaintiff's hypercoagulability claims and either dismiss Wyeth or direct it to proceed in the Kentucky action.  Id. ¶ 12.

---

9. Mr. Edwards' "hypercoagulability" claims are considered Settled Claims under the Settlement Agreement.  See Settlement Agreement § I.53.  "Class members who did not exercise an opt-out right agreed to release all claims relating to the use of Pondimin or Redux, regardless of the legal theory or injury alleged, except for claims based on PPH."  PTO No. 2347, at 3-4 (Jan. 18, 2002) (emphasis in original).  As Mr. Edwards does not allege that the decedent had PPH, his claims against Wyeth are Settled Claims.

On February 28, 2003, Wyeth sent a letter to Mr. Blum informing him that the continuing prosecution of the Kentucky action violated PTO No. 1415.  In response, Mr. Blum indicated that he was considering Wyeth's request to dismiss the claims as to Wyeth only.  On March 14, 2003, Mr. Blum declined to dismiss the action.  Wyeth, therefore, filed the present motion to which Mr. Edwards responded by filing a cross-motion.

In Mr. Edwards' motion and accompanying exhibits, he argues that Wyeth "abused the notification provisions of the class action."  Mr. Blum claims that "[he has] no recollection of receiving and [is] reasonably certain that [he] did not receive a class action packet" and that Mr. Edwards and his wife also "do not believe they received a packet ...."  (Blum Aff. at 4, June 21, 2003).  Mr. Edwards also asserts that, as he had a pending lawsuit against Wyeth, he was excluded from the opt-out requirements.  He argues that Wyeth's actions support this assertion because it continued to litigate the Kentucky action by conducting discovery.  In support, Mr. Edwards attached two letters from Wyeth's Kentucky counsel, in which they enclosed routine medical authorizations and cancelled a deposition.  Mr. Edwards asserts that he was under the impression that he needed "to do nothing" if he were not joining in the class action.  He further claims that Wyeth's Kentucky counsel was responsible for any delay after August, 2000 by deflecting his inquiries concerning the Settlement Agreement to the Trust.

In addition, Mr. Blum argues that Wyeth violated Kentucky Rule of Professional Conduct 4.2 by interfering with the attorney-client relationship. Mr. Blum claims that, in January, 2002, a Trust representative spoke with Mrs. Edwards even though she was represented by him and informed her that she did not need an attorney to submit a Blue Form.[10] Thereafter, Mr. Edwards attempted to submit a Blue Form to the Trust and, in June, 2002, he terminated his relationship with Mr. Blum.[11] Although Mr. Edwards subsequently revoked his termination in February, 2003, he argues that the interference in attorney-client relations caused an additional 18-month delay in opting-out of the Settlement Agreement. Mr. Edwards seeks leave to conduct discovery into the alleged violation of Disciplinary Rule 7-104(a)(1).

Plaintiff's allegations of attorney-client interference concern the Trust, not Wyeth. As plaintiff has not served the Trust with this motion, nor is the Trust a party to this proceeding, we are not persuaded by plaintiff's argument to proceed with discovery against the Trust. Most significantly, these allegations are not relevant to our disposition of whether Mr. Edwards timely opted-out of the Settlement Agreement as the

---

10. The Blue Form is one of the forms available to class members to register for Matrix Compensation Benefits with the Trust. The deadline for submitting the form was May 3, 2003. <u>See</u> PTO No. 3253 (Feb. 12, 2004).

11. Wyeth and Mr. Edwards both concede that the Trust has no record of receiving Mr. Edwards' Blue Form.

submission of a Blue Form has no bearing on whether a class member opted-out of the Settlement Agreement.  Submission of a Blue Form has no bearing on the opt-out issue.

## II.

The Settlement Agreement approved by this court in PTO No. 1415 requires the dismissal of pending actions by individuals who did not opt-out of the Settlement Agreement.  The Settlement Agreement provides, in part:

> Upon Final Judicial Approval, the Class Counsel and all Class Members shall cooperate with AHP and any other Released Party to cause the dismissal, with prejudice without costs, of any action against AHP or any other Released Party asserting a Settled Claim brought by or on behalf of any Class Member who has not timely and properly exercised an Initial Opt-Out right ... which are pending in any state, federal or territorial court.

Settlement Agreement § VIII.C.5.  Accordingly, the fact that Mr. Edwards' Kentucky action was pending at the time of the opt-out deadline cannot justify his failure to opt-out of the class.  See PTO No. 2345 (Jan. 16, 2002).

The deadlines imposed by the Settlement Agreement may be extended if the movant can show his or her failure to meet the deadlines was due to "excusable neglect."  In In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 323 (3d Cir. 2001), our Court of Appeals reiterated the Supreme Court's analysis of excusable neglect as set forth in Pioneer.  Four factors should be evaluated when deciding whether excusable neglect exists:  (1) the danger of prejudice to the non-movant; (2) the length of the

delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  Pioneer at 395; Bone Screw, 246 F.3d at 322-23.  We shall discuss each of these factors in turn.

Under the first prong of Pioneer, we must determine the danger of prejudice to Wyeth should the requested extension be granted.  See id.  We find that Wyeth will suffer prejudice if plaintiff's late opt-out request is permitted.  Wyeth will be forced to litigate an additional case that, based on plaintiff's initial representations, it had thought would be part of the settlement class and, as a result, has been dormant for several years.

Second, we must consider the length of the delay and its effect on judicial proceedings.  Id.  Allowing plaintiff to opt-out in this case would "open the floodgates" for similar motions by other class members who had pending cases but failed to opt-out by the relevant deadline.  Moreover, permitting an extension of time to opt-out under these circumstances would frustrate the finality sought to be guaranteed by the Settlement Agreement.  This is especially true given the lengthy delay between the deadline to opt-out, March 30, 2000, and the point in time, that is, June 21, 2003, when plaintiff sought relief from the deadline.

Under the third prong, we must review Mr. Edwards' reason for the delay.  Id.  We do not find the proffered reason

compelling.  Even if plaintiff and Mr. Blum did not receive the individual notice in the mail, Mr. Blum was aware of the class action.  Indeed, in November, 1999, Mr. Blum submitted a declaration to the Circuit Court of Fayette County acknowledging awareness of the Settlement Agreement.  Despite this knowledge, Mr. Blum made no efforts to determine the opt-out deadline.  Given the extensive media coverage, we also find that plaintiff and Mr. Blum also had constructive notice of the opt-out deadline.[12]  We note that Rule 23 only requires that a class be given the "best notice practical under the circumstances."  Fed. R. Civ. P. 23(c)(2); see also PTO No. 1415 § II.B.3 (approving notice requirements).  As we have found that the Rule 23 requirements were met, the fact that a class member did not actually receive the notice that was mailed does not remove him or her from the settlement class.  We have no doubt that plaintiff and Mr. Blum would have become aware of the opt-out requirement and deadline had they acted with due diligence.

We also disagree with plaintiff that it was reasonable for him to believe that his pending lawsuit opted him out of the Settlement Agreement.  In support, plaintiff relies on PTO No.

---

12.  The exhausting and far-reaching nature of the notice campaign included television commercials that were broadcast 106 times for five weeks on network television and 781 times for six weeks on various cable networks.  Additionally, the notice appeared as a one-third page black and white advertisement in four national newspapers, seventy-seven local newspapers, and it appeared as a full page advertisement in Parade, People, Time, Better Homes & Gardens, Ladies Home Journal, Family Circle, McCalls, Women's Day, Redbook, Good Housekeeping, Ebony, and Reader's Digest.  See PTO No. 1415, at 80-82.

2316 (Dec. 7, 2001). Plaintiff's reliance on PTO No. 2316, however, is misplaced.

In PTO No. 2316, we found excusable neglect where the plaintiff filed an opt-out notice on March 30, 2000, the deadline to opt-out, in Texas state court and served it on Wyeth's Texas counsel rather than submit a completed Orange Form to Wyeth's national counsel. There, the plaintiff had a pending lawsuit in Texas at the time PTO No. 997 was issued, but Wyeth did not provide either the plaintiff or her counsel's address to the mailing house that mailed the class action notices. Nevertheless, the plaintiff's counsel contacted Wyeth's Texas counsel about the opt-out requirements. Wyeth's Texas counsel incorrectly instructed the plaintiff to file an opt-out notice with the Texas state court, copying them on the notice, and the plaintiff complied with these instructions. Given the plaintiff's good faith attempts to opt-out by the March 30, 2000 deadline, we found excusable neglect existed under the specific circumstances of that case.

In contrast, Mr. Edwards failed to make any attempt either to determine the opt-out deadline or to opt-out by March 30, 2000. We have found previously that:

> The pendency of an individual action does not excuse class members from filing valid requests for exclusion .... It therefore was not reasonable for plaintiffs' counsel to rely on the pending lawsuit as sufficient to opt out and make no inquiries whatsoever whether anything further had to be done.

-11-

PTO No. 2345, at 8-9.  Here, it simply was not reasonable for plaintiff and Mr. Blum to rely on the pending lawsuit as an effective means of opting-out of the Settlement Agreement.

Finally, we find that plaintiff and Mr. Blum failed to act in good faith by not exercising due diligence to determine the relevant deadline for opting-out of the settlement class. Accordingly, the danger of prejudice to Wyeth, the length of, and reasons for, the delay, and plaintiff's lack of good faith weigh heavily in favor of finding that plaintiff's actions do not constitute excusable neglect.

For the foregoing reasons, Wyeth's motion to enforce the Settlement Agreement and PTO No. 1415 against Mr. Edwards will be granted and Mr. Edwards' motion to be allowed to file any documents needed to opt-out of class action or, in the alternative, to conduct discovery pertaining to Disciplinary Rule 7-104(a)(1) will be denied.  Mr. Edwards will be enjoined from proceeding with his Kentucky action.  PTO No. 1415 prevents a class member from asserting or continuing to prosecute a claim against Wyeth where the class member did not timely opt-out of the settlement class.

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | ) ) | |
| SHEILA BROWN, et al. | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 99-20593 |
| AMERICAN HOME PRODUCTS CORPORATION | ) ) ) | |

**PRETRIAL ORDER NO.** _____

AND NOW, on this 15th day of November, 2007, for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of Wyeth to enforce the Settlement Agreement and Pretrial Order No. 1415 against Emmitt Ray Edwards, as husband and administrator of the Estate of Teresa Ann Edwards, is GRANTED;

(2) the motion of Emmitt Ray Edwards to be allowed to file any documents needed to opt-out of class action is DENIED;

(3) the motion of Emmitt Ray Edwards for leave to conduct discovery pertaining to Disciplinary Rule 7-104(a)(1) is DENIED;

(4) Emmitt Ray Edwards is enjoined from prosecuting the action <u>Edwards v. Baehler, Nephrology Associates, Inc., American Home Products, Inc., Wyeth-Ayerst Laboratories, and</u>

<u>Interneuron Pharmaceuticals, Inc.</u>, No., 98-CI-1333, in the Circuit Court of Fayette County, Kentucky, with respect to Wyeth and its affiliates, and against any other Released Party as defined in the Nationwide Class Action Settlement Agreement;

   (5)  within 14 days of the date of this Order, Emmitt Ray Edwards and his counsel are to take all necessary and appropriate steps to effect the dismissal with prejudice of the foregoing action against Wyeth and its affiliates, and against any other Released Party as defined in the Nationwide Class Action Settlement Agreement; and

   (6)  the Special Master shall serve a copy of this Memorandum and Order on counsel for Emmitt Ray Edwards by overnight mail.

           BY THE COURT:

           <u>/s/ Harvey Bartle III</u>
                   C.J.