IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL NO. 1203 |
| _____ | ) | |
| THIS DOCUMENT RELATES TO: | ) ) | |
| SHEILA BROWN, et al. | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 99-20593 |
| AMERICAN HOME PRODUCTS CORPORATION | ) ) ) | |

## MEMORANDUM AND PRETRIAL ORDER NO.

Bartle, C.J.                                          November 16, 2007

         Before the court is the motion of Margaret Rogers ("Ms. Rogers") for leave to register for benefits under the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth.[1]  Ms. Rogers claims that she timely submitted her Blue Form[2] to the AHP Settlement Trust (the "Trust") by the deadline to register for benefits.  Wyeth, however, maintains that the Trust never received Ms. Rogers' registration form.

---

1.  Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

2.  The Blue Form is one of the forms available to Class Members to register for benefits with the Trust.  Depending upon the benefits sought, the deadline for submitting the form was either August 1, 2002 or May 3, 2003.  Ms. Rogers does not state which benefits she is seeking.

I.

According to Ms. Rogers' motion and accompanying medical records, she was prescribed and took the diet drugs commonly known as fen-phen[3] from approximately February 1996 until April 1996.  As a result of her diet drug ingestion, Ms. Rogers alleges that she was hospitalized for blood clots in her lungs and difficulty breathing and that these breathing problems ultimately caused her to lose her job and home.[4]

Ms. Rogers argues that she "completed the proper Pink[5] and Blue [Forms] by the deadline date.  If I am not mistaken, also a green form[6] as well."  Ms. Rogers does not provide any

---

3.  "Fen-Phen" is widely used to refer to the combination of the diet drugs Fenfluramine and Phentermine.  Fenfluramine, marketed under the brand name Pondimin®, and the later related drug Dexfenfluramine, marketed under the brand name Redux™, were sold by Wyeth and are the subject of the Settlement Agreement.  Ms. Rogers was prescribed Pondimin®.

4.  According to her "Clinical Resume," Ms. Rogers was admitted to the hospital on March 26, 1996 and discharged on March 30, 1996.  Her discharge diagnoses include:  pulmonary embolism, asthma, obesity, pleural effusion and pneumonia.  There is nothing in the Clinical Resume to indicate that Ms. Rogers suffers from valvular heart disease.  The Clinical Resume and prescription records are the only materials that Ms. Rogers submitted in support of her motion.

5.  The Accelerated Implementation Option, commonly referred to as the Pink Form, allowed class members to seek benefits afforded under the Settlement Agreement without regard to Final Judicial Approval.  See Settlement Agreement § V.

6.  Under the Settlement Agreement, Class Members are required to complete the Green Form, in addition to the Blue Form or Pink Form, to receive Matrix Compensation Benefits from the Trust.  Ms. Rogers, however, does not claim to have had an echocardiogram that diagnosed her as either being FDA positive or having mild
(continued...)

time frame as to when she submitted these forms.  According to Ms. Rogers, the Trust misplaced her forms.  Ms. Rogers, however, does not have any proof to confirm that she submitted these forms.  She does not have copies of the completed forms, proof of mailing or proof of receipt.  Ms. Rogers claims that she lost all of her records relating to her claim during the many hurricanes that have swept through Florida in recent years.  She also maintains that she attempted to contact her prescribing physician who purportedly completed a form on her behalf but was told that, as so much time had passed, he no longer had any of her medical records.  Under these circumstances, Ms. Rogers requests that the court grant her leave to register with the Trust for benefits.

Wyeth maintains that the Trust never received any registration forms from Ms. Rogers.  Wyeth has submitted a declaration from Scott Monroe, Esquire, an attorney at BrownGreer PLC, the law firm retained by Wyeth to serve as liaison counsel to the Trust.  Mr. Monroe avers that his office searched the database of all the claim forms the Trust received through January 3, 2007.  The database search confirmed that no claim forms were submitted by Ms. Rogers.  See Monroe Decl. at ¶¶ 3-4, attached to Wyeth's response.

According to Wyeth, Ms. Rogers did not contact the Trust until October 11, 2005 to verify her registration status.

---

6.(...continued)
mitral regurgitation, which is one of the requirements for
seeking Matrix Compensation Benefits.

-3-

In support, Wyeth has submitted a declaration from C. Patton
Tidmore, the Director of Communications for the Trust.  Mr.
Patton avers that a review of the Trust's call records revealed
that Ms. Rogers only called the Trust on three occasions, the
first of which occurred on October 11, 2005.  See Tidmore Decl.
at ¶ 4, attached to Wyeth's response.  After being notified by
the Trust that it never received her registration materials, Ms.
Rogers submitted a letter to the court requesting relief from the
registration deadline.  On December 15, 2006, this letter was
docketed as the motion that is presently before us.

II.

        The Settlement Agreement approved by this court in
Pretrial Order ("PTO") No. 1415 provides strict deadlines for
Class Members to seek certain benefits from the Trust.  Depending
upon the benefits sought, the Settlement Agreement requires Class
Members to register with the Trust by either August 1, 2002 or
May 3, 2003.[7]  See Settlement Agreement §§ IV.A, IV.B, VI.C.2.

        Ms. Rogers contends that she timely mailed her
registration forms to the Trust but that the Trust misplaced her
forms.  Under the mailbox rule, items placed in the mail are
presumed received by the addressee.  See In re Cendant Corp.

---

7.  As discussed supra, Ms. Rogers does not state which benefits
she is requesting.  The August 1, 2002 deadline applies to Class
Members who seek:  (1) a free echocardiogram in the Screening
Program; and (2) a prescription cost refund.  See Settlement
Agreement § IV.A.  The May 3, 2003 deadline applies to Class
Members who seek:  (1) reimbursement for a privately-obtained
echocardiogram; (2) cash or additional medical services; and (3)
Matrix Compensation Benefits.  See id. & § IV.B.

Prides Litig., 311 F.3d 298, 304 (3d Cir. 2002).  "The
presumption arises upon proof that the item was properly
addressed, had sufficient postage, and was deposited in the
mail."  Id. (emphasis added).

        Ms. Rogers has submitted no proof in support of her
contention that she timely mailed her registration forms to the
Trust.  She does not have copies of the completed forms, proof of
mailing or proof of receipt.  Moreover, she has provided no time
frame as to when she allegedly mailed these forms.  Nor has she
provided any specific information as to the purported damage
referenced in relation to "the several hurricane[s] we've had in
the last two years ...."  She does not describe which, if any,
forms were damaged, the extent of the damage or the manner in
which the damage occurred.  Finally, Ms. Rogers' motion does not
provide sufficient detail of a routine mailing practice to
establish a presumption that her registration forms actually were
mailed to the Trust.  Based on the record before us, we find that
Ms. Rogers did not file a registration form with the Trust by
either August 1, 2002 or May 3, 2003, as required under the
Settlement Agreement.

III.

        The deadlines imposed by the Settlement Agreement may
be extended if the movant can show his or her failure to meet the
deadlines was due to "excusable neglect."  In In re Orthopedic
Bone Screw Prods. Liab. Litig., 246 F.3d 315, 323 (3d Cir. 2001),
our Court of Appeals reiterated the Supreme Court's analysis of

-5-

excusable neglect as set forth in <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.</u>, 507 U.S. 380 (1993).  Four factors should be evaluated when deciding whether excusable neglect exists:  (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  <u>Pioneer</u>, 507 U.S. at 395; <u>Bone Screw</u>, 246 F.3d at 322-23.  We shall discuss each of these factors in turn.

Under the first prong, we must consider the danger of prejudice to Wyeth should an extension be granted.[8]  Wyeth argues that granting Ms. Rogers an extension to register will "open the floodgates" for similar claims and deny it the finality for which it bargained in the Settlement Agreement.  The finality provided by the Settlement Agreement to Wyeth, the Trust and other Class Members has been of paramount importance throughout the administration of the Settlement Agreement.  If Ms. Rogers' motion were the only one of its kind, her late registration may pose little danger of prejudicing the non-movants.  Ms. Rogers, however, is certainly not alone.  "Although the admission of any particular claimant may not in itself cause a substantial drain on the Trust, allowing this claimant to escape the firm deadlines set forth in the Settlement Agreement ... will surely encourage

---

8.  The Trust did not file a response to Ms. Rogers' motion.

-6-

others to seek the same relief." PTO No. 3923, at 3 (Sept. 10, 2004).

Second, we must consider the length of the delay in meeting the registration deadline. The August 1, 2002 and May 3, 2003 deadlines to register for potential benefits were not arbitrary dates. These dates were carefully chosen in light of evidence that the later the diagnosis the greater the likelihood that the Class Member's mitral valve regurgitation was not caused by diet drugs. See In re Diet Drugs, 2000 WL 1222042, at *46-*47 (E.D. Pa. Aug. 28, 2000). The deadlines to register with the Trust were set to give Class Members ample time to complete the necessary forms and submit them to the Trust. In Ms. Rogers case, she waited until October 2005, more than three (3) years after the August 1, 2002 deadline and more than two (2) years after the May 3, 2003 deadline, before contacting the Trust to determine her registration status. This is not an insignificant amount of time. To allow Ms. Rogers the lengthy extension sought would undermine the finality of the Settlement Agreement and open the door to similarly situated Class Members who are presently time-barred.

Third, we must evaluate the reasons for the delay. Ms. Rogers merely asserts that she timely submitted the proper registration forms to the Trust. She provides no explanation as to why she waited until October 2005 to verify her registration status with the Trust. We find that Ms. Rogers has not provided a valid reason to explain the delay.

Finally, we have no reason to doubt that Ms. Rogers acted in good faith.  However, the danger of prejudice to non-movants and the length of, and reasons for, the delay weighs heavily in favor of finding that Ms. Rogers' actions do not constitute excusable neglect.  Accordingly, Ms. Rogers is not entitled to extensions of the applicable deadlines, and she is out of time to register with the Trust for benefits.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/    )
FENFLURAMINE/DEXFENFLURAMINE)      )    MDL NO. 1203
PRODUCTS LIABILITY LITIGATION      )
_____  )
                                   )
THIS DOCUMENT RELATES TO:          )
                                   )
SHEILA BROWN, et al.               )
                                   )
         v.                        )    CIVIL ACTION NO. 99-20593
                                   )
AMERICAN HOME PRODUCTS             )
CORPORATION                        )

**PRETRIAL ORDER NO.**

         AND NOW, on this 16th day of November, 2007, for the
reasons stated in the accompanying Memorandum, it is hereby
ORDERED that the motion of Margaret Rogers for leave to register
for benefits with the AHP Settlement Trust is DENIED.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                    C.J.