```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/    )
FENFLURAMINE/DEXFENFLURAMINE)      )   MDL NO. 1203
PRODUCTS LIABILITY LITIGATION      )
_____)
                                   )
THIS DOCUMENT RELATES TO:          )
                                   )
SHEILA BROWN, et al.               )
                                   )
        v.                         )   CIVIL ACTION NO. 99-20593
                                   )
AMERICAN HOME PRODUCTS             )
CORPORATION                        )
```

**MEMORANDUM AND PRETRIAL ORDER NO. \_\_\_\_\_**

Bartle, C.J.                                      December 11, 2007

Before the court is the motion of Deborah Shoaf ("Ms. Shoaf" or "claimant") to compel the AHP Settlement Trust ("Trust") to provide her with class benefits. Ms. Shoaf signed an Intermediate Opt-Out form, purportedly waiving her rights to any benefits under the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth.[1] Ms. Shoaf, it now turns out, was ineligible to exercise the Intermediate Opt-Out right because she had been diagnosed as FDA

---

1. Along with certain other restrictions, a Class Member may exercise an Intermediate Opt-Out if he or she has <u>not</u> been diagnosed as FDA Positive by an echocardiogram prior to September 30, 1999 and has been diagnosed as FDA Positive by an echocardiogram performed between the commencement of diet drug use and the end of the Screening Period. <u>See</u> Settlement Agreement §§ IV.D.3.a, II.C.2.(b).

Positive prior to September 30, 1999.  Accordingly, Ms. Shoaf requests to return to the Settlement Class.

I.

According to the parties' submissions and accompanying exhibits, claimant ingested Pondimin® from March 1996 until May 1997.[2]  On October 23, 1997, Ms. Shoaf was diagnosed with mild aortic regurgitation by an echocardiogram, which meets the definition of FDA Positive.[3]  This diagnosis was confirmed by a subsequent echocardiogram conducted on September 15, 1999.

On August 10, 2001, Ms. Shoaf, who was pro se at the time, submitted a completed Blue Form[4] to the Trust.  In April 2002, she retained counsel to represent her.  According to Wyeth, claimant provided her counsel with copies of her October 23, 1997 and September 15, 1999 echocardiogram reports, which demonstrated her FDA Positive diagnosis.  On July 11, 2002, at her counsel's request, she received another echocardiogram, which revealed that her level of aortic regurgitation had progressed to moderate.  In September 2002, her counsel requested that she complete a series

---

2.  In her motion, Ms. Shoaf states that she ingested Redux™.  In her Blue Form and correspondence, however, she reports that she ingested Pondimin®.

3.  Under the Settlement Agreement, an FDA Positive diagnosis based on an echocardiogram conducted prior to September 30, 1999 requires "a condition in which the Cardiologist interpreting the Echocardiogram, in the ordinary course of medical treatment, has issued a written report which clearly states that the individual has mild or greater aortic regurgitation and/or moderate or greater mitral regurgitation ...."  Settlement Agreement § I.22.

4.  The Blue Form is one of the forms available to Class Members to register for certain benefits with the Trust.

of Interrogatories and Request for Production of Documents. One of the Interrogatories asked for the dates and results of claimant's echocardiograms. Ms. Shoaf identified her October 23, 1997 and September 15, 1999 echocardiograms, and she noted that the resulting diagnosis was "regurgitation."

In January 2003, her counsel instructed her to sign an additional Blue Form and an Intermediate Opt-Out form,[5] commonly referred to as an Orange Form #2,[6] so that she could opt-out of the Settlement Agreement. She signed both forms on January 14, 2003. In February 2003, her counsel submitted her additional Blue Form to the Trust, which listed only her July 11, 2002 echocardiogram. In May 2003, her counsel submitted her Orange Form #2. The Orange Form #2 contained a certification, which stated, in pertinent part: "I HEREBY CERTIFY, SUBJECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF, MY CIRCUMSTANCES QUALIFY ME TO EXERCISE AN INTERMEDIATE OPT-OUT RIGHT UNDER THE SETTLEMENT AGREEMENT" (emphasis in original). Only Ms. Shoaf's July 11, 2002 echocardiogram was listed on the form.

On June 27, 2003, her counsel filed a multi-plaintiff civil action entitled Phelps-Dorris, et al. v. Wyeth, et al., in Georgia state court. Ms. Shoaf was one of more than a thousand plaintiffs joined in this lawsuit. Wyeth removed the Phelps-

---

5. The deadline for submitting the Intermediate Opt-Out form was May 3, 2003. See Settlement Agreement § IV.D.3.b.

6. The various forms used in the course of implementing the Settlement Agreement commonly are identified by their color.

Dorris action to federal court where it subsequently was transferred to MDL No. 1203 and assigned MDL docket number 04-20096.  On May 21, 2004, this court issued Pretrial Order ("PTO") No. 3555, severing this multi-plaintiff action and ordering each plaintiff to file a severed and amended complaint by July 19, 2004.  See PTO No. 3555 (May 21, 2004).  Ms. Shoaf did not do so.

On December 21, 2004, Wyeth filed a motion to dismiss with prejudice the claims of Ms. Shoaf and twenty-seven other plaintiffs for failure to file a severed and amended complaint. All twenty-eight plaintiffs were represented by Fleming & Associates, L.L.P., hereinafter "Fleming."  Fleming filed a response, which merely stated that the twenty-eight plaintiffs did not "file severed amended complaints due to various impediments to the continuation of their claims, including but not limited to:  (1) the filing of a pink form with the AHP Settlement Trust; (2) the existence of a pre-1999 echocardiogram that was FDA positive; (3) the filing of a green form with the AHP Settlement Trust; (4) the existence of a release from a prior settlement with Wyeth; or (5) at the request of Plaintiff." Pl.'s Resp. Ex. H.  Counsel's response did not specify which impediment or impediments applied to Ms. Shoaf.  Moreover, the response did not object to Wyeth's motion to dismiss but simply stated that the plaintiffs "wish to remain members of the class, and to retain all rights that they have in the class."  Id. Wyeth thereafter filed a reply in which it stated that four of the twenty-eight plaintiffs had revoked their opt-outs with its

consent. Ms. Shoaf was not one of the four. Wyeth therefore agreed that the dismissal of those four plaintiffs should not affect their rights under the Settlement Agreement. It maintained, however, that the other twenty-four plaintiffs should be dismissed with prejudice. It asserted that PTO No. 3370 (Mar. 24, 2004), which governed the dismissal of claims for failure to file a severed and amended complaint, contained no provision for plaintiffs to retain any rights under the Settlement Agreement. Ms. Shoaf's counsel did not challenge Wyeth in this regard.

Thus, Ms. Shoaf was not included among the four plaintiffs Wyeth agreed should retain their rights under the Settlement Agreement. Nor is there any indication in the record that Fleming sought Wyeth's consent for Ms. Shoaf to retain any Settlement Agreement rights. On May 4, 2005, this court issued PTO No. 5152, in which we dismissed Ms. Shoaf's claims with prejudice.

It was not until May 31, 2006, over a year later, that Ms. Shoaf asked for Wyeth's permission to revoke her intermediate opt-out. Wyeth denied her revocation request. It asserted that PTO No. 5152 was a decision on the merits of her claim, and thus, she was precluded from seeking benefits from Wyeth or the Trust. In response, Ms. Shoaf filed the motion that is presently before us.

II.

The Settlement Agreement approved by this court in PTO No. 1415 establishes strict requirements for those who are eligible to exercise the Intermediate Opt-Out right. The Settlement Agreement provides, in part:

> All Diet Drug Recipients ... who are <u>not</u> members of Subclasses 2(a), 2(b) or 3, and who have been diagnosed by a Qualified Physician as FDA Positive by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period ... are eligible to exercise a right to Intermediate Opt-Out.

Settlement Agreement § IV.D.3.a (emphasis added). Members of Subclass 2(b) are defined as:

> Diet Drug Recipients in the Settlement Class (1) who ingested Pondimin® and/or Redux™ for sixty-one (61) or more days, and (2) who have been diagnosed by a Qualified Physician as FDA Positive by an Echocardiogram which was performed between the commencement of Diet Drug use and September 30, 1999 ...."

<u>Id.</u> at § II.C.2.(b). The Settlement Agreement further explains that the rights associated with exercising an Intermediate Opt-Out are subject to certain provisions, all of which depend on the Class Member "timely and properly" exercising the Intermediate Opt-Out right. <u>Id.</u> § IV.D.3.c. Finally, the Official Notice of Final Judicial Approval states that "[e]ach opt-out right has certain eligibility requirements that <u>must</u> be met <u>before</u> a Class Member can opt out of the Settlement." Official Notice of Final Judicial Approval, p. 14 (emphasis added).

Ms. Shoaf, we have now learned, was a member of Subclass 2(b): (1) she ingested Pondimin® from March 1996 until May 1997, which is well over sixty-one (61) days; and (2) she was diagnosed by a Qualified Physician as FDA Positive by her October 23, 1997 and September 15, 1999 echocardiograms, both of which occurred prior to September 30, 1999. As a member of Subclass 2(b), Ms. Shoaf was ineligible to exercise the Intermediate Opt-Out right. Pursuant to the Settlement Agreement, exercising the Intermediate Opt-Out right is contingent upon meeting the eligibility requirements to do so. Because Ms. Shoaf did not properly exercise such right, the submission of her Orange Form #2 had no effect on her rights as a Class Member. Nevertheless, this does not mean that Ms. Shoaf remains a member of the Settlement Class.

In the Phelps-Dorris action, as noted above, Ms. Shoaf was one of over 1,000 plaintiffs who asserted claims against Wyeth. Pursuant to PTO No. 3370, we severed this multi-plaintiff action and ordered each plaintiff to file a severed and amended complaint. See PTO No. 3555. Ms. Shoaf, however, did not file a severed and amended complaint apparently because her counsel realized that she was not a proper Intermediate Opt-Out. At this point, Ms. Shoaf's counsel should have dismissed her claims against Wyeth voluntarily. He did not do so. Instead, Wyeth filed a motion to dismiss her claims for failure to comply with PTO Nos. 3370 and 3555. After the filing of this motion, Ms. Shoaf could still have dismissed her claims voluntarily or sought

Wyeth's consent to retain rights under the Settlement Agreement, as four other plaintiffs did who were represented by Fleming. Again, as far as we can tell from the record, her counsel did neither. Therefore, on May 4, 2005, we dismissed Ms. Shoaf's claims with prejudice. See PTO No. 5152.

> Pursuant to Federal Rule of Civil Procedure 41(b):
>
> For failure of the plaintiff ... to comply with ... any order of court, a defendant may move for dismissal of an action or any claim against defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, <u>operates as an adjudication upon the merits.</u>

Fed. R. Civ. P. 41(b) (emphasis added). As we dismissed Ms. Shoaf's claims for failure to comply with PTO Nos. 3370 and 3555, the dismissal of her claims operated as an adjudication on the merits.[7] The Settlement Class, however, "does not include any individuals whose claims against [Wyeth], arising from the use of Diet Drugs, have been resolved by judgment on the merits ...." Settlement Agreement § II.B. Ms. Shoaf, therefore, is excluded from the Settlement Class. Accordingly, she may not seek benefits under the Settlement Agreement, and her motion will be

---

7. We also note that following the dismissal of her action on May 4, 2005, Ms. Shoaf could have filed a motion under Rule 60(b)(1) of the Federal Rules of Civil Procedure for relief from judgment. Regardless of the merits of such a motion, it is now too late for Ms. Shoaf to seek relief from the PTO No. 5152 which dismissed her case. Fed. R. Civ. P. 60(c)(1).

denied. Unfortunately, she will have to look elsewhere for relief.

```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/    )
FENFLURAMINE/DEXFENFLURAMINE)      )    MDL NO. 1203
PRODUCTS LIABILITY LITIGATION      )
_____  )
                                   )
THIS DOCUMENT RELATES TO:          )
                                   )
SHEILA BROWN, et al.               )
                                   )
          v.                       )    CIVIL ACTION NO. 99-20593
                                   )
AMERICAN HOME PRODUCTS             )
CORPORATION                        )
```

**PRETRIAL ORDER NO.** _____

AND NOW, on this 11th day of December, 2007, for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that the motion of Deborah Shoaf to compel the AHP Settlement Trust to provide class benefits is DENIED.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                    C.J.