IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | ) ) ) | |
| LORRAINE D. ARAGON | ) ) | |
| v. | ) ) | |
| WYETH, et al. | ) | CIVIL ACTION NO. 08-20001 |

**MEMORANDUM AND PRETRIAL ORDER NO.** _____

Bartle, C.J.                                                August 19, 2008

Before the court is the motion of plaintiff Lorraine D. Aragon ("Ms. Aragon") to remand to the Superior Court of the State of California, County of Los Angeles her claims against defendants Wyeth,[1] American Home Products Corporation, and A.H. Robins Company (collectively "Wyeth"), James C. Caillouette, M.D. and James C. Caillouette, M.D., Inc. (collectively "Dr. Caillouette"), Orlando's Fairmont Pharmacy, Inc. ("Orlando's"), and Does 1 through 100.  Ms. Aragon maintains that complete diversity of citizenship is lacking.  See 28 U.S.C. § 1332.

I.

Plaintiff, a citizen of the state of California, has sued Wyeth, the manufacturer of Pondimin® and Redux™, as well as

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation ("AHP").

Dr. Caillouette, the physician who allegedly prescribed Pondimin® for her, and Orlando's, the pharmacy that allegedly filled her Pondimin® prescriptions. Wyeth is diverse of citizenship from plaintiff while Dr. Caillouette and Orlando's are not. Plaintiff asserts claims against defendants for negligence, medical negligence and negligence per se, strict liability, breach of implied and express warranties, deceit by concealment, negligent misrepresentation, and violation of California Business and Professions Code §§ 17200 and 17500. No federal claim for relief is alleged.

    Ms. Aragon originally filed her complaint in the Superior Court of the State of California, County of Los Angeles on September 21, 2007. Wyeth timely removed the action to the United States District Court for the Central District of California on the ground that plaintiff fraudulently joined Dr. Caillouette and Orlando's and that their citizenship should be disregarded for the purpose of determining diversity jurisdiction. The action was then transferred to this court as part of MDL No. 1203.

II.

    Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court ...." 28 U.S.C. § 1441(a) (2002). Federal district courts have original jurisdiction over all civil actions between citizens of different states if the

amount in controversy exceeds $75,000, exclusive of interest and costs.  See 28 U.S.C. § 1332(a) (2005).  Complete diversity, however, is required.  See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996); see also Strawbridge v. Curtiss, 7 U.S. 267 (1806).  If an action originally filed in a state court could have been brought in federal court pursuant to diversity jurisdiction, the defendants may remove it to federal court if they are not citizens of the state in which the action was originally filed.  See 28 U.S.C. §§ 1441(a) & (b), 1446.  If a federal court subsequently determines that it does not have subject matter jurisdiction over a removed action or proper removal procedures were not followed, it must remand the action to the state court.  See 28 U.S.C. § 1447(c)(1996); see also Balazik v. County of Dauphin, 44 F.3d 209, 213 (3d Cir. 1995).

      Wyeth bears a heavy burden in seeking to have the court ignore the citizenship of the non-diverse defendant, Dr. Caillouette, on the ground that he was fraudulently joined.[2]  See Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).  In determining whether Wyeth has met its burden, we must "resolve all contested issues of substantive fact in favor of the plaintiff."  Id.  We also are cognizant of the fact that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand."  Steel Valley Auth. v.

---

2.  Plaintiff has conceded that the citizenship of Orlando's should be disregarded for purposes of deciding whether complete diversity exists.

Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citation omitted).  The heavy burden placed upon Wyeth to establish fraudulent joinder does not mean we must accept blindly whatever plaintiff may assert no matter how incredible or how contrary to the overwhelming weight of the evidence.  The Supreme Court made it clear in Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 98 (1921), that if a plaintiff contests a defendant's assertion that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the evidence.  We are not to decide automatically in favor of remand simply because some facts may be in dispute.

As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard. See In re Korean Air Lines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987); see also In re Ikon Office Solutions, Inc., 86 F. Supp. 2d 481, 485 (E.D. Pa. 2000).  We must decide whether there is "a reasonable basis in fact or colorable ground supporting the claim against the joined defendant."  Boyer, 913 F.2d at 111.

On matters of substantive law, "[i]f there is even a possibility that a state court would find that a plaintiff's complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. (citation omitted).  We are mindful that our inquiry into Wyeth's claim of fraudulent joinder is less searching than what is permissible when a party seeks to dismiss a claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  See Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992); see also Gaul v. Neurocare Diagnostic, Inc., No. 02-CV-2135, 2003 WL 230800, at *2 (E.D. Pa. Jan. 3, 2003).  Simply because a claim against a party may ultimately be dismissed for failure to state a claim or is otherwise barred does not necessarily mean that the party was fraudulently joined.  The test is whether a claim is colorable, that is, not "wholly insubstantial and frivolous."  Batoff, 977 F.2d at 852.

### III.

Wyeth argues that plaintiff's complaint against Dr. Caillouette is barred by the California statute of limitations, which provides that a suit against a health care provider must be brought within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."  CAL. CIV. PROC. CODE § 340.5 (West 1975).  A plaintiff, therefore, must file a complaint for medical negligence:  (1) "within one year after said plaintiff discovers, or should have discovered, the injury"; and (2) "within three years after the injury, unless one of the three enumerated exceptions applies."[3] Steingart v. White, 243 Cal. Rptr. 678, 681 (Cal. Ct. App. 1988)

---

3.  The statute provides that the limitations period only may be tolled for one of the following reasons:  (1) fraud; (2) intentional concealment; or (3) the presence of a foreign object. Steingart v. White, 243 Cal. Rptr. 678, 681 (Cal. Ct. App. 1988) (quoting CAL. CIV. PROC. CODE § 340.5).  Ms. Aragon does not allege that any of these applies to her case.

(citing Hills v. Aronsohn, 199 Cal. Rptr. 816, 818 (Cal. Ct. App. 1984)). Unlike the three-year statute of limitations, which begins to run when "[damage] has become evidenced in some significant fashion, whether or not the patient/plaintiff actually becomes aware of the injury," the one-year period commences only when the plaintiff understands the negligent cause of her injury. Marriage & Family Ctr. v. Pottel, 279 Cal. Rptr. 475, 478-79 (Cal. Ct. App. 1991).

Wyeth argues that Ms. Aragon failed to file her complaint against Dr. Caillouette within one year of discovering or being on inquiry notice of the negligent cause of her injury.[4] In support, Wyeth relies on a statement by Dr. Shelly Shapiro in a medical report dated February 14, 2007 that Ms. Aragon became short of breath with decreasing exercise tolerance over the previous 6 to 12 months (February to August 2006). Wyeth asserts that this statement shows Ms. Aragon should have been on notice as early as February 2006 that her breathing problems were a result of her Diet Drug use. In addition, Wyeth argues that Ms. Aragon should have been on notice because, in May 2006, she complained of respiratory problems to her primary care physician,

---

4. Wyeth does not argue that Ms. Aragon's claims against Dr. Caillouette are barred by the three-year statute of limitations. Indeed, Wyeth, based on a statement by Ms. Aragon to her physician in February 2007 that she experienced shortness of breath with decreasing exercise tolerance over the previous 6 to 12 months, alleges that Ms. Aragon's PPH manifested only as early as February 2006 (see Wyeth's Opp'n to Plaintiff's Mot. for Remand at pp. 7-8). Ms. Aragon filed her complaint in September 2007. Therefore, Ms. Aragon satisfied the three-year limitations period of § 340.5.

Dr. Guy Natale, who was aware that she had taken Pondimin®. According to Wyeth, Ms. Aragon's complaint, which was filed on September 21, 2007, is untimely because her claim against Dr. Caillouette accrued "sometime" between February and August 2006. Id. at ¶ 24.

Plaintiff responds that her complaint is not time-barred because she reasonably could not have suspected Diet Drugs as the cause of her respiratory problems until January 2007. See Pl.'s Mem. of Points and Authorities in Support of Her Mot. for Remand at 10. Although Ms. Aragon acknowledges that statements relating to her respiratory system exist in her medical records, she contends that each of these incidents was resolved with treatment.[5] See id. at 4, 10-11. Ms. Aragon asserts that she did not suspect Diet Drugs as the cause of her symptoms until January 2007, when her pulmonologist, Dr. Peter Browne, reviewed her x-rays and noticed "that the pulmonary arteries are prominent bilaterally and this could be significant." It was then, for the first time, that her physicians suggested that Ms. Aragon had anything other than an upper respiratory infection or bronchitis. See id. at p. 5 (citing Letter from Peter M. Browne, M.D. to Guy Natale, M.D. (Jan. 23, 2007).

Dr. Browne referred Ms. Aragon to Dr. Shapiro. On February 6, 2007, Dr. Shapiro diagnosed Ms. Aragon with PPH. On

---

5. Ms. Aragon's medical records note that in May, 2006 she was treated for an upper respiratory infection. In September, 2006 she had no issues or complaints but in December, 2006 she was treated for acute bronchitis.

September 21, 2007, Ms. Aragon filed her complaint in the Superior Court of the State of California, County of Los Angeles.

IV.

Under California law, a plaintiff has one year to file suit from the time when she understands the negligent cause of her injury within which to bring her medical malpractice claims. See Marriage & Family Ctr., 279 Cal. Rptr. at 478-79.  Therefore, "for the one-year limitations period to be activated not only must the patient be aware of her harm, but also she must be aware of the negligent cause of her harm."  Hills, 199 Cal. Rptr. at 819 (citing Tresemer v. Barke, 150 Cal. Rptr. 384, 388-89 (Cal. Ct. App. 1978)) (emphasis in original).

Whether a plaintiff was on notice that her injury was caused by the defendant's alleged negligent conduct is a factual inquiry.  In Steingart, Theresa M. Steingart ("Ms. Steingart"), a registered nurse, sought treatment from Dr. John S. White after she noticed a lump in her right breast in 1982.  See Steingart, 243 Cal. Rptr. at 679.  Dr. White examined the lump, diagnosed it as fibrocystic disease and advised Ms. Steingart that she should not be concerned.  See id.  Ms. Steingart sought a second opinion from Dr. Joseph Oliver because she "had a feeling of cognitive dissonance" with respect to Dr. White's diagnosis.  See id.  Dr. Oliver, however, confirmed Dr. White's diagnosis.  See id.  In 1984, Ms. Steingart was examined by Dr. Kathleen R. DeRemer who, after a mammogram, determined that Ms. Steingart should not be concerned.  See id.  In 1985, Ms. Steingart noticed a change in

the contour of the lump.  See id.  Dr. Newman, to whom Ms. Steingart was referred by Dr. DeRemer, diagnosed Ms. Steingart with Stage II breast cancer.  See id.

In March 1986, Ms. Steingart filed a complaint for medical malpractice against Drs. White, Oliver and DeRemer.  See id.  Dr. White moved for summary judgment on Steingart's claims based on statute of limitations grounds.  See id. at 680.  Dr. White argued that the one-year period began to run in February 1982 because Ms. Steingart's "admitted misgivings" were evidence that "she then knew or, through the use of reasonable diligence, should have known, of the malpractice."  Id. at 682-83.  Although the trial court agreed, the California Court of Appeal held that "there remains at minimum a triable issue of fact as to whether [Ms.] Steingart exercised reasonable diligence after the purported misdiagnosis."  Id. at 683.  The court explained that "[r]easonable minds could easily conclude [Ms.] Steingart did everything within her power to ascertain what, if any, illnesses she had after receiving [Dr.] White's initial diagnosis."

Similarly, in Hills, 199 Cal. Rptr. at 817, Alys Hills ("Ms. Hills") received intra-breast silicone injections from Dr. Richard Aronsohn.  Almost eight years after the injections, Ms. Hills noticed lumps and experienced soreness in her breasts.  See id.  Ms. Hills' doctors performed a mammogram and advised her that she had "numerous nodular and lacy densities with the typical appearance of what one sees following silicone injection."  Id.  Approximately two years after her initial

diagnosis, the lumps, which had gotten larger and more uncomfortable, required surgery.  See id. at 818.

Shortly after the surgery, Ms. Hills brought a suit for medical malpractice against Dr. Aronsohn.  See id.  Dr. Aronsohn argued that Ms. Hills' claims were barred by the statute of limitations because she could have discovered the negligent cause of her injury almost three years earlier when doctors advised her that her lumps were silicone deposits.  See id. at 820.  The California Court of Appeal, however, held that a triable issue of fact existed with respect to the one-year statute of limitation. See id. at 819.  The court reasoned that, despite the fact that silicone deposits are common side effects of silicone injections, her doctor may not be able to determine, absent surgery, whether "negligent, as opposed to non-negligent, silicone injections caused [Mr. Hills' injury]."  See id. at 820.  The court explained that while a plaintiff must exercise due diligence in pursuing the negligent cause of her injury, she "is not required to discover the negligent cause of her injuries at all costs to her own health and welfare.  Rather, the plaintiff is only required to take all reasonable steps to protect her health." Id.

Here, as in Steingart, Ms. Aragon sought professional help with respect to her respiratory problems.  Specifically, Ms. Aragon sought treatment for respiratory problems in May 2006 and December 2006.  Ms. Aragon's physicians, however, diagnosed her condition as an upper respiratory infection and acute bronchitis.

-10-

It was not until February 2007 that Ms. Aragon's physicians correlated her respiratory problems with her Diet Drug use. Therefore, reasonable minds could conclude that Ms. Aragon did everything within her power to ascertain the cause of her respiratory problems.

Similarly, as in Hills, Ms. Aragon's doctors were not able to determine the cause of her respiratory problems. Although Wyeth argues that Ms. Aragon should have been on inquiry notice of the relationship between her respiratory problems and her Diet Drug Use, Ms. Aragon sought treatment for her respiratory problems on several occasions. Therefore, a jury could find that Ms. Aragon took all reasonable steps to protect her health.

We need not determine whether the statute of limitations actually bars plaintiff's claim. Rather, we only must decide whether Ms. Aragon's claims against Dr. Caillouette are supported by a reasonable basis in fact or a colorable ground. Based on the above, we cannot conclude that Ms. Aragon's claims are wholly insubstantial and frivolous. Therefore, we are constrained to remand the case to state court.

V.

For the foregoing reasons, Ms. Aragon's motion will be granted and this action will be remanded to the Superior Court of the State of California, County of Los Angeles.

```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/     )
FENFLURAMINE/DEXFENFLURAMINE)       )    MDL NO. 1203
PRODUCTS LIABILITY LITIGATION       )
_____ )
                                    )
THIS DOCUMENT RELATES TO:           )
                                    )
LORRAINE D. ARAGON                  )
                                    )
        v.                          )
                                    )
WYETH, et al.                       )    CIVIL ACTION NO. 08-20001
```

**PRETRIAL ORDER NO.        **

AND NOW, on this 19th day of August, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of Lorraine Aragon to remand to the Superior Court of the State of California, County of Los Angeles is GRANTED; and

(2) this action is hereby REMANDED to the Superior Court of the State of California, County of Los Angeles.

                                    BY THE COURT:


                                    /s/ Harvey Bartle III
                                                        C.J.