```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : : : | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | |
| SHEILA BROWN, et al. | : : | |
| v. | : : | |
| AMERICAN HOME PRODUCTS CORPORATION | : : : | CIVIL ACTION NO. 99-20593 |

**MEMORANDUM AND PRETRIAL ORDER NO.** _____

Bartle, C.J.                                                August 22, 2008

      Before the court is the motion of Carol Meeker ("Ms. Meeker") for an order directing the AHP Settlement Trust ("Trust") to accept her echocardiogram tape.  Ms. Meeker claims that she timely submitted her echocardiogram tape as required by the Seventh Amendment to the Nationwide Class Action Settlement Agreement with Wyeth[1] ("Settlement Agreement").  In the alternative, Ms. Meeker asserts that even if she did not timely submit her echocardiogram tape, excusable neglect exists, and she should be allowed to submit her echocardiogram tape beyond the applicable deadline.  Wyeth, however, maintains that the Trust did not timely receive Ms. Meeker's echocardiogram tape and that

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

no excusable neglect exists to justify the late submission of such tape.

I.

On April 26, 2007, Ms. Meeker filed the motion that is presently before us. According to Ms. Meeker's motion and accompanying exhibits, on April 29, 2003, she submitted a completed Blue Form,[2] Gray Form, echocardiogram tape, echocardiogram results, and pharmacy and/or medical records. In or around March 2007, Ms. Meeker learned that the Trust considered her claim deficient because the Trust had not received a copy of the echocardiogram tape that corresponded to her Gray Form. Upon learning of the deficiency, on March 26, 2007, Ms. Meeker forwarded to the Trust a copy of the echocardiogram tape. By letter dated April 13, 2007, the Trust denied Ms. Meeker's claim for Category Two benefits[3] because the echocardiogram tape was submitted after the December 16, 2006 deadline.

Wyeth maintains the Trust first received a copy of Ms. Meeker's echocardiogram tape on April 2, 2007. In support, Wyeth has submitted a declaration from Denise Kankowski, Director of Claims of the Trust, dated May 11, 2007. Ms. Kankowski avers that a review of the Trust's electronic database and the Trust's electronic records of documents received on May 5, 2003, reveals

---

2. Many of the forms used in administration of the Settlement Agreement are commonly referred to by color.

3. The Seventh Amendment provides that Category Two Class Members "shall be entitled to receive a 'Category Two Payment' of $2,000 from the Trust." Seventh Amendment § VIII.A.1.

that the Trust did not receive an echocardiogram tape with Ms. Meeker's April 29, 2003 submission. See Kankowski Decl. at ¶ 6, attached to Wyeth's Response. Wyeth also maintains that on July 5, 2006, the Trust sent Ms. Meeker a deficiency notice informing her that it had not received a copy of the echocardiogram tape that corresponded to her Gray Form. See id. at ¶ 7. The notice further stated that the Trust sent Ms. Meeker's attorney a letter explaining that her claim for Category Two benefits could not be processed because it had not received a copy of her echocardiogram tape. The letter sent to Ms. Meeker's attorney was properly addressed and was not returned to the Trust as undeliverable. Id.

In reply, Ms. Meeker submits that the echocardiogram tape that corresponded to her Gray Form was included with her April 29, 2003 submission. Ms. Meeker has submitted an affidavit from Cheryl Lang, a former employee of the Shannon Law Firm who served as a paralegal on Ms. Meeker's file, dated May 18, 2007. Ms. Lang avers that it was the Shannon Law Firm's practice in 2003 to include the respective echocardiogram tape with each submission. Ms. Lang also avers that "[i]f [she] had omitted the tape inadvertently, it would have been in the file." See Lang Decl. at ¶¶ 2-3, attached to Ms. Meeker's Reply.

In addition, Ms. Meeker denies receiving any notification from the Trust that her submission was deficient. See id. at ¶ 5. Ms. Lang also averred that during her time at the Shannon Law Firm, she "handled deficiency letters from the

-3-

Trust" and that she "would not have intentionally ignored any such letter." Id. Finally, Ms. Meeker suggests that it is possible that the echocardiogram tape she submitted was logged by the Trust as pertaining to another claim because the package sent to the Trust contained "documents and things" for multiple claimants. See id. at ¶ 6.

In its sur-reply, Wyeth maintains that the Trust did not incorrectly mark Ms. Meeker's echocardiogram tape. In support, Wyeth submitted a second declaration from Ms. Kankowski. Ms. Kankowski avers that a search of the Trust's electronic database of all submissions by claimants represented by the Shannon Law Firm and received by the Trust on or about May 5, 2003 reveals that the Trust did not receive an echocardiogram tape belonging to Ms. Meeker.

II.

Under the Seventh Amendment, Class Members were eligible to receive Category Two benefits upon submission of the following:

>    a.  An Echocardiogram Tape or Disk for the
>        relevant Diet Drug Recipient, conducted
>        after Diet Drug use and by the end of
>        the Screening Period, and in compliance
>        with the Settlement Agreement, showing
>        FDA Positive regurgitation or Mild
>        Mitral Regurgitation;
>
>    b.  A properly completed and signed Green
>        Form or Gray Form documenting a
>        diagnosis of FDA Positive regurgitation
>        or Mild Mitral Regurgitation based upon
>        such Echocardiogram; and

>   c.  Proof of Diet Drug use in accordance
>       with section VI.C.2.d of the Settlement
>       Agreement.

Seventh Amendment § VIII.B.3.  Claimants were required to submit these materials within seven months after the date of Final Judicial Approval of the Seventh Amendment, or December 16, 2006.  See id.  The Seventh Amendment further provides that:

> If a Diet Drug Recipient fails timely to
> comply with the notice from the Trust sent
> under Section VIII.B.3, the Trust shall have
> no further obligation to process the Diet
> Drug Recipient's claim for a Category Two
> Payment, and that Diet Drug Recipient's claim
> for this benefit shall be extinguished.

Id. at § VIII.B.5.

Pursuant to the Seventh Amendment, a notice was sent to "all Class Members who have ever registered or purported to register with the Trust or who have submitted any type of form to the Trust ... and to all known attorneys representing such Class Members ...."  Id. at § V.C.1.  The notice informed Class Members and their attorneys that a list of eligible Category Two claimants would be posted on the Trust's website within thirty days of Final Judicial Approval.  See Part I of the Official Court Notice:  Overview of the Seventh Amendment to the Nationwide Class Action Settlement Agreement ("Official Court Notice - Part I"), p. 8.  See also Part II of the Official Court Notice of the Seventh Amendment to the Nationwide Class Action Settlement Agreement ("Official Court Notice - Part II"), p. 20; Seventh Amendment § VIII.B.1.  Finally, the notice informed potential Category Two claimants that within sixty days of

receipt of all the necessary claim materials, the Trust would "either pay [the claimant] Category Two benefits or let [the claimant] know why [her] claim is not eligible for those benefits."  Official Court Notice - Part II, p. 21.  <u>See also</u> Settlement Agreement § VIII.B.2.

      Ms. Meeker contends that she timely mailed her Category Two materials to the Trust but that the Trust misplaced her echocardiogram tape.  Although the Trust acknowledges receipt of the package containing Ms. Meeker's Category Two claim materials, the Trust denies receiving Ms. Meeker's echocardiogram tape.  Other than the affidavit from Ms. Lang, in which Ms. Lang states that it was the Shannon Law Firm's practice to submit echocardiogram tapes, Ms. Meeker has submitted no proof that she included her echocardiogram tape with her April 29, 2003 submission.  On the other hand, the Trust has submitted a declaration from Ms. Kankowski, in which Ms. Kankowski avers that a search of the Trust's electronic database reveals that the Trust did not receive an echocardiogram tape from Ms. Meeker.  Based on the record before us, we find that Ms. Meeker did not submit to the Trust by December 16, 2006 an echocardiogram tape as required under the Seventh Amendment.

### III.

      The deadlines imposed by the Seventh Amendment and the Settlement Agreement may be extended if the movant can show his or her failure to meet the deadlines was due to "excusable neglect."  In <u>In re Orthopedic Bone Screw Prods. Liab. Litig.</u>,

246 F.3d 315, 323 (3d Cir. 2001), our Court of Appeals reiterated the Supreme Court's analysis of excusable neglect as set forth in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993).  Four factors should be evaluated when deciding whether excusable neglect exists:  (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  Pioneer, 507 U.S. at 395; Bone Screw, 246 F.3d at 322-23.  We shall discuss each of these factors in turn.

      Under the first prong, we must consider the danger of prejudice to Wyeth should an extension be granted.[4]  Wyeth argues that granting Ms. Meeker an extension of the deadline for submission of Category Two claim materials will "open the floodgates" for similar claims and deny it the finality for which it bargained in the Seventh Amendment.  The finality provided to Wyeth, the Trust and other Class Members by the Settlement Agreement and the Seventh Amendment has been of paramount importance throughout the administration of the Settlement Agreement.  If Ms. Meeker's motion were the only one of its kind, her late submission may pose little danger of prejudicing the nonmovants.  Ms. Meeker, however, is certainly not alone. "Although the admission of any particular claimant may not in

---

4.   The Trust did not file a response to Ms. Meeker's motion.

itself cause a substantial drain on the Trust, allowing this claimant to escape the firm deadlines set forth in the Settlement Agreement ... will surely encourage others to seek the same relief."  Pretrial Order No. 3923, at 3 (Sept. 10, 2004).

Second, we must consider the length of the delay in meeting the submission deadline.  The December 16, 2006 deadline by which claimants seeking to obtain Category Two benefits were required to act was not arbitrary.  The deadline was set to give Class Members ample time to complete the necessary forms and to submit them to the Trust.  The Seventh Amendment received final judicial approval on May 16, 2006.  Pursuant to Section VIII.B.1 of the Seventh Amendment, the Trust posted a Category Two Payment List as of June 7, 2006.  Ms. Meeker, however, did not contact the Trust to determine her status for Category Two benefits until March 2007, more than three months after the December 16, 2006 deadline.  This is not an insignificant amount of time.  To allow Ms. Meeker the lengthy extension sought would undermine the finality of the Settlement Agreement and the Seventh Amendment and open the door to similarly situated Class Members who presently are time-barred.

Third, we must evaluate the reasons for the delay.  Ms. Meeker asserts that she timely submitted the proper materials to the Trust.  To explain why she waited until March 2007, Ms. Meeker submits that she did not receive the Trust's July 5, 2006 deficiency letter.  Even if we were to assume that Ms. Meeker did not receive the Trust's July 5, 2006 deficiency letter, the

Seventh Amendment notice advised claimants and their counsel that a list of eligible Class Members would be posted on the Trust's official website.  The court must consider whether counsel did "all he reasonably could to comply with the court-ordered ... date."  Pioneer, 507 U.S. at 396.  Under the circumstances, we do not believe that the Shannon Law Firm was diligent in ensuring compliance with the deadline and failure to submit Ms. Meeker's echocardiogram is neither unique nor compelling.  We therefore find that Ms. Meeker has not provided a valid reason to explain the delay.

Finally, we have no reason to doubt that Ms. Meeker and her counsel acted in good faith.  However, the danger of prejudice to nonmovants and the length of, and reasons for, the delay weigh heavily in favor of finding that Ms. Meeker's actions do not constitute excusable neglect.  Accordingly, Ms. Meeker is not entitled to an extension of the applicable deadline and she is out of time to submit an echocardiogram tape to the Trust for Category Two benefits.

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
IN RE: DIET DRUGS                :    MDL NO. 1203
(PHENTERMINE/FENFLURAMINE/       :
DEXFENFLURAMINE) PRODUCTS        :
LIABILITY LITIGATION             :
                                 :
THIS DOCUMENT RELATES TO:        :
                                 :
SHEILA BROWN, et al.             :
                                 :
          v.                     :
                                 :
AMERICAN HOME PRODUCTS           :
CORPORATION                      :    CIVIL ACTION NO. 99-20593
```

**PRETRIAL ORDER NO.**

AND NOW, this 22nd day of August, 2008, for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of Wyeth for leave to file a sur-reply in opposition to motion for court order directing that the AHP Settlement Trust accept echocardiogram tape is GRANTED and the sur-reply submitted as an attachment thereto is hereby deemed to be FILED; and

(2)  the motion of Carol Meeker for court order directing that the AHP Settlement Trust accept echocardiogram tape is DENIED.

                                        BY THE COURT:


                                        /s/ Harvey Bartle III
                                                              C.J.