```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE DIET DRUGS (PHENTERMINE/      :
FENFLURAMINE/DEXFENFLURAMINE)       :
PRODUCTS LIABILITY LITIGATION       :   MDL DOCKET NO. 1203
                                    :
_____ :
                                    :
THIS DOCUMENT RELATES TO:           :
                                    :
CYNTHIA RIGHETTI                    :
                                    :   NO. 07-20144
          v.                        :
                                    :   (RELATED CASE
WYETH, INC., f/k/a AMERICAN HOME    :   NO. 07-01766)
PRODUCTS CORPORATION, WYETH-AYERST  :
PHARMACEUTICALS, INC., f/k/a        :
WYETH LABORATORIES, INC.            :
```

MEMORANDUM AND PRETRIAL ORDER NO. _____

Bartle, C.J.                                    December 15, 2008

On April 3, 2007, Cynthia Righetti filed suit in the United States District Court for the District of Minnesota seeking damages for injuries she allegedly sustained after taking the diet drug, Pondimin.  In June, 2007, the plaintiff's action was transferred to this court for coordinated or consolidated pretrial proceedings as part of the Diet Drug Multi-District Litigation.

Now pending before this court is the motion of Wyeth, Inc. and Wyeth Pharmaceuticals (collectively "Wyeth") for summary judgment on all counts of the plaintiff's complaint.

I.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be "rendered if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material when it "might affect the outcome of the suit under the governing law." Id.  After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

## II.

The following facts are either undisputed or viewed in the light most favorable to the non-moving plaintiff.  In May, 2003, the plaintiff was diagnosed with primary pulmonary hypertension ("PPH"), a fatal disease affecting the heart and lungs that can be caused by the ingestion of the prescription diet drug, Pondimin (otherwise known as "Fenfluramine").  The plaintiff's physician had prescribed Pondimin, which the plaintiff began taking in July, 1996.  She continued her use of that drug through January, 1997.  In April, 2003, the plaintiff began to experience shortness of breath, a symptom of PPH.  A month later, she was diagnosed with the disease.

The plaintiff had been tested prior to May, 2003 for valvular heart damage, which can also be caused by ingestion of

Wyeth's diet drugs.  In response to an advertisement in her local newspaper regarding the heart problems associated with use of diet drugs, the plaintiff had an echocardiogram in or around May, 2002 to determine whether she sustained such damage.  A representative of the Caruso law firm in New Mexico was on-site when the echocardiogram was performed on the plaintiff and others who were prescribed diet drugs.  The plaintiff met with the representative of the law firm after the echocardiogram was completed and, at that point, retained the Caruso law firm to represent her in connection with her "Wyeth settlement claim."  In September, 2002, Tod Novak of the Caruso Law Offices wrote the following to the plaintiff:

> Thank you for retaining Caruso Law Offices, P.C. to represent you in your AHP/Wyeth settlement claim.  We have received your signed attorney agreement and are reviewing your file to determine what, if any, information from you, we need to complete your case.  You will be contacted in the near future regarding the status of your case and the future action we will be taking on your behalf.

The Caruso law firm submitted a "Blue Form," on behalf of the plaintiff, to the American Home Products ("AHP")[1] Settlement Trust that same month.  The Blue Form is submitted by any "class member" seeking to register for settlement benefits under the Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth.  The "Preamble" to the

---

1.  American Homes Products Corporation is the former name of Wyeth.

Settlement Agreement advises that it resolves "settled claims" against Wyeth arising from the marketing, sale, distribution and use of the diet drugs Pondimin and Redux. "Settled claims" do not include claims based on PPH. The Blue Form submitted on behalf of the plaintiff states she was prescribed and took both Pondimin (Fenfluramine) and Redux (Dexfenfluramine) for one year.[2] The form additionally manifests that an echocardiogram was performed on the plaintiff on May 30, 2002. The form was signed and dated by the plaintiff the same day.

In April, 2003, the plaintiff filed her "Orange Form #2," by which she exercised her intermediate opt-out rights under the Settlement Agreement, and an "Orange Form #3," by which she exercised her back-end opt-out rights under the Agreement. By opting out, she was permitted to sue Wyeth in the tort system.

On May 1, 2003, the plaintiff went to the hospital complaining of shortness of breath. She underwent a series of tests throughout that week. At least two different physicians, Dr. Hendrix and Dr. Lambert, informed her during that time that she had PPH caused by her ingestion of diet drugs. The plaintiff testified at her deposition in December, 2007 that she first considered bringing a lawsuit against Wyeth after she was told, on May 1, 2003, that she had PPH. She further testified that she "knew" she had a case against Wyeth on that date when she "got sick."

---

2. While the Blue Form states she took Pondimin and Redux, her complaint alleges only that she took Pondimin.

However, that same month, the Caruso law firm informed the plaintiff that she did not have a compensable claim against Wyeth under the Settlement Agreement.  Its May 20, 2003 letter to the plaintiff stated, in pertinent part:

> You previously retained our firm to investigate a possible claim against AHP/Wyeth, the manufacturer of Pondimin and Redux (used in Fen-Phen).  Based on the results of your echocardiogram cardiologist's report, <u>you do not have any injuries that qualify for a settlement under the current class action guidelines</u>.
>
> Please be advised that the echocardiogram screening that you attended was not for medical treatment, but for the purpose of diagnosing damages as defined by the AHP/Wyeth diet drug class action settlement.  A clean screening, such as you have exhibited, does not mean that you do not have other heart related damages, only that you do not have an injury that can be compensated as defined by the settlement guidelines.
>
> **At this time, we have fulfilled the obligations of our retainer agreement.  We are now releasing you as a diet drug client of our firm and closing your file**.

On May 21, 2003, the plaintiff was sent a second letter from the Caruso Law Offices, which read:

> You recently attended an echocardiogram screening provided by our firm.  In this letter, we have enclosed a copy of your echocardiogram report.  According to the settlement guidelines, you are classified as **NEGATIVE** for mitral regurgitation and/or aortic heart valve damage.  This does not mean that you do not have any injury; however, it does mean that you do not have any injury that qualifies for a settlement under the scope of the current AHP/Wyeth diet drug class action settlement.

The plaintiff subsequently consulted two other attorneys. In June, 2003, attorney Robert Kelley advised her that he asked an attorney that rents space from him to review her file. That attorney, as well as Mr. Kelley, concluded they would not be able to "assist" the plaintiff with her case. The bottom of this correspondence contains a handwritten notation stating: "Contact Will Temp at #385-5387 A.S.A.P."

In August, 2003, attorney Will Kemp, of Harrison Kemp & Jones, informed the plaintiff that his firm would not represent her in connection with her potential litigation against the manufacturer of Fen-Phen. He urged her to contact another attorney if she desired to pursue the case further.

In January, 2004, the plaintiff responded to a deficiency notice from the AHP Settlement Trust and updated her address with the Trust. There does not appear to be any other correspondence between the AHP Settlement Trust, the Caruso law firm and the plaintiff after January, 2004.

On August 16, 2005, the plaintiff, along with her husband, filed for Chapter 7 bankruptcy in the District of Nevada. As part of the mandatory bankruptcy filings was a "Schedule B. Personal Property," which calls for the listing of all personal property of the debtor, including:

> Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.

The plaintiff checked the column marked "None."

On November 15, 2005, the United States Bankruptcy Court for the District of Nevada discharged the plaintiff's debts pursuant to 11 U.S.C. § 727.

Sometime thereafter, following further discussion with Dr. Lambert, she engaged a new attorney.  This lawsuit was brought on April 3, 2007.

### III.

Wyeth contends the court should invoke the doctrine of judicial estoppel to bar the plaintiff's cause of action for damages arising from her ingestion of its diet drugs.  Wyeth argues that the plaintiff, by bringing this claim, is asserting a position that is inconsistent with the substance of her 2005 bankruptcy filing with the United States Bankruptcy Court for the District of Nevada, in which she omitted any mention of this claim despite being asked to list any "contingent and unliquidated claim" of every nature.  Plaintiff responds that she had a good faith belief that she did not have a cause of action at the time of her bankruptcy filing and, thus, the doctrine is not applicable.

Judicial estoppel, a judge-made doctrine designed to protect the integrity of the judiciary, derives from the federal courts' "inherent equitable authority to sanction malfeasance." Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 779 (3d Cir. 2001).  Courts invoke the doctrine to bar "a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency."  Id.  It has

been applied by our Court of Appeals to bar claims in situations alleged to be present here, namely, where a plaintiff brings a cause of action for damages after omitting reference to such claim in its bankruptcy filings.[3]  However, our Court of Appeals has also cautioned that the doctrine of judicial estoppel is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003).  Furthermore, it has been labeled an "extraordinary remedy" to be reserved for those times when "a party's inconsistent behavior will otherwise result in a miscarriage of justice." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 364 (3d Cir. 1996) (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 424 (3d Cir. 1988)).  Our Court of Appeals has warned that judicial estoppel is "not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the court." Ryan, 81 F.3d at 364.

The following three-part test enunciated in Montrose must be met before the judicial estoppel doctrine can be applied to bar a plaintiff's cause of action:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. [Citation omitted].  Second,

---

3.  See Krystal Cadillac-Olds GMC Truck v. Gen. Motors, 337 F.3d 314 (3d Cir. 2003).

...
...

> judicial estoppel is unwarranted unless the party changed his or her position "in bad faith – i.e., with intent to play fast and loose with the court." [Citation omitted]. Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

Montrose, 243 F.3d at 779-80.

Defendant has established the first prong of the three-part test. The plaintiff has taken positions before the Bankruptcy Court in the District of Nevada and before this court that are irreconcilably inconsistent. In 2005, two years after plaintiff's diagnosis of diet drug induced PPH, she filed papers with the Bankruptcy Court asserting she had no contingent or unliquidated claims of any nature. In 2007, the plaintiff instituted this lawsuit as a result of her PPH arising from ingestion of Wyeth's diet drugs.

We turn to the second prong of the test. Based on the record before us, defendant has not demonstrated that the plaintiff changed her position in bad faith and intended to play fast and loose with the court. A "finding of bad faith 'must be based on more than' the existence of an inconsistency." Id. at 781. To bar a plaintiff's cause of action under the doctrine of judicial estoppel, the court must find that the plaintiff has engaged in "culpable behavior vis-a-vis the court." Id. Wyeth has not shown that the plaintiff engaged in "culpbable conduct." Ryan, 81 F.3d at 362.

-9-

Although the plaintiff was diagnosed with PPH in 2003, she subsequently received two letters from the Caruso law firm advising her that: (1) she did not "have any injuries that qualify for a settlement under the current class action guidelines;" (2) they were releasing her as a client of their firm; and (3) her echocardiogram revealed she did not suffer from mitral regurgitation and suffered no aortic heart valve damage. Furthermore, two additional attorneys declined to represent her in connection with her use of Wyeth's diet drugs.

A reasonable layperson would understand the letters from the Caruso law firm and the declination of representation by two other attorneys to mean that she had no viable claim to recover damages from Wyeth because of her ingestion of diet drugs. It is not uncommon for persons who are injured or contract illnesses to have no legal remedy. These letters suggest that the plaintiff falls within that category, despite her PPH diagnosis and her doctors' insistence that the disease was caused by diet drugs. We recognize that the May 20, 2003 letter from the plaintiff's law firm advises her solely on her rights under the Settlement Agreement and does not opine on the viability of any potential claim for PPH, which is specifically excluded therefrom. However, we simply do not see how a layperson would understand the subtleties of this lengthy and complex Settlement Agreement, the nuances of this multi-district litigation, and what claims were viable against Wyeth and what claims were not.

Wyeth vigorously argues that the plaintiff testified at her deposition that she knew she had a claim for damages against it when she "got sick" on May 1, 2003.  Regardless of what she thought she knew about her legal rights, the subsequent letters from the Caruso law firm and the refusal of other lawyers to represent her negate any bad faith on her part in completing Schedule B in the Bankruptcy Court in August, 2005.

Because we find that the plaintiff did not change her position in bad faith and did not engage in culpable conduct vis-a-vis the court, judicial estoppel is not warranted in these circumstances.  Accordingly, we will deny the motion of Wyeth for summary judgment on all counts of the plaintiff's complaint.

```
                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE DIET DRUGS (PHENTERMINE/       :
FENFLURAMINE/DEXFENFLURAMINE)        :
PRODUCTS LIABILITY LITIGATION        :   MDL DOCKET NO. 1203
                                     :
_____        :
                                     :
THIS DOCUMENT RELATES TO:            :
                                     :
CYNTHIA RIGHETTI                     :
                                     :   NO. 07-20144
          v.                         :
                                     :   (RELATED CASE
WYETH, INC., f/k/a AMERICAN HOME     :   NO. 07-01766)
PRODUCTS CORPORATION, WYETH-AYERST   :
PHARMACEUTICALS, INC., f/k/a         :
WYETH LABORATORIES, INC.             :
```

PRETRIAL ORDER NO. _____

AND NOW, this 15th day of December, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendants, Wyeth, Inc. and Wyeth Pharmaceuticals, for summary judgment on all counts of the plaintiff's complaint is DENIED.

BY THE COURT:


/s/ Harvey Bartle III
                                                          C.J.