IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION ) ) ) ) | MDL NO. 1203 |
| This document relates to: ) ) CARRIE RICHARDS, Administratrix of ) the Estate of Winona Neal, ) v. ) WYETH, et al. ) | CIVIL ACTION NO. 05-25157 |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8327**

Bartle, C.J.                                              October 13, 2009

      Before the court is the motion of Wyeth[1] to enforce the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") and Pretrial Order ("PTO") No. 1415 (Aug. 28, 2000) against Class Member Carrie Richards ("claimant" or "Ms. Richards"), administratrix of the Estate of Winona Neal ("decedent" or "Ms. Neal").[2] Wyeth seeks to prevent Ms. Richards from proceeding against it in this action. In response, Ms. Richards argues it would be an injustice to dismiss her independent claims against Wyeth. She maintains Ms. Neal would have opted out of the Settlement Agreement had she not died.

      This matter is before us as part of our continuing and exclusive jurisdiction over the Settlement Agreement. See PTO

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

2. Wyeth subsequently filed a Motion to Grant as Uncontested Its Motion to Enforce the Settlement Agreement and PTO No. 1415 Against Class Member Carrie Richards.

No. 1415, at ¶ 11. This court has the authority to oversee and supervise the Settlement Agreement, including the power to bar class members from pursuing lawsuits in violation of its terms. See id.

I.

According to Wyeth's motion and accompanying exhibits, on May 11, 2000, Ms. Neal registered with the AHP Settlement Trust ("Trust") by submitting a Blue Form. Although neither Ms. Neal nor Ms. Richards timely exercised an opt-out from the Settlement Agreement, Ms. Richards filed a complaint on November 1, 2004 in the Superior Court of Carroll County, Georgia, captioned as Richards v. Higgins General Hospital, et al., No. 04-V-01843 (the "Georgia action"), against Higgins General Hospital d/b/a Tanner Medical Center, Inc. ("Tanner Medical Center"), Wyeth, Ara Travers, M.D., and John C. Earle, M.D. alleging wrongful death claims as a result of Ms. Neal's ingestion of Diet Drugs.

On February 15, 2005, the Georgia Superior Court dismissed with prejudice Ms. Richards' claims against defendants Tanner Medical Center and Dr. Travers based on Ms. Richards' failure to perfect timely service of process. On February 24, 2005, that court dismissed with prejudice Ms. Richards' claim against Dr. Earle based on Ms. Richards' failure to file a medical malpractice expert affidavit in compliance with O.C.G.A. § 9-11-9.1. On March 9, 2005, plaintiff filed with the court a motion for reconsideration of its February 15, 2005 order

-2-

dismissing defendants Tanner Medical Center and Dr. Travers.[3] Subsequently, on March 15, 2005, plaintiff filed a notice of appeal to the Georgia Court of Appeals based on the February 15, 2005 dismissal.[4]

On March 17, 2005, Wyeth, the only remaining defendant, removed the Georgia action to the United States District Court for the Northern District of Georgia. Pursuant to Rule 7.4 of the Rules of the Judicial Panel on Multidistrict Litigation, on May 13, 2005, the Judicial Panel on Multidistrict Litigation ("MDL Panel") conditionally transferred from the United States District Court for the Northern District of Georgia to the United States District Court for the Eastern District of Pennsylvania (MDL 1203) the removed action.[5] Ms. Richards did not challenge Wyeth's removal of the Georgia action or the MDL Panel's conditional transfer to this court.

---

3. On May 9, 2005, the Superior Court of Carroll County denied Ms. Richards' motion for reconsideration of its February 15, 2005 order.

4. On December 13, 2005, the Court of Appeals of the State of Georgia dismissed Ms. Richards' appeal on the ground that it lacked jurisdiction because Wyeth removed the Georgia action to federal court.

5. The Clerk of this court docketed the removed action at Civil Action No. 2:05-cv-25157-HB. Tanner Medical Center, Inc., Dr. Travers, and Dr. Earle were incorrectly listed as parties to the removed action. Therefore, we will order the Clerk to terminate these parties.

-3-

On May 9, 2005, Wyeth filed a motion with this court to enforce the Settlement Agreement.[6] On March 30, 2006, Wyeth filed a notice of the previously filed motion to enforce, as well as a motion to grant as uncontested its motion to enforce because no response had been filed by the plaintiff at that point. On May 8, 2006, Ms. Richards finally filed a response to Wyeth's motion. Wyeth submitted its reply on May 24, 2006.

Wyeth argues that Ms. Richards' claims are barred because she failed to exercise any opt-out from the Settlement Agreement. In response, Ms. Richards acknowledges that she failed to exercise an opt-out from the Settlement Agreement. She argues, however, that denying her relief would be a manifest injustice because she did not have time to exercise her opt-out rights. Specifically, Ms. Richards states that she "had just a few months prior to [the opt-out deadline] to discover [that Ms. Neal] had certain rights under a Settlement Agreement or that [Ms. Neal] even used the drug Phen Phen [sic]."[7]

II.

The Settlement Agreement approved by this court in PTO No. 1415 requires the dismissal of pending actions by individuals

---

6. Wyeth filed its original motion to enforce, which is the subject of this memorandum and order, in MDL No. 1203 at Civil Action No. 2:99-cv-20593-HB because the MDL Panel had not conditionally transferred the removed action to this court.

7. Although plaintiff did not style it as such, we will treat her "manifest injustice" argument as one for "excusable neglect."

who did not opt-out of the Settlement Agreement.  The Settlement Agreement provides, in part:

> Upon Final Judicial Approval, the Class Counsel and all Class Members shall cooperate with AHP and any other Released Party to cause the dismissal, with prejudice and without costs, of any action against AHP or any Released Party asserting a Settlement Claim brought by or on behalf of any Class Member who has not timely and properly exercised an Initial Opt-Out right ... which are pending in any state, federal or territorial court.

Settlement Agreement § VIII.C.5.  It is undisputed that plaintiff has failed to exercise an opt-out.

Further, plaintiff does not contest that Ms. Neal registered for benefits with the Trust by signing and submitting a Blue Form.  As with all Settlement Agreement benefit forms, the Blue Form includes a release of settled claims and a covenant not to sue.  Specifically, the Blue Form states, in relevant part, that:

> In consideration of the obligations of [AHP] under the [Settlement Agreement] ..., I, the undersigned claimant, individually and for my heirs, beneficiaries, agents, estate, executors, administrators, personal representatives, successors and assignees ... hereby expressly **release and forever discharge, and agree not to sue,** AHP and all other Released Parties ... as to all Settled Claims ....

Blue Form, p. 8, ¶ 18 (emphasis in original).

Plaintiff has failed to make any showing that the claims she raises against Wyeth in this action are not barred by the Settlement Agreement.  The deadlines imposed by the

-5-

Settlement Agreement may be extended only when the movant can show his or her failure to meet the deadlines was due to "excusable neglect." See PTO No. 7515 (Nov. 15, 2007). Therefore, unless Ms. Richards' failure to exercise any opt-out right is justified by excusable neglect, we must enforce the Settlement Agreement and enjoin Ms. Richards' claims against Wyeth.

In In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 323 (3d Cir. 2001), our Court of Appeals reiterated the Supreme Court's analysis of excusable neglect as set forth in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 395 (1993) ("Pioneer"). Four factors should be evaluated when deciding whether excusable neglect exists: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. Pioneer at 395; Bone Screw, 246 F.3d at 322-23. We shall discuss each of these factors in turn.

Under the first prong of Pioneer, we must determine the danger of prejudice to Wyeth should the requested extension be granted. See Pioneer, at 395. We find that Wyeth will suffer prejudice if plaintiff's late opt-out request is permitted. Wyeth will be forced to litigate an additional case that, based on plaintiff's initial representations, it had thought would be part of the settlement class.

Second, we must consider the length of the delay and its effect on judicial proceedings. See id. Plaintiff first raised the possibility of exercising an opt-out in her May 8, 2006 reply to Wyeth's motion to enforce, more than three years after the period for notifying Wyeth of such an intention had expired. Allowing plaintiff to opt-out in this case would "open the floodgates" for similar motions by other class members who had pending cases but failed to opt-out by the relevant deadline. Moreover, permitting an extension of time to opt-out under these circumstances would frustrate the finality sought to be guaranteed by the Settlement Agreement.

Under the third prong, we must review Ms. Richards' reason for the delay. See id. Plaintiff argues that: (1) Ms. Neal, but for her death, could have exercised either an Intermediate Opt-Out or Back-End Opt-Out right,[8] and (2) she only had a few months to discover that Ms. Neal had "certain rights." We do not find the proffered reasons compelling.

Under the Settlement Agreement, a claimant must submit written notice of her intention to exercise a right of Back-End Opt-Out "within 120 days after the date on which the Class Member knows or should have known in the exercise of reasonable diligence that the relevant Diet Drug Recipient developed a

---

8. Ms. Neal's September 23, 2002 echocardiogram revealed mild mitral regurgitation. Therefore, she was not eligible to exercise an Intermediate Opt-Out. See Settlement Agreement § IV.D.3.a.

Matrix-Level Condition or by Date 2 [May 3, 2003],[9] whichever is later." Settlement Agreement § IV.D.4.b. Ms. Neal died on September 24, 2002. Ms. Richards, as the administratrix of the Estate of Ms. Neal, stands in the latter's shoes. Thus, Ms. Richards should have known in the exercise of reasonable diligence that Ms. Neal had developed a Matrix-Level Condition by that date. Accordingly, Ms. Richards was required, under the Settlement Agreement, to have submitted written notice on or before Date 2 or May 3, 2003. Although Ms. Richards filed the Georgia action in September 2004, she does not attempt to explain why she failed to seek an extension of the time in which she could opt-out of the Settlement Agreement between May 3, 2003 and the filing of her response to Wyeth's motion to enforce. We previously have held that the pendency of an individual action does not excuse class members from filing valid requests for exclusion. See PTO No. 2345, at 8-9 (Jan. 16, 2002).

Finally, we have no reason to doubt that plaintiff acted in good faith. However, the danger of prejudice to Wyeth and the length of, and reasons for, the delays weigh heavily in favor of finding that plaintiff's actions do not constitute

---

9. The Settlement Agreement defines "Date 2" as "the date which is 120 days after the end of the Screening Period." Settlement Agreement § I.19. The "Screening Period" is the "12-month period beginning on the Final Judicial Approval Date during which benefits shall be available in the Screening Program." Id. at 49. The "Final Judicial Approval Date" is "the date on which Final Judicial Approval occurs," which was January 3, 2002. Thus, the Screening Period ended on January 3, 2003 and "Date 2" is 120 days later or May 3, 2003.

excusable neglect. Accordingly, we will enforce the Settlement Agreement and dismiss plaintiff's claims.