IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DIET DRUGS <br> (PHENTERMINE/FENFLURAMINE/ <br> DEXFENFLURAMINE) PRODUCTS <br> LIABILITY LITIGATION | MDL DOCKET NO. 1203 |
| BENJAMIN C. RIGGS, JR. d/b/a <br> RESOURCE MANAGEMENT COMPANY <br> v. <br> WYETH, INC. a/k/a WYETH, AND <br> AHP SETTLEMENT TRUST | NO. 09-20008 |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO.** \_\_\_\_\_

Bartle, C.J.                                                                 June 4, 2010

       Before the court is the motion of defendant AHP Settlement Trust ("Trust") to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2) and for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.

       On May 29, 2009, plaintiff Benjamin C. Riggs, Jr. d/b/a Resource Management Company ("Resource") filed this diversity lawsuit alleging certain tort claims against Wyeth, Inc. ("Wyeth") and the Trust in the United States District Court for the District of Rhode Island. After the Trust filed its motion to dismiss, the Rhode Island court granted Resource sixty days to conduct jurisdictional discovery. At the end of that discovery period, the Judicial Panel on Multidistrict Litigation transferred the case to this court for coordinated and

consolidated pretrial proceedings as part of the Diet Drug Multidistrict Litigation.

I.

Riggs, an attorney, is a citizen of Rhode Island and the sole proprietor of Resource, a "New Hampshire registered company" with its office in Rhode Island. In 1999, Wyeth reached a Nationwide Class Action Settlement Agreement ("Settlement Agreement") in connection with the diet drugs litigation. Under the Settlement Agreement, the Trust was established to receive what turned out to be billions of dollars from Wyeth[1] to provide benefits to qualifying class members. The Trust is and always has been located in the Commonwealth of Pennsylvania.

Resource claims a "valid and continuing security interest and lien on" attorneys' fees paid by Wyeth and the Trust to the late Frank Gregory, Esq. and to American Asset Finance ("American Asset"). According to the complaint, Gregory entered into a Purchase Agreement with Resource on January 31, 2003, and a similar agreement with American Asset.[2] Pursuant to these arrangements, Resource and American Asset funded costs Gregory incurred in pursuing diet drug litigation on behalf of his clients in exchange for a "lien" on his contingent fee receivables. Resource contends it was entitled to a share of

---

1. At the time the Trust was established, Wyeth was known as American Home Products Corporation.

2. The January 31, 2003 Purchase Agreement executed by Gregory and Resource is, by its own terms, governed by the law of the State of New Hampshire and not Rhode Island.

Gregory's contingent fees in connection with 67 diet drug litigation claims.[3] Instead of paying Resource, Wyeth and the Trust, it is alleged, wrongfully paid the fees to Gregory himself and to American Asset in connection with settled diet drug claims where Gregory was counsel of record.[4]

Resource subsequently sued Gregory's Estate in the District of New Hampshire and obtained a judgment in its favor on March 26, 2009 in the amount of $250,000.[5] <u>Resource Mgmt. Co. v. Janet Peschong, Pers. Representative for the Estate of Frank Gregory</u>, No. 06-366 (D.N.H.). This apparently represented some of the monies due to Resource under the Purchase Agreement.

II.

The Trust argues in its pending motion that it should not have been haled into court in Rhode Island. As the transferee court, we apply the substantive law of Rhode Island, the transferor forum, to the motion of the Trust to dismiss it for lack of personal jurisdiction. <u>Van Dusen v. Barrack</u>, 376 U.S. 612 (1964).

---

3. According to the complaint, the 67 cases "were originally referred to Petroff & Associates of Dallas, Texas, as attorney of record" and Resource's lien on the contingent fees was filed with that law firm. Petroff & Associates, however, retained 20 of the 67 cases and returned the remaining 47 to Gregory. At that point, Resource sent notice of its lien to Wyeth and the Trust.

4. The plaintiff has not submitted a copy of the January 31, 2003 Purchase Agreement. However, it is part of the record in the case in the District of New Hampshire.

5. In 2007, Gregory died with assets in his estate totaling less than $50,000.

Personal jurisdiction is the "power [of the court] to require the parties to obey its decrees."  U.S. v. Smith American Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999).  A court must have personal jurisdiction over the parties in order for it to hear their dispute.  Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  The plaintiff bears the burden of persuading the court that jurisdiction exists in the face of a motion to dismiss on that ground.  Id.

In the First Circuit, the prima facie method is generally utilized for adjudicating a motion to dismiss for lack of personal jurisdiction.[6]  Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992).  Under this analysis, we consider "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Id.  The plaintiff may not rely on the pleadings but must make a showing of "specific facts set forth in the record."  Id.  A court applying the prima facie method must accept all properly supported proffers of evidence as true, as it does when faced with a motion for summary judgment.  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).  We construe these facts in the plaintiff's favor.  Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007).  Facts

---

6. Under certain circumstances, the court may apply one of two other standards available for addressing a motion to dismiss for lack of personal jurisdiction.  These two standards typically require an evidentiary hearing.  See Boit, 967 F.2d at 676.

presented by the defendant are considered only to the extent they are uncontradicted.  Id.

A federal court sitting in a diversity action and addressing a motion to dismiss a defendant for lack of personal jurisdiction is "the functional equivalent of a state court sitting in the forum state."  Astro-Med, 591 F.3d at 8.  In order for Rhode Island to have jurisdiction over the Trust, the plaintiff must show that jurisdiction exists under Rhode Island's long-arm statute, R.I. Gen. Laws 1956 § 9-5-33, and that the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.  Id.  These two issues are conflated here since Rhode Island's long-arm statute is coextensive with the outward limit of personal jurisdiction allowed by the Constitution.  Id.

The exercise of personal jurisdiction over an out-of-state defendant is consistent with the Due Process Clause of the Constitution if the defendant has established minimum contacts with the forum state "such that he can reasonably anticipate being haled into that forum's courts."  Boit, 967 F.2d at 679.  If minimum contacts exist, then we must ensure that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Id.

An out-of-state defendant may be subject to either general or specific personal jurisdiction.  General jurisdiction may be exercised over an out-of-state defendant in connection with any and all matters, including those unrelated to the

defendant's contacts with the forum, if that defendant has "maintained a continuous and systematic linkage" with the state. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). The following three requirements must be met in order for a court to exercise general jurisdiction over an out-of-state defendant: "(1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010).

If general jurisdiction does not exist, a court may assert specific jurisdiction over a nonresident defendant in a "particular case if that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Id. A trio of inquiries guides our analysis of whether specific jurisdiction exists. We must first determine whether "the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum." Id. If that hurdle is cleared, we next examine whether the defendant's contacts "constitute purposeful availment of the benefits and protections afforded by the forum's laws." Id. Finally, we analyze the reasonableness and fairness of exercising jurisdiction over a nonresident. Id. When assessing the reasonableness and fairness prong, we are guided by certain criteria called the "Gestalt factors." They include: "(1) the defendant's burden of appearing, (2) the forum state's interest

in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." United Elec., Radio and Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).

### III.

The Trust asserts that neither general nor specific jurisdiction exists over it in Rhode Island because it has virtually no contacts with that forum. Specifically, it stresses that its office is and has always been located in Pennsylvania. It is where all of its business is conducted. The Trust neither advertises in Rhode Island nor solicits business there.

The plaintiff counters that the Trust does, in fact, maintain contacts with Rhode Island such that it is reasonable and fair to exercise both general and specific jurisdiction over it in that forum. Resource asserts that the sole purpose of the Trust is to administer a "Nationwide" Settlement Agreement, which undeniably requires contact with class members residing in Rhode Island. In support, it submits the Trust's answers to discovery requests, which show that the Trust has distributed benefits to 466 Rhode Islands residents under the Settlement Agreement, made 20 payments of legal fees to six law firms and/or lawyers located in Rhode Island under the Settlement Agreement, and issued 185 payments to nine medical providers located in that state.

-7-

Resource also points to evidence of the Trust's business relationship with an Information Technology and Network Information Systems firm by the name of HCH Enterprises, LLC, which is situated in Rhode Island. The Trust made 82 payments to HCH between 2002 and 2008. Additionally, the Trust maintains an interactive website that is accessible to Rhode Island residents. Finally, Resource claims that Wyeth, which admittedly has a presence in Rhode Island, and the Trust, which was created to administer Wyeth's funds, are so intertwined that Wyeth's contacts with Rhode Island may be imputed to the Trust.

We begin by determining whether the plaintiff has proffered evidence that, if credited, is sufficient to support an exercise of general jurisdiction. Mailing benefit payments to claimants with Rhode Island addresses does not rise to the level of "purposeful availment." The Settlement Agreement, which created the Trust and under which the payments were made, was not executed in Rhode Island and the Trust was not established there. Many courts have held that such mailings to a forum is an insignificant contact for a "minimum contacts" analysis where the underlying contract is not performed in the forum. G & H Partners, Ltd. v. Boer Goats Int'l Limited, 896 F. Supp. 660, n.2 (W.D. Tex. 1995). Similarly, the Trust's maintenance of a website that can be accessed by Rhode Island residents, but is not continuously and systematically aimed at the forum, is inconsequential. Exercising general jurisdiction over a nonresident based on its maintenance of a website that can be

accessed from any forum would render the personal jurisdiction analysis meaningless as the defendant would be subject to suit in every jurisdiction. Sostre v. Leslie, No. 07-289, 2008 WL 245837, *7 (D.R.I. 2008). Similarly, Resource's attempt to impute Wyeth's contacts with Rhode Island to the Trust is unavailing. Wyeth and the Trust are two separate and distinct entities. While Wyeth has funded the Trust, it does not control it.

In short, the evidence plaintiff has proffered is insufficient for a prima facie showing that the Trust has maintained a "continuous and systematic linkage" with Rhode Island such that the exercise of general jurisdiction over the Trust there would comport with traditional notions of fair play and substantial justice.

Resource also argues that specific jurisdiction exists over the Trust in Rhode Island. We are mindful of the instruction of the Court of Appeals for the First Circuit that an analysis of the fairness of exercising specific jurisdiction over a nonresident must be made on a claim by claim basis since this form of jurisdiction is "always tied to the particular claims asserted." Exeter, 196 F.3d at 289.

In Exeter, Phillips Exeter Academy ("Exeter") brought suit in tort and contract in the District of New Hampshire against the Florida-based Howard Phillips Fund ("Fund") for allegedly failing to provide it with certain promised funding. The late Howard Phillips, a Florida resident, bequeathed the

stock in his Florida-based company ("Company") to the Fund on the condition that the Fund share the Company's profits with his alma mater, which is located in New Hampshire. The New Hampshire court dismissed the complaint against the Fund for lack of personal jurisdiction. Id. at 286.

The Court of Appeals agreed that the exercise of specific jurisdiction over the Fund in New Hampshire was impermissible because its contacts with that forum were not related to Exeter's claims. Id. at 292. The court reasoned that these claims revolved around the meaning of Howard Phillips' will and the extent to which the Fund met its obligations under it. Florida was the forum in which the will was executed, the Fund accepted the bequest, and the payment decisions were made. The court explained that New Hampshire had no ties to Exeter's tort claim for breach of fiduciary duty given that any breach occurred in Florida when the Fund made its miscalculation of the payments due Exeter. With respect to the contract claim, the fact that New Hampshire was the site where the payments were received did not, on its own, settle conclusively the jurisdictional decision. Id. at 291. Finally, the court determined that a visit to New Hampshire by a representative of the Fund to discuss the dispute was of no jurisdictional consequence. The Fund did not make out a prima facie case for the necessary minimum contacts with New Hampshire so as to subject it to suit there.

Here, the first two counts of the complaint assert that Wyeth and the Trust concealed the existence of the lien held by

-10-

American Asset Finance on the fees it claims as its own.  The alleged fraudulent concealment occurred after Resource gave notice of its lien.  Any alleged concealment by the Trust necessarily occurred in Pennsylvania where the Trust operates and conducts its business.  The fact that Resource, the plaintiff, does business in Rhode Island is inadequate to support the exercise of jurisdiction over a nonresident defendant. Admittedly, the Trust has some attenuated contacts with Rhode Island, in that it mailed payments to Rhode Island class members, their attorneys, and others, but these contacts do not bear any relation to the fraudulent concealment claims.  They cannot be said to relate directly to or arise out of Resource's contacts with Rhode Island.  Exeter, 196 F.3d at 288.  The Trust's contacts with that state simply do not relate to these claims in the complaint.

Count three of the complaint is a claim for gross negligence and willful misconduct while count four asserts a general negligence claim.  These counts allege that Wyeth and the Trust wrongfully paid funds to Gregory and American Asset Finance after receiving notice of the lien held by Resource in such funds.  Our analysis here mirrors our analysis with respect to the fraudulent concealment claims in that the contacts that do exist between the Trust and Rhode Island, which consist almost entirely of the Trust mailing payments to residents of Rhode Island, have nothing to do with its negligence in paying funds to Gregory and American Asset Finance.  The payments to Gregory from

the Trust originated in Pennsylvania and were apparently sent to Oklahoma where Gregory resided.[7] The plaintiff fails to provide any evidence regarding the location of American Asset Finance. The Trust's alleged willful misconduct, gross negligence, or negligence does not directly relate to or arise out of its contacts with Rhode Island.

Count five of the complaint pleads conspiracy to commit fraud. This count avers that Wyeth and the Trust conspired with Gregory and American Asset Finance to deprive Resource of its funds. We know that the Trust is located in Pennsylvania and Gregory was located in Oklahoma before his death. As the present record is couched, the alleged conspiracy took place in either Pennsylvania or Oklahoma or both. Once again, the contacts between the Trust and Rhode Island bear no relation to the underlying claim here. Thus, exercising specific jurisdiction over the Trust in connection with this claim would be improper.

Resource, in count six of the complaint, asserts that Wyeth and the Trust breached their fiduciary duty to Resource by failing to honor its rights to Gregory's attorneys' fees. A "breach of fiduciary duty occurs where the fiduciary acts disloyally." Exeter, 196 F.3d at 291. Any breach occurred in Pennsylvania and arose when the Trust paid to Gregory and

---

7. Although the plaintiff failed to submit evidence regarding Gregory's residence prior to his death, the court located this information in the complaint filed by Resource in the New Hampshire litigation.

American Asset Finance the funds in which Resource claims an interest.

Finally, with respect to the seventh count for tortious interference with the contract between Resource and Gregory, the exercise of specific jurisdiction would be unreasonable given that the alleged interference occurred when the Trust mailed payments from its office in Pennsylvania. Again, these payments were not mailed to Rhode Island but were sent to Gregory in Oklahoma. This cause of action simply has nothing to do with the contacts the Trust has with Rhode Island.

Even assuming that the plaintiff had met its burden of showing a prima facie showing of relatedness, it has not come forward with evidence that the Trust has "purposely availed" itself of the privilege of conducting business in Rhode Island. Furthermore, Resource has offered no evidence that the Trust benefitted from any contacts with Rhode Island such that the exercise of jurisdiction over it in that forum would be foreseeable. Astro-Med, Inc., 591 F.3d at 10.

Our decision that specific jurisdiction does not exist over the Trust in Rhode Island is consistent with the Supreme Court's decision in Hanson v. Denckla, 357 U.S. 235. Hanson involved a dispute over the right to the proceeds of an inter vivos trust, which was established in Delaware with a Delaware trustee by a Pennsylvania settlor, Dora Browning Donner, who later moved to Florida. Donner later executed her will and an inter vivos power of appointment over the Trust in Florida.

After her death, two groups of claimants asserted the right to $400,000 of the corpus of the trust, which consisted of securities.

The parties sought a declaratory judgment in Florida chancery court to resolve which parties were entitled to the corpus of the trust. Several nonresident defendants, including the Delaware trustee, Wilmington Trust Company, were named but could not be served. While the Florida chancery court held that it lacked jurisdiction over the trustee, the Florida Supreme Court reversed.

The United States Supreme Court held that the exercise of personal jurisdiction over the nonresident defendant, the Delaware trustee, in Florida was unreasonable because it had not established minimum contacts with that forum. 357 U.S. at 251. It reasoned that the trustee did not maintain an office in Florida and transacted no business there. Id. The trust assets were never held or administered in Florida and the trustee never solicited business there. Id. Additionally, the lawsuit, which involved "the validity of an agreement that was entered without any connection with the forum State," did not arise out of any act done or any transaction consummated in Florida. Id. at 252. Although the trustee paid the trust income to the settlor in Florida during her lifetime, the Court did not deem these "minimum contacts" sufficient for the exercise of personal jurisdiction. The Court concluded that the lawsuit "cannot be

said to be one to enforce an obligation that arose from a privilege the defendant exercised in Florida." Id.

Here, the Trust's contacts with Rhode Island are even more attenuated. The Trust did pay funds to class members and entities in Rhode Island, but no other significant contact can be said to exist with that forum. The Trust does not maintain an office in Rhode Island and it does no business there. The Trust's assets are not held or administered in Rhode Island. If jurisdiction did not exist in Hanson, it certainly cannot exist here.

We will grant the motion of the AHP Settlement Trust to dismiss the action as to it for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. We need not reach the attendant question whether venue is proper under Rule 12(b)(3).