IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | |
| SHEILA BROWN, et al. | : : | |
| v. | : : | |
| AMERICAN HOME PRODUCTS CORP. | : : | NO. 99-20593 |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8869**

Bartle, J.                                            May 11, 2012

        Before the court is the joint petition of the Current
Joint Fee Applicants[1] and the Current Plaintiffs' Liaison Counsel
Fee Applicant ("PLC")[2] for an award of attorneys' fees and
expense reimbursements relating to common benefit work performed
from January 1, 2011 through December 31, 2011 (the "Common
Benefit Period").  This court has previously awarded fees in
Pretrial Order ("PTO") Nos. 2622, 7763A, 8516, and 8646.

        The current Joint Fee Applicants seek an aggregate
award of attorneys' fees in the amount of $1,839,086.25 from the
Fund A Escrow Account for Class-related services performed during

---

1.  The Current Joint Fee Applicants are:  (1) Cummings, Cummings
& Dudenhefer; (2) Levin, Fishbein, Sedran & Berman; and (3) Roda
Nast, P.C.

2.  The Current PLC Fee Applicant is Levin, Fishbein, Sedran &
Berman.

2011, with such fee to be allocated and paid in accordance with an agreement among them.  The PLC requests an award of attorneys' fees in the amount of $1,668,768.75 to be paid from the MDL 1203 Fee and Cost Account for MDL-related services performed during 2011.

Finally, the Current Joint Fee Applicants incurred $89,123.93 in litigation expenses during 2011.  This court has already authorized payment of $78,613.38 of these expenses from the MDL 1203 Fee and Cost Account.  Pursuant to PTO No. 7763, the PLC seeks an order directing the Settlement Fund to reimburse half this amount, or $39,306.69, to the MDL 1203 Fee and Cost Account.  Levin, Fishbein, Sedran & Berman and Roda Nast, as two of the Current Joint Fee Applicants, petition for reimbursement of the remaining $10,510.55 in out-of-pocket expenses to be allocated for payment equally as between the Settlement Fund and the MDL 1203 Fee and Cost Account.

I.

In February, 2012 the court-appointed auditor, Alan B. Winikur, C.P.A., filed his Seventh Audit Report setting forth the results of his audit of the professional time and expenses reported by counsel as eligible for payment or reimbursement for the period from January 1, 2011 through December 31, 2011.  In this Report, Mr. Winikur stated that three law firms had performed compensable "common benefit" work during 2011:  (1) Cummings, Cummings & Dudenhefer; (2) Levin, Fishbein, Sedran & Berman; and (3) Roda Nast, P.C.

Mr. Winikur reports that Class Counsel and the PLC performed 4,707.15 hours of professional services during 2011. The lodestar value for this common benefit work was $1,839,086.25.  The total amount of reimbursable expenses incurred by these attorneys during 2011 was $89,306.69. According to Winikur, the court has authorized previously payment of bona fide common benefit expenses from the MDL Fee and Cost Account in the total amount of $78,613.38 for the same period ending on December 31, 2011.

Pursuant to the Settlement Agreement, an aggregate global settlement fund of $3.75 billion was created.  Originally, two funds, known as Fund A and Fund B, were established to pay for different types of benefits to class members.  The sum of $200 million was placed into a "Fund A Escrow Account" for the purpose of paying attorneys' fees to Class Counsel and other attorneys in connection with Fund A benefits provided to class members.  In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2010 WL 3292787, at *2 (E.D. Pa. Aug. 19, 2010).  A "Fund B Attorneys' Fees Account" of $229 million was also created to pay attorneys' fees to Class Counsel and Common Benefit Attorneys involved in creating the Matrix benefits available to class members.  Any amounts not awarded as attorneys' fees from this account are to be refunded to Wyeth.  Id.

Under the Fifth Amendment, Funds A and B were merged into one fund, called the "Settlement Fund."  See id. at *2 n.5 (citing In re Diet Drugs Prods. Liab. Litig., No. 02-4581, 2004

-3-

WL 326971 (3d Cir. Feb. 23, 2004)).  And in PTO 8646, we
consolidated the Fund B Attorneys' Fees Account with the Fund A
Escrow Account.  <u>See</u> <u>In re Diet Drugs Prods. Liab. Litig.</u>, No.
99-20593, 2011 WL 2174611, at *11 (E.D. Pa. June 2, 2011).  As of
December 31, 2011, the consolidated Fund A Escrow Account had a
total balance of $5,373,314.93.

     Additionally, the MDL 1203 Fee and Cost Account was
created to pay for attorneys' fees and costs associated with the
work of the Plaintiffs' Management Committee ("PMC"), PLC, and
attorneys authorized by those two groups to work on behalf of the
plaintiffs in the MDL 1203 or coordinated state proceedings.
<u>Diet Drugs</u>, 2010 WL 3292787, at *2.  This account contains
assessments of a percentage of any recoveries by plaintiffs whose
actions are transferred to the MDL 1203 action and of recoveries
by plaintiffs in the coordinated state court proceedings.  <u>Id.</u> at
*3.  As of December 31, 2011, this account had a balance of
$8,705,120.66.  This balance represents $1,842,924.16 in new
assessments deposited into the account from claim payments made
during 2011.

     The Fee Applicants, as noted previously, move for an
order awarding attorneys' fees, expense reimbursements, and other
relief as follows:

> • The Current Joint Fee Applicants seek an
> aggregate award of attorneys' fees in the
> amount of $1,839,086.25 from the Fund A
> Escrow Account for class-related services
> performed during 2011, with such aggregate
> fee to be allocated according to an agreement
> between them;

-4-

- The PLC seeks an award of attorneys' fees in the amount of $1,668,768.75 to be paid from the MDL 1203 Fee and Cost Account;

- The PLC moves for an order directing the Settlement Fund to reimburse the amount of $39,306.69 to the MDL 1203 Fee and Cost Account to repay the costs advanced by that account on behalf of the interests of the Class; and

- The Current Joint Fee Applicants seek reimbursement of $10,510.55 in out-of-pocket expenses to be allocated equally for payment by the Settlement Fund and the MDL 1203 Account.

## II.

There have been no objections to this petition. Nonetheless, we must conduct a "thorough judicial review" of the requested fee award as "required in all class action settlements." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995). According to our Court of Appeals, a district court reviewing a fee petition "must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 730 (3d Cir. 2001) (quoting Aucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328-29 (9th Cir. 1999)).

Our Court of Appeals has previously approved the percentage-of-recovery method to determine the reasonableness of the requested fee in connection with this litigation. See In re Diet Drugs Prods. Liab. Litig., 582 F.3d 524, 540 (3d Cir. 2009). This method awards as counsel fees a percentage of the settlement

value.  In re Diet Drugs Prods. Liab. Litig., 553 F. Supp. 2d
442, 466 (E.D. Pa. 2008).  As in the past, we will also cross-
check the reasonableness of our results using an abbreviated
version of the lodestar analysis.

The percentage-of-recovery method requires that we
begin with a reasonable estimate of the value of the settlement.
In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d
283, 334 (3d Cir. 1998); In re Gen. Motors Corp., 55 F.3d at 822.
The settlement has already been valued at $6,437,211,516.  Diet
Drugs, 553 F. Supp. 2d at 472.  Our Court of Appeals did not
question this valuation, and we have previously stated that
"there is no reason to revisit that number."  Diet Drugs, 2010 WL
3292787, at *8.

Next, we consider the following ten Gunter/Prudential
Factors to determine what constitutes a reasonable percentage fee
award:

> (1) the size of the fund created and the
> number of beneficiaries, (2) the presence or
> absence of substantial objections by members
> of the class to the settlement terms and/or
> fees requested by counsel, (3) the skill and
> efficiency of the attorneys involved, (4) the
> complexity and duration of the litigation,
> (5) the risk of nonpayment, (6) the amount of
> time devoted to the case by plaintiffs'
> counsel, (7) the awards in similar cases, (8)
> the value of benefits attributable to the
> efforts of class counsel relative to the
> efforts of other groups, such as government
> agencies conducting investigations, (9) the
> percentage fee that would have been
> negotiated had the case been subject to a
> private contingent fee arrangement at the
> time counsel was retained, and (10) any
> innovative terms of settlement.

Gunter, 223 F.3d at 195; Prudential 148 F.3d at 228-40.  We do
not apply these factors in a "formulaic way" and recognize that
one factor may outweigh others.  Id.  Our Court of Appeals has
emphasized that "what is important is that the district court
evaluate what class counsel actually did and how it benefitted
the class."  In re AT&T Corp. Sec. Litig., 455 F.3d 160, 165-66
(3d Cir. 2006).

## A.  SIZE OF THE FUND CREATED AND THE NUMBER OF PERSONS BENEFITTED

As stated above, we have already noted the size of the
Settlement Fund to be approximately $6.44 billion.  Diet Drugs,
553 F. Supp. 2d at 472.  During 2011, 153 Class Members received
benefits totaling $37,659,346 pursuant to the terms of the
Settlement Agreement.  This total includes the following awards:

- 132 Class Members received Matrix benefits totaling $32,847,758;

- 13 Class Members received a total of $66,000 in Cash/Medical Services benefits

- 7 Class Members received a total of $1,148 in purchase price refunds;

- 1 Class Member received a total of $850 in Privately Obtained Screening Period Echocardiogram benefits; and

- The Settlement Fund paid a total of $4,743,590 to administer the terms of the Settlement Agreement in order to provide Matrix benefits, Cash/Medical Services benefits, and purchase price refunds.

We have previously recognized the "immense size of the Fund
created and the thousands of people" who have benefitted since
this court first approved the Settlement Agreement on August 28,

-7-

2000.  <u>Diet Drugs</u>, 2010 WL 3292787, at *9.  This factor weighs in
favor of granting to the Current Joint Fee Applicants their
requested awards.

### B.  PRESENCE OR ABSENCE OF SUBSTANTIAL OBJECTIONS

We must next consider the "presence or absence of
substantial objections by members of the class to the settlement
terms and/or fees requested by counsel."  <u>Gunter</u>, 223 F.3d at
n.1.  Less than thirty objections were filed in connection with
the 2007 petition for fees and costs.  <u>Diet Drugs</u>, 553 F. Supp.
2d at 473.  All of these objections were either overruled by this
court with no further appeal or appealed and dismissed.  <u>Id.</u>  No
objections were filed in response to the fee petitions covering
the years 2007-2010.  <u>Diet Drugs</u>, 2011 WL 2174611, at *4.

Similarly, no objections have been filed regarding the
current 2011 fee petition.  As we stated previously, the "paucity
of objections filed in response to the original and renewed
petitions for attorneys' fees and costs does not necessarily
establish that the requests in the Joint Petition are proper."
<u>Diet Drugs</u>, 553 F. Supp. 2d at 474.  Nonetheless, the absence of
any objection is indicative of the fairness of the petition.  <u>Id.</u>
Thus, this factor weighs in favor of granting the current fee
petition but does not relieve this court of its independent
obligation to ensure the fairness of the award.

### C.  THE SKILL AND EFFICIENCY OF THE ATTORNEYS INVOLVED

We previously found that the Joint Fee Applicants
"handled with superior skill and efficiency the resolution of

-8-

claims in this exceedingly complex class action." Diet Drugs, 2010 WL 3292787, at *10 (citing Diet Drugs, 553 F. Supp. 2d at 474). In 2011, the Current Joint Fee Applicants helped to resolve several novel issues regarding the interpretation of the Settlement Agreement. In addition, they assisted in the administration of Matrix claims, litigated issues related to primary pulmonary hypertension ("PPH"), and helped to administer the Cardiovascular Medical Research and Education Fund ("CMREF") to promote research regarding PPH, its causes, treatment, and cure. They performed this work in a diligent and timely manner. Thus, the skill and efficiency of the attorneys involved weighs in favor of granting the requested awards.

### D. COMPLEXITY AND DURATION OF THE LITIGATION

In PTO No. 7763, this court recognized that the "sheer breadth of the Settlement Agreement and its many moving parts created a virtual labyrinth through which the Joint Fee Applicants were forced to navigate." Diet Drugs, 553 F. Supp. 2d at 477-78. This litigation has been pending for well over a decade. According to statistics maintained by the Judicial Panel on Multidistrict Litigation, a total of 20,180 civil actions involving Diet Drugs have been transferred to or filed in this court for coordinated or consolidated pretrial proceedings as part of MDL 1203. To date, this court has issued approximately 8,867 pretrial orders in connection with MDL 1203.

Michael Fishbein, Esquire, who serves as Class Counsel in connection with the Settlement Agreement and has served as PLC

-9-

and Co-Chairman of the PMC, has submitted an affidavit in support
of the Joint Petition describing the work performed by Class
Counsel and the PLC during 2011.  We will briefly summarize some
of the work that Mr. Fishbein reports in his affidavit.

        First, Class Counsel reviewed 126 claims and referred a
number of them to the Consensus Expert Panel ("CEP") for re-
audit.[3]  As a consequence of the re-audits by the CEP, Class
Members received approximately $1,750,000 in additional Matrix
benefits during 2011.  Class Counsel also provided assistance to
187 Matrix claimants in preparing and submitting claims to the
AHP Settlement Trust ("Trust") through the Class Counsel Claims
Office.

        In 2011, Class Counsel also dealt with several novel
interpretation issues related to the Settlement Agreement.  These
issues included:

> • What is the definition of an "attending
> Board-Certified Cardiologist" within the
> meaning of Sections IV.B.2.c(3)(b),
> IV.B.2.c(4)(c)(ii)-(iii),
> IV.B.2.c(5)(b)(ii)(c), IV.B.2.c(5)(b)(iv),
> and IV.B.2.c(5)(c);
>
> • Is hemodynamic compromise required to
> state a Matrix Level V condition based on
> qualification at Matrix Level II, III, or IV
> and ventricular fibrillation under the
> provisions of Section IV.B.2.c(5)(d);

---

3.  This court approved the creation of the CEP in PTO No. 6100.
The CEP reviews claims to determine if the auditor departed from
accepted standards of practice in applying the Settlement
Agreement.  The CEP can then order the termination or retraining
of the auditor and/or re-audit of the claim.

- For purposes of determining whether a
Class Member with aortic regurgitation will
recover on Matrix B, is the existence of
aortic stenosis to be determined based
entirely on echocardiographic measurements or
is it appropriate to consider surgical
observations as well; and

- Does a balloon valvuloplasty in which the
heart valves are repaired without surgical
dissection of the sternum qualify as valvular
repair surgery within the meaning of Section
IV.B.2.c(3)(a)?

With each of these questions, Class Counsel performed medical
research and consulted cardiology experts.  They then engaged in
negotiation with Wyeth and came to agreements to resolve the
claims affected by the various interpretation issues.

    Furthermore, Class Counsel engaged in settlement
negotiations with Wyeth regarding claims pending in the Show
Cause process.  As a result of this effort, 125 of the 267
pending Show Cause claims were resolved.  This resulted in the
payment of nearly $3 million in additional Settlement Benefits to
Class Members.  Class Counsel continued to deal with problems
related to Medicare liens asserted by the government, including
negotiating and drafting a new proposed Court Approved Procedure
to improve the process by which the Trust addresses questions of
Medicare reimbursement.  Class Counsel also aided the appeals
from Show Cause proceedings of several Class Members.  In
addition to assisting in the litigation of PPH claims, Class
Counsel continued to manage the CMREF to promote research
regarding PPH, its causes, treatment, and cure.  Finally, Class
Counsel played a significant role in the planning activities of

-11-

the Trust, including the creation of a 2012 budget and a five-year plan for the Trust.

These are just some of the many accomplishments of the Current Joint Fee Applicants during 2011.  As we have noted in past PTOs, Class Counsel continues to undertake many complex matters within this litigation.  See Diet Drugs, 2011 WL 2174611, at *7.  However, we also have recognized that MDL 1203 is in its sunset period and that the number of individuals who benefitted from the Settlement Agreement in 2010 and 2011 has declined considerably when compared with earlier years.  See id.  This decline must be considered when determining the appropriate amount of any fee award.

### E.  RISK OF NON-PAYMENT

With respect to this Gunter/Prudential Factor, we have stated that the "risk of non-payment must be judged as of the inception of the action and not through the rosy lens of hindsight."  Diet Drugs, 553 F. Supp. 2d at 478.  However, we must also "reassess the risk" faced by Class Counsel throughout the litigation, including during 2011.  Diet Drugs, 582 F.3d at 543.  Class Counsel has already received a generous fee for work performed through 2010.  Because this court has created a reserve fund to compensate Class Counsel for work performed after 2008, the Current Joint Fee Applicants concede that the risk of non-payment during 2011 was minimal.

**F.   AMOUNT OF TIME DEVOTED TO THE CASE BY PLAINTIFFS' COUNSEL**

As discussed above, the Current Joint Fee Applicants spent a total of 4,707.15 hours of professional time on compensable common benefit activities during 2011 according to the Seventh Audit Report.  This is the equivalent of 588 eight-hour work days.  We accept the Auditor's finding.

**G.   AWARDS IN SIMILAR CASES**

The instant fee petition seeks an award of 0.0286% of the value of the Settlement Fund.  When this percentage is added to the awards previously made by this court in PTO Nos. 2622, 7763A, 8516, and 8646, counsel will have received a total award equaling 7.06% of the Settlement Fund.  We note that the present award requested represents 4.9% of the $37,659,346 in Settlement Benefits paid to class members during 2011.  If approved, the award will be made from interest earned on the Fund A Escrow Account.  The interest accrued on this account in the aggregate amount of approximately $44 million was not included in the value of the Settlement Fund.

We previously determined that the awards sought in cases similar to this one range from 4.8% to 15%.  <u>Diet Drugs</u>, 553 F. Supp. 2d at 480.  We noted that these figures should serve as "guideposts" when determining the appropriate award.  <u>Id.</u>  The award sought by the Current Joint Fee Applicants falls within these guideposts, and thus this factor weighs in favor of the requested award.

**H.   THE VALUE OF BENEFITS ATTRIBUTABLE TO THE EFFORTS OF CLASS COUNSEL RELATIVE TO THE EFFORTS OF OTHER GROUPS**

Under this factor, we must consider the benefits created by other groups, such as government agencies, when deciding on a reasonable fee.  We have previously stated that "Joint Fee Applicants should ... not receive fees based upon efforts that are not their own." <u>Diet Drugs</u>, 553 F. Supp. 2d at 480.  A failure to distinguish the work of other groups "would create an incentive for plaintiffs [sic] attorneys to 'minimize the costs of failure ... by free riding on the monitoring efforts of others.'"  <u>Prudential</u>, 148 F.3d at 337 (quoting John C. Coffee, Jr., <u>Understanding the Plaintiff's Attorney</u>, 86 Colum. L. Rev. 669, 681 (1986)).  We conclude now, as we did in the past, that "[n]either the Government, nor its agencies, provided the type of heavy-lifting that is sometimes provided in antitrust or securities cases." <u>Diet Drugs</u>, 2010 WL 3292787, at *12.  Because no group has provided aid to the Current Joint Fee Applicants for work performed during 2011, this factor weighs in favor of the requested fee award.

-14-

## I.   THE PERCENTAGE FEE THAT WOULD HAVE BEEN NEGOTIATED HAD THE CASE BEEN SUBJECT TO A PRIVATE CONTINGENT FEE AGREEMENT AT THE TIME COUNSEL WAS RETAINED

We have previously looked to the Major Filers[4]

Agreement when analyzing this fee.  Id. (citing Diet Drugs, 553

F. Supp. 2d at 482).  The Major Filers "were, in essence, the

market for the Joint Fee Applicants' services."  Id. (citing Diet

Drugs, 553 F. Supp. 2d at 482).  The Major Filers have stipulated

that the fees awarded to Class Counsel should include the

interest earned in the Fund A Escrow Account.  Id.  The instant

petition seeks an award of an additional portion of the interest

earned by this account and is thus consistent with the Major

Filers Agreement.  Because the Major Filers Agreement continues

to serve as the best predictor of what would have been negotiated

through a private contingent fee agreement, this factor weighs in

favor of granting the requested award.

### J.   INNOVATIVE TERMS OF THE SETTLEMENT

As we stated previously in connection with the 2007-

2009 fee petition, "we cannot deny that the Settlement Agreement

provisions [...] were indeed innovative at the time they were

---

4.   The Major Filers:
                         (1) represent[ed] about 97% of the Class
                         Members who exercised Downstream Opt-Outs and
                         filed lawsuits subject to the MDL 1203 fee
                         assessments; (2) filed 26,000 Level I and
                         Level II Matrix Benefit claims that became
                         Category One Claims under the Seventh
                         Amendment; (3) represented about half of the
                         Class Members who have had Matrix Benefits
                         claims processed by the Trust.
Diet Drugs, 553 F. Supp. 2d at 482.

-15-

drafted and have already served as models for other cases." Id.
at *13 (citing Diet Drugs, 553 F. Supp. 2d at 485).  The Current
Joint Fee Applicants have not had the opportunity in 2011 to
craft any additional innovative Settlement Agreement terms.
Although we continue to recognize the past innovation of the
Applicants, this factor does not weigh strongly against or in
favor of the requested award.

### III.   THE LODESTAR CROSS-CHECK

We must next perform a lodestar cross-check of the fee
award generated using the percentage-of-recovery method to ensure
that the 2011 Joint Fee Applicants will not receive a windfall.
The "lodestar cross-check is performed by multiplying the hours
reasonably expended on the matter by the reasonable hourly
billing rate which then provides the court with the 'lodestar
calculation.'"  Diet Drugs, 553 F. Supp. 2d at 485.  This number
is divided into the proposed fee award.  The resulting figure is
the lodestar multiplier.  We must then compare this number to
lodestar multipliers in similar cases.  Id.

According to Mr. Winikur's Seventh Audit Report, the
Current Joint Fee Applicants expended 4,707.15 hours on this
litigation in 2011.  The total lodestar value of this
professional time, using the applicable 2011 billing rates for
the Fee Applicants, is $1,839,086.25.  The requested fee of
$1,839,086.25 million divided by this lodestar value yields a

-16-

lodestar multiplier of 1.[5]  We previously declined to apply a
multiplier greater than 1 to the 2010 requested fee award.  See
Diet Drugs, 2011 WL 2174611, at *9.  Because the lodestar cross-
check yields a multiplier of 1 and based on application of the
Gunter/Prudential Factors, we find that the requested 2011 award
is reasonable.

## IV.  THE AWARD OF FEES FROM THE MDL 1203 ACCOUNT

The PLC also seeks an award of $1,668,768.75 from the
MDL 1203 Fee and Cost Account.  In 2011, there were 106 active
civil actions pending in MDL 1203 which had not been terminated
or remanded back to their respective transferor courts.  There
was also an increase in the number of PPH cases filed in 2011.

During 2011, plaintiffs obtained recoveries in MDL 1203
and coordinated state-court cases that were subject to assessment
in the amount of $32,151,399.  This produced additional deposits
into the MDL 1203 Account totaling $1,842,924.16.  The lodestar
value of the services performed by the PLC during 2011 totaled
$1,668,768.75.

The PLC also continued to:  (1) maintain a database to
track MDL 1203 actions; (2) update the MDL Trial Package; (3)
send copies of the Trial Package to attorneys to assist them in

_____

5.  We have previously recognized that the manner in which the
Joint Fee Applicants were required to maintain and report time
does not allow the attorneys to distinguish between time spent
pursuing class activities and that spent working on Opt-Out and
PPH cases.  Diet Drugs, 582 F. Supp. 2d at 487.  As a result, the
multiplier here is "artificially low" and could be as high as
1.9.

preparing Diet Drug cases; (4) explain multi-district litigation practice and procedure to attorneys; and (5) help to litigate PPH claims against Wyeth.

Our Court of Appeals has declared that the standard for awarding to court-appointed management committees a portion of the claim recoveries earned is as follows:

> Under the common benefit doctrine, an award
> of attorney's fees is appropriate where the
> plaintiff's successful litigation confers a
> substantial benefit on the members of an
> ascertainable class, and where the court's
> jurisdiction over the subject matter of the
> suit makes possible an award that will
> operate to spread the costs proportionately
> among them.  Thus, in order to obtain common
> benefit fees, an attorney must confer a
> substantial benefit to members of an
> ascertainable class, and the court must
> ensure that the costs are proportionately
> spread among that class.

Diet Drugs, 582 F.3d at 546 (internal citations omitted).

As we recognized previously, the administrative functions performed by the PLC have conferred a substantial benefit on the individuals in MDL 1203.  See Diet Drugs, 2010 WL 3292787, at *14.  The PLC has "helped to administer the MDL by tracking individual cases, distributing court orders, and serving as a repository of information concerning the litigation and settlement" to the benefit of these individuals.  Id. (citing Diet Drugs, 582 F.3d at 548).

The requested fee award is less than the amount of new assessments paid into the MDL 1203 Account and yields a lodestar

multiplier of 1.   Accordingly, we will grant the PLC an award of
$1,668,768.75 from the MDL 1203 Fee and Cost Account.

### V.   THE AWARD AND ALLOCATION OF EXPENSE REIMBURSEMENTS

The Current Joint Fee Applicants incurred a total of
$89,123.93 in properly documented expenses for the common benefit
of the class and the plaintiffs in MDL 1203 in 2011.   We have
already entered orders authorizing reimbursement of $78,613.38 of
these expenses from the MDL 1203 Account.   The remaining balance
represents expenses that were advanced by the following Current
Joint Fee Applicants in the following amounts:   (1) $4,244.24
from Levin, Fishbein, Sedran & Berman; and (2) $6,266.31 from
Roda Nast, P.C.

In PTO No. 7763, we approved a stipulation between
Wyeth and Class Counsel that at least 50% of the expenses from
the funds on deposit in the MDL 1203 Fee and Cost Account and/or
advanced by the Current Joint Fee Applicants should be paid by
the Settlement Fund as they were expended for the common benefit
of the class.

Therefore, we will enter an order directing that the
Settlement Fund reimburse the MDL 1203 Fee and Cost Account in
the amount of $39,306.69, which represents 50% of the expenses
paid from the MDL 1203 Fee and Cost Account during 2011.   We will
also order that 50% of the out-of-pocket costs advanced by the
2011 Joint Fee Applicants be reimbursed to them from the MDL 1203
Fee and Cost Account and the remaining 50% be reimbursed from the
Settlement Fund.

-19-

## VI. CONCLUSION

In conclusion, we will award attorneys' fees and expenses for work performed in 2011 as set forth in the attached pretrial order.