IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | ) ) ) | |
| SHEILA BROWN, et al. | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 99-20593 |
| AMERICAN HOME PRODUCTS CORPORATION | ) ) ) | 2:16 MD 1203 |

## MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8921

Bartle, J.                                              August 7 , 2012

        Before the court is the motion of Wyeth[1] to enforce the

Diet Drug Nationwide Class Action Settlement Agreement

("Settlement Agreement") pursuant to Pretrial Order ("PTO") No.

2383 (Feb. 26, 2002).  In its motion, Wyeth seeks to enjoin Gregg

Hale, as Independent Executor of the Estate of Susan Kay Young,

from proceeding with his lawsuit against Wyeth[2] in the Court of

Common Pleas of Philadelphia County, Pennsylvania captioned Gregg

Hale, as Independent Executor of the Estate of Susan Kay Young v.

Wyeth Pharmaceuticals, Inc., et al., November Term 2011,

_____

1.  Prior to March 11, 2002, Wyeth was known as American Home
Products Corporation ("AHP").

2.  The complaint names as defendants:  (1) Wyeth
Pharmaceuticals, Inc.; (2) AHP; (3) Wyeth-Ayerst Pharmaceuticals,
Inc.; (4) Wyeth-Ayerst International, Inc.; (5) Wyeth-Ayerst
Laboratories; (6) Wyeth, LLC; (7) and Wyeth.

No. 00812.  In that action, Mr. Hale alleges that Ms. Young suffered from primary pulmonary hypertension ("PPH") as a result of her ingestion of Diet Drugs.

In PTO No. 1415, this court approved the Settlement Agreement.  Paragraph 7 of PTO No. 1415 provides:

> The court hereby bars and enjoins all class members who have not, or do not, timely and properly exercise an Initial, Intermediate, Back-End or Financial Insecurity Opt-Out right from asserting, and/or continuing to prosecute against [Wyeth] or any other Released Party any and all Settlement Claims which the class member had, has or may have in the future in any federal, state or territorial court.

PTO No. 1415 ¶ 7.

Under the Settlement Agreement, PPH is excluded from the definition of Settled Claims, and therefore PPH claims are not subject to the release and bar provisions of the Settlement Agreement.  Settlement Agreement § VII.B.  The definition of PPH under the terms of the Settlement Agreement, however, is rigorous.  Plaintiffs claiming a diagnosis of PPH must satisfy a three-part definition.  Only the second prong of the definition is in controversy here.  That prong states that a plaintiff must provide:

> Medical records which demonstrate that the following conditions have been excluded by the following results:
>
> . . . .
>
> (a)  Echocardiogram demonstrating no primary cardiac disease including, but not limited to, shunts,

-2-

valvular disease (other than
tricuspid or pulmonary valvular
insufficiency as a result of PPH or
trivial clinically insignificant
left-sided valvular regurgitation),
and congenital heart disease (other
than patent foramen ovale) ....

(c)   Pulmonary function tests
demonstrating the absence of
obstructive lung disease ($FEV_1$/FVC
> 50% of predicted) and the absence
of greater than mild restrictive
lung disease (total lung capacity
> 60% of predicted at rest) ....

(d)   Perfusion lung scan ruling out
pulmonary embolism ....

Settlement Agreement § I.46.a.(2).

We previously have stated that PTO No. 1415 requires
"this court to decide if there is a genuine issue of material
fact as to whether plaintiff suffers from PPH.  If no such issue
exists, this court will enjoin the plaintiff from going forward.
Otherwise, it is a matter for the trial court."  PTO No. 3699
at 4 (July 6, 2004).

In the present motion, Wyeth asserts that Ms. Young
cannot meet Part 2 of the PPH definition because she failed to
produce results from a pulmonary function test.  As discussed
above, such test is required to rule out alternative causes of
PPH, including obstructive lung disease and greater than mild
restrictive lung disease.

In response, plaintiff asserts that Ms. Young did in
fact undergo pulmonary function testing on at least two occasions
in 2009.  These tests, however, did not measure Ms. Young's

-3-

lung capacity and, as a result, are insufficient to exclude greater than mild restrictive lung disease as required under Part 2(c) of the PPH definition set forth in the Settlement Agreement.

Plaintiff also asserts that Ms. Young satisfied the definition of PPH because her physician, Dr. Michael Rovzar, diagnosed her with "pulmonary arterial hypertension [PAH], presumed secondary to Fen-Phen usage." The definition of PPH in the Settlement Agreement expressly requires that a putative PPH plaintiff establish, through a pulmonary function test only, the absence of greater than mild restrictive lung disease. See PTO No. 8810 (Feb. 7, 2010). We must apply the Settlement Agreement as written. Thus, Dr. Rovzar's opinion is not relevant to determining whether Ms. Young can satisfy Part 2(c) of the definition of PPH set forth in the Settlement Agreement.

For the foregoing reasons, Wyeth's motion to enforce the Settlement Agreement will be granted.[3]

_____

3. In its motion to enforce, Wyeth also asserted that plaintiff had failed to present medical evidence excluding pulmonary embolism as required under Part 2(d) of the PPH definition. Plaintiff has since provided the results of a CT Scan which demonstrate no evidence of pulmonary embolism and thus Wyeth no longer moves to enjoin plaintiff on this basis.