IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL NO. 1203 |
| THIS DOCUMENT RELATES TO: | |
| SHEILA BROWN, et al. | |
| v. | |
| AMERICAN HOME PRODUCTS CORPORATION | CIVIL ACTION NO. 99-20593 |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8984**

Bartle, J.                                                   December 12, 2012

Sherry J. Sifford, a class member under the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth,[1] has filed a motion to determine that she timely registered for benefits pursuant to the Settlement Agreement as it existed before the Seventh Amendment and a motion to process her claim for Category Two Benefits.

I.

The facts relevant to Ms. Sifford's motion are not in dispute. On May 1, 2003, she mailed to the AHP Settlement Trust a Blue Form, which was unsigned. The Blue Form was to be used by class members to register for settlement benefits. It contained detailed questions seeking information about Ms. Sifford's

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation ("AHP").

personal and medical history and about her use of the diet drugs Pondimin and Redux. The Blue Form was to be signed under penalty of perjury and made clear to the reader that it "was an official Court document sanctioned by the Court that presides over the Diet Drug Settlement and submitting it to the AHP Settlement Trust is equivalent to filing it with a Court."

On October 24, 2005, the Trust mailed a letter to Ms. Sifford's counsel stating that it did not consider Ms. Sifford registered for benefits because her Blue Form was submitted without his client's signature. There was no response to this letter and no immediate attempt was made to cure the deficiency.

A year later, on October 23, 2006, Ms. Sifford filed a claim for Category Two Benefits, that is, for Cash/Medical Services Benefits under the Seventh Amendment to the Settlement Agreement. More than three years then passed. It was not until December 17, 2009, that she submitted a signed Blue Form for the first time. On January 14, 2010, the Trust again informed Ms. Sifford's counsel that Ms. Sifford was not registered for benefits and that therefore it could not process her claim for Category Two Benefits. See Settlement Agreement §§ IV.A.1.&2. and VI.C.2.a.&b.; Seventh Amendment §§ III.A.2 and X.B.&C. Ms. Sifford subsequently filed the instant motion for a determination that she timely registered under the terms of the Settlement Agreement and the Seventh Amendment thereto.

II.

The Seventh Amendment states that:

> "Category Two" consists of all Diet Drug Recipients (or their Representative Claimants) who:
>
> > a. Have submitted a signed Pink Form, Blue Form, Green Form Part I, Green Form Part II, and/or Gray Form to the Trust on or before May 3, 2003, or who presently have a good faith belief that they timely registered for benefits under the Settlement Agreement and are determined by the Court to have been timely registered for benefits under the terms of the Settlement Agreement as it existed before the Seventh Amendment.

Seventh Amendment § III.A.2.a. Ms. Sifford does not dispute that she failed to submit a signed Pink Form, Blue Form, Green Form Part I, Green Form Part II, and/or Gray Form to the Trust on or before the May 3, 2003 deadline. Instead, she argues that she is a Category Two Class Member with "a good faith belief that she timely registered for benefits under the Settlement Agreement" and that she timely submitted a Blue Form in accordance with terms of the Settlement Agreement as it existed before the Seventh Amendment.

Ms. Sifford relies on § VI.C.2.b. of the Settlement Agreement which provides:

> Submission of a PINK FORM or BLUE FORM that has not been fully completed shall be sufficient to "register" the Class Member for benefits, provided, however, that the missing information must be submitted in order for the Class Member to receive any benefits under this Settlement Agreement.

Ms. Sifford maintains that her May 1, 2003 unsigned Blue Form, while "not fully completed," was "sufficient to 'register' the Class Member for benefits."

We agree with the Trust that a Blue Form submitted without the signature of the claimant does not register a Class Member for benefits. We previously explained:

> The requirement that the drug recipient, if living, sign the Blue Form under penalty of perjury not only was clearly stated but was of particular significance. By executing the form, a claimant was conditionally releasing important rights and preserving the right to sue Wyeth in the tort system. If a lawyer or some other person signed the form on a claimant's behalf, it is not hard to envision, in a universe of tens of thousands of claimants, never-ending disputes over the authority of those lawyers or other persons to act. The Blue Form was designed to obviate this most unfortunate consequence. This court has emphasized on numerous occasions the importance of a claimant's own signature. See PTO Nos. 997, 1208, 1442, 2316, 3153, and 3154. The lack of a drug recipient's signature is a material omission, not a mere technicality. Without that signature, a claimant is not registered for benefits.

PTO No. 3253 at 6 (Feb. 12, 2004).

The failure of a claimant timely to sign a Blue Form under penalty of perjury is a material omission and not a mere technicality. It is more than the failure to provide complete information about a person's personal or medical history or diet drug use - a failure countenanced under § VI.C.2.b of the Settlement Agreement. A claimant's signature, however, is necessary to prevent fraud and to comply with a significant

deadline in the administration of the Settlement Agreement involving tens of thousands of claimants. Allowance of registration without the signatures of class members would be the source not only of chaos but also of mischief.

We have recognized that if a claimant shows excusable neglect, the court will not insist upon strict compliance with a deadline. The excusable neglect standard is a matter of equity and depends on "all relevant circumstances surrounding the party's omission." Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 395 (1993). Factors to be considered include: (1) the danger of prejudice to the adverse party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, and (4) whether the movant acted in good faith. See id.; In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 322-23 (3d Cir. 2001). We are mindful that an excess of liberality in finding excusable neglect would undermine the finality of judgments in class actions and would discourage settlements. See PTO No. 2345.

Under the first prong, we must determine the danger of unfair prejudice to Wyeth should the requested extension be granted. See Pioneer, 507 U.S. at 395. The Blue Form clearly states that the Class Member must affix his or her signature under penalty of perjury. This requirement was clearly set forth on the form, the various notices to Class Members, and on the Trust's website. We find that allowing Ms. Sifford to proceed at this late date would prejudice Wyeth. If she is permitted to

register out of time, the financial obligations of Wyeth related to this Nationwide Class Action Settlement could be adversely affected. She could not only claim Category Two Benefits but may also be able to claim other benefits. If she is permitted to do so, others in similar circumstances may belatedly appear with similar monetary claims.

Second, we must consider the length of delay and its effect on judicial proceedings. Ms. Sifford submitted her unsigned Blue Form on May 1, 2003. The Trust informed her counsel in October, 2005 that it did not deem her registered for benefits because the Blue Form she submitted did not contain her signature. Although Ms. Sifford submitted a claim for Category Two Benefits in October, 2006, she did not submit a signed Blue Form until December 17, 2009, more than six years after the deadline to register and more than four years after being first notified that the Trust did not consider her registered for benefits. In addition, Ms. Sifford did not move this court for relief from the registration deadline until two more months had passed. Allowing her to register at this late date would open the floodgates for similar motions by other Class Members who had submitted only an unsigned Pink Form or Blue Form prior to the deadline established for registration. Permitting an extension of time to register for benefits under these circumstances would frustrate the finality sought to be guaranteed by the Settlement Agreement.

Under the third prong, we must review Ms. Sifford's reason for the delay. She maintains that she has "good reasons" for filing her motion six years after the deadline for registration because the Trust did not determine her eligibility for Category Two Benefits until January 14, 2010. To the contrary, the Trust wrote to Ms. Sifford's counsel in October, 2005, almost four years earlier, that it did not deem her registered. Ms. Sifford has not explained why she delayed her response to the Trust's letter. Instead, she failed promptly to send in a signed Blue Form or ask this court for relief from the deadline for registration. We do not find her position compelling.

Finally, while we have no reason to doubt that Ms. Sifford acted in good faith, the danger of prejudice to Wyeth and the length of, and lack of reasons for, her delay weigh heavily in favor of finding that her actions do not constitute excusable neglect.

Accordingly, the motion of Ms. Sifford for a determination that she timely registered for benefits under the Diet Drug Nationwide Class Action Settlement and her motion to process her claim for Category Two Benefits will be denied.