IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS | : | MDL DOCKET NO. 1203 |
| (PHENTERMINE, FENFLURAMINE, | : | |
| DEXFENFLURAMINE) PRODUCTS | : | |
| LIABILITY LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| _____ | : | |
| MAY NIEH, | : | |
| | : | |
| v. | : | |
| | : | |
| WYETH LLC, et al. | : | NO. 13-20008-HB |

MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9234

Bartle, J.                                    May 12, 2014

        Plaintiff May Nieh ("Ms. Nieh"), a California citizen,
filed this multi-count lawsuit asserting only state law claims
in the Superior Court of California as part of that court's
Judicial Counsel Coordination Proceeding No. 4032, In re: Diet
Drug Litigation ("JCCP No. 4032"), against defendants Wyeth and
Pfizer, Inc. (collectively, "Wyeth") and Thomas Tam, M.D.
("Dr. Tam").  Wyeth is a citizen of Delaware and New York,[1] while
Dr. Tam is a citizen of California.  Claiming that Dr. Tam was

_____

[1] In 2009, Pfizer, Inc. acquired Wyeth LLC.  Pfizer, Inc. is
incorporated in Delaware and has its principal place of business
in New York.  As such, it is a citizen of both states for the
purposes of diversity jurisdiction.  28 U.S.C. § 1332(c)(1).
Pfizer, Inc. is the sole member of Pfizer, LLC, which in turn is
the sole member of Wyeth, LLC.  Thus, Wyeth LLC is also a
citizen of Delaware and New York.  See Katz v. Grayling Corp.,
No. 07-4891, 2007 U.S. Dist. LEXIS 93696, *3 (E.D. Pa. Dec. 20,
2007).

fraudulently joined, defendants removed the action to the United
States District Court for the Central District of California on
the basis of diversity of citizenship.  28 U.S.C. § 1332(a).
The Judicial Panel on Multidistrict Litigation subsequently
transferred the action to this court for all pretrial
proceedings pursuant to 28 U.S.C. § 1407 as part of the Diet
Drugs MDL 1203.  Before the court is plaintiff's motion to
remand to the state court on the grounds that Wyeth's removal
was untimely and that complete diversity of citizenship is
lacking. [2]  See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68
(1996).

I.

        Plaintiff alleges she suffered damages as a result of
ingesting the diet drugs Pondimin (fenfluramine) and Redux
(Dexfenfluramine), which were manufactured by Wyeth.  The
complaint states claims for negligence, deceit by concealment,
negligent misrepresentation, and violations of the California
Business and Professions Code against all three defendants.  In
addition, plaintiff asserts strict liability, negligence per se,
and breach of implied and express warranties against Wyeth as
well as medical negligence against Dr. Tam.

---

[2] Plaintiff also has sued "Does 1-50" defendants.  Since these
are unnamed defendants, their citizenship will not be considered
in determining whether diversity of citizenship exists.  28
U.S.C. § 1441(b)(1).

-2-

As noted above, plaintiff and Dr. Tam, who had prescribed diet drugs for her, are citizens of California.  On the face of the complaint, subject matter jurisdiction is lacking.  28 U.S.C. § 1332(a); see also Caterpillar, 519 U.S. at 68.  Wyeth, however, argues that Dr. Tam was fraudulently joined.  If so, Dr. Tam must be dismissed, and the court would then have subject matter jurisdiction because Wyeth is not a citizen of California.

As an MDL court sitting within the Third Circuit, we apply our Court of Appeals' fraudulent joinder standard.  See In re Korean Airlines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987).  The analysis requires this court to decide whether there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."  In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006).  Thus, "[i]f there is even a possibility that a state court would find the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to the state court."  Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

A defendant bears a heavy burden in seeking to have the court ignore the citizenship of a non-diverse defendant on the ground that he was fraudulently joined.  Id.  In determining

whether a defendant has met its burden, we must "resolve all contested issues of substantive fact in favor of the plaintiff." Id.  We also are cognizant of the fact that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand."  Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).  We are mindful that our inquiry into the claim of fraudulent joinder is less searching than what is permissible when a party seeks to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992).  Simply because a claim against a party may ultimately be dismissed for failure to state a claim or is otherwise barred does not necessarily mean that the party was fraudulently joined.  The test is whether a claim is colorable, that is, not "wholly insubstantial and frivolous."  Id.

Wyeth maintains that fraudulent joinder exists because plaintiff's claim against Dr. Tam for medical negligence is barred by California's medical negligence statute of limitations and because plaintiff's causes of action against Dr. Tam for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code are improperly pleaded.[3]  We will address each in turn.

---

[3] Wyeth also contends the medical negligence statute of limitations applies to and bars plaintiff's causes of action for

II.

California's medical negligence statute of limitations provides that a suit against a medical practitioner must be brought within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever comes first." Cal. Civ. Proc. Code § 340.5. A plaintiff, therefore, must file a complaint for medical negligence (1) "within three years after the injury, unless one of the three enumerated exceptions applies" or (2) "within one year after said plaintiff discovers, or should have discovered, the injury." Steingart, 243 Cal. Rptr. at 681 (citing Hills v. Aronsohn, 199 Cal. Rptr. 816, 818 (Cal. Ct. App. 1984)). None of the three enumerated exceptions applies here.[4]

It is undisputed that plaintiff first began experiencing physical manifestations of her injury and sought

---

negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code because a plaintiff cannot avoid the medical negligence statute of limitations by re-pleading malpractice claims under different theories. We need not reach this issue, given our disposition of the pending motion.

[4] The statute provides that the limitations period may be tolled only for one of the following reasons: (1) fraud, (2) intentional concealment, or (3) the presence of a foreign object. Steingart v. White, 243 Cal. Rptr. 678, 681 (Cal. Ct. App. 1988) (quoting Cal. Civ. Proc. Code § 340.5). Plaintiff does not argue any of these exceptions.

treatment as early as January, 2010, when she reported "dyspnea and [lower extremity] swelling."[5]  Plaintiff's physician, Rajan Saggar, M.D., stated that these were plaintiff's first pulmonary hypertension-related symptoms.  Thus, according to Wyeth, plaintiff's complaint is barred by the three-year limitations period because plaintiff did not initiate her action until well after January, 2013.[6]

While plaintiff concedes she sought treatment for dyspnea and lower extremity swelling as early as January, 2010, she argues that the three-year statute of limitations did not begin to accrue until July 9, 2012, when she was diagnosed with primary pulmonary hypertension ("PPH").[7]  According to plaintiff, her claim did not accrue earlier because "she did not know she had PPH, the physical manifestation of her injury and thus could not have known that diet drugs were implicated in her injury and

---

[5] Dyspnea is "difficult or labored respiration."
*Merriam-Webster's Med. Desk Dictionary* 225 (1996).

[6] Wyeth also argues plaintiff's claims against Dr. Tam are barred by the one-year limitations period provided by § 340.5.  Given our disposition, we need not address this argument.

[7] Ms. Nieh's medical records state she was diagnosed with pulmonary arterial hypertension ("PAH").  Today, PPH is commonly known as PAH.  That was not the case at the time the Settlement Agreement was drafted.  For clarity, we will refer to Ms. Nieh's diagnosis as PPH, the terminology used in the Settlement Agreement.

thus she couldn't have known Dr. Tam's prescription of diet drugs was the cause of her injury."[8]

Plaintiff misapprehends the three-year statute of limitations set forth in California Civil Procedure Code § 340.5.  Unlike the one-year statute of limitations, which commences only when the plaintiff understands the negligent cause of her injury, the three-year statute of limitations begins to run when "[damage] has become evidenced in some significant fashion, whether or not the patient/plaintiff actually becomes aware of the injury."  Marriage & Family Ctr. v. Pottel, 279 Cal. Rptr. 475, 478-79 (Cal. Ct. App. 1991).

In Marriage & Family Center, plaintiff brought a medical malpractice claim against her physician for psychological and emotional injuries resulting from a sexual encounter between the two of them in 1981.  During her sessions

---

[8] Relying primarily on § VII.B.4. of the Settlement Agreement, plaintiff also maintains that the statute of limitations has not run because she did not have a compensable claim related to PPH until October 1, 2012, when she met the definition of PPH set forth in the Settlement Agreement.  We disagree.  Section VII.B.4. of the Settlement Agreement provides, "For purposes of any statutes of limitations or similar time bar, the AHP Released Parties shall not assert that a Class Member actually had PPH unless and until the condition of the Class Member meets the definition of PPH set forth in [the Settlement Agreement]." (Emphasis added.)  As Health Care Provider Defendants are not included among the AHP Released Parties, see id. §§ I.5., I.48.a, I.48.b., the Settlement Agreement did not prevent Ms. Nieh from bringing any claim against Dr. Tam and it did not toll the statute of limitations as to any claim she might have had against him.

with a subsequent therapist in 1985, plaintiff described these
incidents but contended it was not until sometime in 1989, the
same year she filed her complaint, that she was able to tie her
injured psychological state to her prior therapist. Id. at 477-
78. The court ruled that while plaintiff might have satisfied
§ 340.5's one-year statute of limitations, she had not satisfied
its three-year statute of limitations. Id. at 478, 480. The
court rejected the notion that "there is a correlation between
manifestation of damage and the plaintiff's 'discovery' of the
damage." The court explained, "damage is 'manifested' for
purposes of commencing the three-year period when it has become
evidenced in some significant fashion, whether or not the
patient/plaintiff actually becomes aware of the injury." Id. at
480. Importantly, the court explained, "The one-year period
commences when the 'plaintiff discovers ... the injury.' The
three-year period, however, commences simply upon the 'date of
injury.'" Id.

Similarly, in Hills, 152 Cal. Rptr. at 817, the
plaintiff brought a medical malpractice claim against her
physician for damages she sustained following silicone
injections. In March, 1974, plaintiff reported lumps and
soreness in her breasts to her physician, who determined the
lumps to be typical of ones seen following silicone injections
that plaintiff had obtained almost eight years earlier. Id. In

-8-

January, 1977, plaintiff's physician recommended surgery to remove the lumps, which had grown and become even more uncomfortable.  Id. at 818.  A mastectomy and reconstructive surgery were performed in February and March, 1977, and plaintiff commenced her lawsuit in March, 1978.  Id.  In ruling that the trial court should have granted summary judgment in favor of the defendant physician on statute of limitations grounds, the Court of Appeal observed, "Here [plaintiff] admits she experienced soreness and noticed lumps in her breasts in March of 1974, four years before filing suit.  This condition caused her to consult [a physician] later that month.  This admission is sufficient to show that she suffered the damaging effect of the alleged malpractice on that date."  Id. at 822.

We disagree with plaintiff that Garabet v. Superior Court, 60 Cal. Rptr. 3d 800 (Cal. Ct. App. 2007), requires a different result.  In Garabet, 60 Cal. Rptr. 3d at 801, plaintiff brought a medical malpractice action against his physician for damages he sustained as a result of lasik surgery. Although plaintiff suffered cloudy vision, dryness, double vision, and loss of visual acuity within weeks after his surgery, he did not bring suit until almost seven years later when he learned that the operation never should have been performed because of the shape of his cornea.  Id. at 803.  The court ruled, "It follows that the event which activates the

three-year limitations period is the moment the plaintiff
discovers <u>the harm caused by the alleged negligence</u>.... Once
the damaging effect of the alleged wrongful act is apparent, the
statute is activated.  This event may occur even without the
knowledge that negligence was the cause of the injury." <u>Id.</u> at
806 (emphasis added).  The court held the claim to be time
barred.

      Here, it is undisputed that plaintiff suffered the
damaging effect of the alleged malpractice, that is, dyspnea and
lower extremity swelling, in January, 2010, which caused her to
consult a physician shortly thereafter.  It is irrelevant, for
purposes of the three-year statute of limitations, whether
plaintiff knew she had PPH, that diet drugs were implicated in
her injury, or that Dr. Tam's prescription of diet drugs might
be the cause of her injury.  <u>See</u> <u>Marriage & Family Ctr.</u>, 279
Cal. Rptr. at 480; <u>Garabet</u>, 60 Cal. Rptr. at 806.  Plaintiff
suffered the damaging effects of the alleged malpractice more
than three years before filing suit.  Accordingly, her medical
negligence claim against Dr. Tam is time barred.

III.

      As we previously noted, plaintiff filed this lawsuit
in California state court as part of Judicial Counsel
Coordination Proceeding No. 4032, <u>In re: Diet Drug Litigation</u>
("JCCP No. 4032").  The master pleadings in JCCP No. 4032 for

cases originally filed in the state court are governed by First Amended General Order No. 3 (Aug. 12, 1998) ("General Order No. 3"), which states that "[e]ach plaintiff shall file and serve an adoption of the operative master complaint" using an "adoption form" approved by that court. General Order No. 3 further provides that "[t]he Adoption Form shall control all new diet drug cases."

With respect to the master pleadings, General Order No. 3 states, "The master complaint and master answers will endeavor to set forth all pertinent causes of action, damages, and affirmative defenses of common concern which the parties believe, in good faith, are viable in California." The form of the Amended Master Complaint allows for only two claims against a Health Care Provider defendant. They are medical negligence and loss of consortium.[9]

The Adoption Form filed by plaintiff contains claims for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code against Dr. Tam, a Health Care Provider defendant. Wyeth contends the Adoption Form provides that these claims are available against either "Pharmaceutical Company Defendants Only" or "Pharmaceutical Company Defendants and Diet

---

[9] Plaintiff did not adopt the loss of consortium claim.

-11-

Center Defendants Only,"[10] and, as such, that plaintiff improperly modified the Adoption Form.

Wyeth also maintains that the Amended Master Complaint does not allow claims for negligence, deceit by concealment, negligent misrepresentation, or violations of the California Business and Professions Code against Dr. Tam, a Health Care Provider defendant. For example, Wyeth notes that the Amended Master Complaint alleges in support of a cause of action for deceit by concealment that Pharmaceutical Company Defendants, not a Health Care Provider defendant, made misrepresentations and suppressed facts. Similarly, Wyeth points out that the Amended Master Complaint asserts in support of causes of action for violations of the California Business and Professions Code that a Health Care Provider defendant was the one alleged to have been misled, not the one who allegedly was misleading.

Plaintiff states she does not concede that her claims for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code are improperly pleaded. Yet she does not provide any substantive response to Wyeth's arguments in that regard. Although plaintiff purports to adopt the Amended Master Complaint, she asserts claims against Dr. Tam that are not

---

[10] The Amended Master Complaint indicates that some claims, i.e. negligence and negligence per se, also are available against "Pharmacy Defendants."

supported by the Amended Master Complaint.  This is not permitted pursuant to General Order No. 3.  Thus, plaintiff's claims against Dr. Tam for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code are not colorable.

IV.

We also reject plaintiff's claim that Wyeth's removal of this action was untimely.  The time for removal is governed by 28 U.S.C. § 1446(b).  Under the general rule, "a notice of removal of a civil action ... shall be filed within thirty days after receipt by the defendant of a copy of the initial pleading."  Id. § 1446(b)(1).  Where the case is not removable based upon the initial pleading, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  Id. § 1446(b)(3) (emphasis added).

Plaintiff posits that Wyeth's removal on September 30, 2013 is untimely because Wyeth is unable to establish that her medical negligence claim is barred by the statute of limitations and because Wyeth could have determined from the face of the complaint, which was served on August 16, 2013, that plaintiff's remaining claims were improperly pleaded.

-13-

As an initial matter, Wyeth could not remove only part of plaintiff's claims.  Thus, whether Wyeth could have determined from the face of the complaint that some of plaintiff's claims were improperly pleaded is irrelevant because not all were improperly alleged.

In addition, plaintiff does not dispute that Wyeth received her medical records on August 29, 2013.[11]  These records disclosed that plaintiff's medical negligence claim against Dr. Tam was barred by California's medical negligence statute of limitations.  Wyeth timely removed this action on September 30, 2013, within the required thirty-day period.[12]  See 28 U.S.C. § 1446(b)(3).

---

[11] Notably, plaintiff also does not appear to dispute that Wyeth timely removed this action if Wyeth is able to establish her medical negligence claim is barred by the statute of limitations based on the medical records Wyeth received on August 29, 2013.

[12] The thirtieth day was September 29, 2013.  Since this was a Sunday, Wyeth had until Monday, September 30, 2013 to file its removal petition.  See Fed. R. Civ. P.  6(a)(1)(C).