IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: | : |
| JAMES McGREW, Individually and as Administrator of the Estate of CAROLYN McGREW, | : |
| v. | : |
| WYETH LLC, et al. | : NO.: 13-20007-HB |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9238**

Bartle, J.                                                         May 14, 2014

Plaintiff James L. McGrew, ("Mr. McGrew"), individually and as administrator of the Estate of Carolyn McGrew, a California citizen, filed this multi-count lawsuit asserting only state-law claims in the Superior Court of California as part of that court's Judicial Counsel Coordination Proceeding No. 4032, *In re: Diet Drug Litigation* ("JCCP No. 4032"), against defendants Wyeth and Pfizer, Inc. (collectively, "Wyeth") and James L. Thomson, M.D. ("Dr. Thomson"). Wyeth is a citizen of Delaware and New York,[1] while Dr. Thomson is a citizen of California.

---

[1] In 2009, Pfizer, Inc. acquired Wyeth LLC. Pfizer, Inc. is incorporated in Delaware and has its principal place of business
(continued . . .)

Claiming that Dr. Thomson was fraudulently joined, Wyeth removed the action to the United States District Court for the Central District of California on the basis of diversity of citizenship. 28 U.S.C. § 1332(a). The Judicial Panel on Multidistrict Litigation subsequently transferred the action to this court for all pretrial proceedings pursuant to 28 U.S.C. § 1407 as part of the Diet Drugs MDL 1203. Before the court is plaintiff's motion to remand to the state court on the grounds that Wyeth's removal was untimely and that complete diversity of citizenship is lacking.[2] See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

I.

Mr. McGrew alleges that his wife, Carolyn McGrew ("Ms. McGrew"), died as a result of ingesting the diet drugs Pondimin (fenfluramine) and Redux (dexfenfluramine), which were manufactured by Wyeth. Plaintiff brings claims for negligence,

---

(. . . continued)
in New York. As such, it is a citizen of both states for the purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1). Pfizer, Inc. is the sole member of Pfizer, LLC, which in turn is the sole member of Wyeth LLC. Thus, Wyeth LLC is also a citizen of Delaware and New York. See Katz v. Grayling Corp., No. 07-4891, 2007 U.S. Dist. LEXIS 93696, at *3 (E.D. Pa. Dec. 20, 2007).

[2] Plaintiff also has sued "Does 1-50" defendants. Since these are unnamed defendants, their citizenship will not be considered in determining whether diversity of citizenship exists. 28 U.S.C. § 1441(b)(1).

deceit by concealment, negligent misrepresentation, violations of the California Business and Professions Code, and loss of consortium against all three defendants. In addition, plaintiff asserts strict liability, negligence per se, and breach of implied and express warranties against Wyeth as well as medical negligence against Dr. Thomson.

As noted above, it is undisputed that plaintiff and Dr. Thomson, who had prescribed diet drugs for Ms. McGrew, are citizens of the State of California. On the face of the complaint, subject matter jurisdiction is lacking. 28 U.S.C. § 1332(a); see also Caterpillar, 519 U.S. at 68. Wyeth, however, argues that Dr. Thomson was fraudulently joined. If so, Dr. Thomson must be dismissed, and the court would then have subject matter jurisdiction because Wyeth is not a citizen of California.

As an MDL court sitting within the Third Circuit, we apply our Court of Appeals' fraudulent joinder standard. See In re Korean Airlines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987). The analysis requires this court to decide whether there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006). Thus, "[i]f there is even a possibility that a state

court would find the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to the state court." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

A defendant bears a heavy burden in seeking to have the court ignore the citizenship of a non-diverse defendant on the ground that he was fraudulently joined. Id. In determining whether defendants have met their burden, we must "resolve all contested issues of substantive fact in favor of the plaintiff." Id. We also are cognizant of the fact that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987). We are mindful that our inquiry into the claim of fraudulent joinder is less searching than what is permissible when a party seeks to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992). Simply because a claim against a party may ultimately be dismissed for failure to state a claim or is otherwise barred does not necessarily mean that the party was fraudulently joined. The test is whether a claim is colorable, that is, not "wholly insubstantial and frivolous." Id.

Wyeth maintains that fraudulent joinder exists because plaintiff's claims against Dr. Thomson for medical negligence

and loss of consortium are barred by California's medical negligence statute of limitations and because plaintiff's causes of action against Dr. Thomson for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code are improperly pleaded.[3] We will address each in turn.

II.

California's medical negligence statute of limitations provides that a suit against a medical practitioner must be brought within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever comes first."  Cal. Civ. Proc. Code § 340.5.  A plaintiff, therefore, must file a complaint for medical negligence (1) "within three years after the injury, unless one of the three enumerated exceptions applies" or (2) "within one year after said plaintiff discovers, or should have discovered, the injury."  Steingart, 243 Cal. Rptr. at 681 (citing Hills v. Aronsohn, 199 Cal. Rptr. 816, 818 (Cal. Ct. App. 1984)).  None of the three enumerated

---

[3] Wyeth also contends the medical negligence statute of limitations applies to and bars plaintiff's causes of action for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code because a plaintiff cannot avoid the medical negligence statute of limitations by re-pleading malpractice claims under different theories.  We need not reach this issue given our disposition of the pending motion.

exceptions applies here.[4]  Unlike the three-year statute of limitations, which begins to run when "[damage] has become evidenced in some significant fashion, whether or not the patient/plaintiff actually becomes aware of the injury," the one-year period commences only when the plaintiff understands the negligent cause of her injury.  Marriage & Family Ctr. v. Pottel, 228 Cal. App. 3d 1647, 279 Cal Rptr. 475, 478-79 (Cal. Ct. App. 1991).

Wyeth states that plaintiff's complaint, which was filed on July 10, 2013, is barred by § 340.5's one-year statute of limitations because the medical negligence and loss of consortium claims asserted therein accrued on July 20, 2011, when one of Ms. McGrew's physicians, George L. Smith, M.D., "carefully explained" to Mr. and Ms. McGrew that Ms. McGrew had diet drug-related primary pulmonary hypertension ("PPH").[5]  Plaintiff does not dispute that Dr. Smith actually communicated

---

[4] The statute provides that the limitations period may be tolled only for one of the following reasons:  (1) fraud, (2) intentional concealment, or (3) the presence of a foreign object.  Steingart v. White, 243 Cal. Rptr. 678, 681 (Cal. Ct. App. 1988) (quoting Cal. Civ. Proc. Code § 340.5).  Plaintiff does not argue any of these exceptions.

[5] Ms. McGrew's medical records state she was diagnosed with primary arterial hypertension ("PAH").  Today, PPH is commonly known as PAH.  That was not the case at the time the Settlement Agreement was drafted.  For clarity, we will refer to Ms. McGrew's diagnosis as PPH, the terminology used in the Settlement Agreement.

that Ms. McGrew had diet drug-related PPH on July 20, 2011; instead, he argues that the statute of limitations was tolled under the doctrine of intentional concealment because Dr. Thomson allegedly destroyed all the records related to Ms. McGrew's care and treatment. Wyeth argues, among other things, that any alleged intentional concealment does not toll the statute because Mr. and Ms. McGrew actually were on notice of the medical negligence claim.

      We agree with Wyeth. In Rita M. v. Roman Catholic Archbishop, 232 Cal. Rptr. 685, 690 (Cal. Ct. App. 1986), the California Court of Appeals ruled that the plaintiff could not take advantage of any tolling doctrine because she was aware of the relevant facts. The court explained, "[W]e pause to note an obvious, albeit often overlooked proposition. The doctrine of fraudulent concealment [for tolling the statute of limitations] does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'" Id. As plaintiff does not dispute that Dr. Smith told him and Ms. McGrew that she had diet drug-related PPH on July 20, 2011, plaintiff was on actual notice of the potential claim at that time. Therefore, plaintiff's medical negligence and loss of consortium claims, which were not filed until July 10, 2013, are barred by California's medical negligence statute of limitations.

III.

As we previously noted, plaintiff filed this lawsuit in California state court as part of Judicial Counsel Coordination Proceeding No. 4032, <u>In re: Diet Drug Litigation</u> ("JCCP No. 4032"). The master pleadings in JCCP No. 4032 for cases originally filed in the state court are governed by First Amended General Order No. 3 (Aug. 12, 1998) ("General Order No. 3"), which states that "[e]ach plaintiff shall file and serve an adoption of the operative master complaint" using an "adoption form" approved by that court. General Order No. 3 further provides that "[t]he Adoption Form shall control all new diet drug cases."

With respect to the master pleadings, General Order No. 3 states, "The master complaint and master answers will endeavor to set forth all pertinent causes of action, damages, and affirmative defenses of common concern which the parties believe, in good faith, are viable in California." The form of the Amended Master Complaint allows for only two claims against a Health Care Provider defendant. They are medical negligence and loss of consortium.

The Adoption Form filed by plaintiff contains claims for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code against Dr. Thomson, a Health Care Provider

defendant.  Wyeth contends the Adoption Form provides that these claims are available against either "Pharmaceutical Company Defendants Only" or "Pharmaceutical Company Defendants and Diet Center Defendants Only,"[6] and, as such, that plaintiff improperly modified the Adoption Form.

Wyeth also maintains that the Amended Master Complaint does not allow claims for negligence, deceit by concealment, negligent misrepresentation, or violations of the California Business and Professions Code against Dr. Thomson, a Health Care Provider defendant.  For example, Wyeth notes that the Amended Master Complaint alleges in support of a cause of action for deceit by concealment that Pharmaceutical Company Defendants, not a Health Care Provider defendant, made misrepresentations and suppressed facts.  Similarly, Wyeth points out that the Amended Master Complaint asserts in support of causes of action for violations of the California Business and Professions Code that a Health Care Provider defendant was the one alleged to have been misled, not the one who allegedly was misleading.

Plaintiff states he does not concede his claims for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code

---

[6] The Amended Master Complaint indicates that some claims, i.e. negligence and negligence per se, also are available against "Pharmacy Defendants."

are improperly pleaded.  Yet he does not provide any substantive response to Wyeth's arguments in that regard.  Although plaintiff purports to adopt the Amended Master Complaint, he asserts claims against Dr. Thomson that are not supported by the Amended Master Complaint.  This is not permitted pursuant to General Order No. 3.  Thus, plaintiff's claims against Dr. Thomson for negligence, deceit by concealment, negligent misrepresentation, and violations of the California Business and Professions Code are not colorable.

IV.

We also reject plaintiff's claim that Wyeth's removal of this action was untimely.  The time for removal is governed by 28 U.S.C. § 1446(b).  Under the general rule, "a notice of removal of a civil action ... shall be filed within thirty days after receipt by the defendant of a copy of the initial pleading."  Id. § 1446(b)(1).  Where the case is not removable based upon the initial pleading, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or <u>other paper</u> from which it may first be ascertained that the case is one which is or has become removable."  Id. § 1446(b)(3) (emphasis added).

Plaintiff posits that Wyeth's removal on September 30, 2013 is untimely because Wyeth could have

-10-

determined from the face of the complaint, which was served on August 16, 2013, that the medical negligence and loss of consortium claims were barred by the statute of limitations because the claims accrued on the date of Carolyn McGrew's death, which was December 24, 2011.  Plaintiff argues the remaining claims also could have been removed based on the face of the complaint given Wyeth's argument that they were improperly pleaded.

As an initial matter, Wyeth could not remove only part of plaintiff's claims.  Thus, whether Wyeth could have determined from the face of the complaint that some of plaintiff's claims were improperly pleaded is irrelevant because not all were improperly alleged.

Moreover, we agree with Wyeth that the date of Carolyn McGrew's death alone did not make this case removable.  In Norgart v. Upjohn Co., 981 P.2d 79, 93 n.5 (Cal. 1999), the Supreme Court of California ruled that:

> [F]or a cause of action for wrongful death specifically "against a health care provider based upon such person's alleged professional negligence" ... the statute of limitations incorporates both the general rule for defining the accrual of a cause of action and also the discovery rule as an exception thereto, inasmuch as it generally prescribes a limitations period of three years from the date on which the cause of action becomes complete with all of its elements, that is, the date of death, or a limitations period of one year after the

>       date on which the plaintiff comes at least
>       to suspect, or have reason to suspect, a
>       factual basis therefor, depending on which
>       of the two dates is the earlier.

Id. at 469 (emphasis added); see also Notturno v. San Antonio Cmty. Hosp., No. E040005, 2007 WL 1031696, at *4-5 (Cal. Ct. App. Apr. 6, 2007). Therefore, the date of death starts the three-year period under § 340.5, but it does not necessarily start the one-year period because it is possible that a plaintiff did not have reason to suspect a factual basis for the elements of his/her cause of action.

Neither Ferguson v. Dragul, 232 Cal. Rptr. 79 (Cal. Ct. App. 1986), nor Lamont v. Wolfe, 190 Cal. Rptr. 874 (Cal. Ct. App. 1986), both of which were cited by plaintiff, changes this result. In Ferguson, 232 Cal. Rptr. at 82-83, the court determined the statute of limitations as to claims of minors and whether the discovery limitation in § 340.5 applied to minors. In Lamont, 190 Cal. Rptr. at 875-76, the court determined whether the cause of action for wrongful death related back to the plaintiff's earlier-filed complaint asserting medical negligence.

Here, the fact that Ms. McGrew's date of death was included on the complaint did not make this case removable because Wyeth did not know whether plaintiff had a factual basis for his cause of action at the time of Ms. McGrew's death. See

Norgart, 981 P.2d at 93 n.5; Notturno, 2007 WL 1031696, at *4-5. When Wyeth reviewed the medical records it received on August 29, 2013, it discovered for the first time that plaintiff knew on July 20, 2011 that Ms. McGrew's PPH was diet drug-related. Plaintiff does not dispute that Wyeth received her medical records on August 29, 2013. Accordingly, Wyeth timely removed this action on September 30, 2013, within the required thirty-day period. See 28 U.S.C. § 1446(b)(3).[7]

---

[7] The thirtieth day was September 29, 2013. Since this was a Sunday, Wyeth had until Monday, September 30, 2013 to file its removal petition. See Fed. R. Civ. P. 6(a)(1)(C).