IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ | : | MDL NO. 1203 |
| FENFLURAMINE/DEXFENFLURAMINE) | : | |
| PRODUCTS LIABILITY LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| SHEILA BROWN, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME PRODUCTS CORP. | : | NO. 99-20593 |
| | : | |

## MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9294

Bartle, J.                                    June 17, 2014

        Before the court is the joint petition of the 2013
Joint Class Fee Applicants and the 2013 MDL Fee Applicant
(collectively "2013 Joint Fee Applicants") for an award of
attorneys' fees and expense reimbursements relating to work
performed from January 1, 2013 through December 31, 2013.  The
2013 Joint Class Fee Applicants are Cummings, Cummings, and
Dudenhefer and Levin, Fishbein, Sedran & Berman.  The 2013 MDL
Fee Applicant is Levin, Fishbein, Sedran & Berman.  Levin,
Fishbein, Sedran & Berman performed work on behalf of the
Plaintiffs' Liaison Counsel ("PLC") in 2013.  This court has
previously awarded fees in Pretrial Order ("PTO") Nos. 7763A,
8516, 8646, 8869, and 9102.

        The 2013 Joint Class Fee Applicants seek an aggregate
award of attorneys' fees in the amount of $1,026,425 from the AHP
Settlement Trust ("the Trust") pursuant to the stipulation

between Wyeth and Class Counsel with regard to the funding of future awards of class-related fees, with such fees to be allocated and paid in accordance with an agreement among them.

In addition, the 2013 MDL Fee Applicant requests an award of attorneys' fees in the amount of $944,700 to be paid from the MDL 1203 Fee and Cost account for MDL-related services performed during 2013.

Finally, the 2013 Joint Fee Applicants incurred $58,336.37 in litigation expenses during 2013.  This court has already authorized payment of $49,461.73 of these expenses from the MDL 1203 Fee and Cost Account.  Pursuant to PTO No. 7763, the 2013 Joint Fee Applicants seek an order directing the Settlement Fund to reimburse $24,730.86 to the MDL 1203 Fee and Cost Account.  The 2013 Joint Fee Applicants petition for reimbursement of the remaining $8,874.64 in out-of-pocket expenses to be allocated for payment equally as between the Settlement Fund and the MDL 1203 Fee and Cost Account.

**I.**

In February, 2014 the court-appointed auditor, Alan B. Winikur, C.P.A., filed his Ninth Audit Report setting forth the results of his audit of the professional time and expenses reported by counsel as eligible for payment or reimbursement for the period from January 1, 2013 through December 31, 2013.  In this Report, Mr. Winikur stated that two law firms had performed compensable "common benefit" work for the class during 2013:  (1) Cummings, Cummings & Dudenhefer and (2) Levin, Fishbein, Sedran &

-2-

Berman.   Mr. Winikur reports that during the 2013 calendar year
those two firms performed 2,514 hours of professional services.
The lodestar value of this common benefit work was $1,026,425.
The total amount of reimbursable expenses incurred by these
attorneys during 2013 was $58,336.37.   According to Mr. Winikur,
the court has previously authorized payment of bona fide common
benefit expenses from the MDL Fee and Cost Account in the total
amount of $49,461.73 for the same period ending on December 31,
2013.

        We previously have noted that two funds exist for the
purpose of paying attorneys' fees:   the consolidated Fund A
Escrow Account to pay attorneys in connection with Fund A and
Fund B benefits; and the MDL 1203 Fee and Cost Account to pay for
attorneys' fees and costs associated with the work of the
Plaintiffs' Management Committee ("PMC"), PLC, and attorneys
authorized by those two groups to work on behalf of the
plaintiffs in the MDL 1203 or coordinated state proceedings.   See
In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2010 WL
3292787, at *2 (E.D. Pa. Aug. 19, 2010).   The consolidated Fund A
Escrow Account was created with an initial payment by Wyeth.   The
MDL 1203 Fee and Cost Account contains assessments of a
percentage of any recoveries by plaintiffs whose actions are
transferred to the MDL 1203 action and of recoveries by
plaintiffs in the coordinated state court proceedings.   As of
January 31, 2014, the consolidated Fund A Escrow Account had a
total balance of $1,790.92 and the MDL 1203 Fee and Cost Account

-3-

had a balance of $4,355,551.61.  This balance represents the addition of $114,367.93 in new assessments deposited into the account as a result of $1,926,646.25 in claim payments made during 2013.

## II.

Although there have been no objections to this petition, we must conduct a "thorough judicial review" of the requested fee award as "required in all class action settlements."  In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995).  We previously have noted the standard of review our Court of Appeals requires a district court to employ, which includes consideration of the following ten factors:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

See, e.g., In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2013 WL 3326480, at *3 (E.D. Pa. Jun. 28, 2013) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 (3d Cir. 2000)).  We do

not apply these factors in a "formulaic way" and recognize that one factor may outweigh others. <u>Id.</u>  Our Court of Appeals has emphasized that "what is important is that the district court evaluate what class counsel actually did and how it benefitted the class." <u>In re AT&T Corp. Sec. Litig.</u>, 455 F.3d 160, 165-66 (3d Cir. 2006).

## A.  SIZE OF THE FUND CREATED AND THE NUMBER OF PERSONS BENEFITTED

We have previously noted the size of the Class Action Settlement Fund to be approximately $6.44 billion. <u>In re Diet Drugs Prods. Liab. Litig.</u>, 553 F. Supp. 2d 442, 472 (E.D. Pa. 2008).  During 2013, 78 Class Members received benefits totaling $25,524,508, pursuant to the terms of the Settlement Agreement. This total includes the following awards:

> • 76 Class Members received Matrix benefits totaling $21,293,444;
>
> • 2 Class Members received a total of $12,000 in Cash/Medical Services benefits; and
>
> • the Settlement Fund paid a total of $4,219,064 to administer the terms of the Settlement Agreement in order to provide Matrix benefits, Cash/Medical Services benefits.

We have previously recognized the "immense size of the Fund created and the thousands of people" who have benefitted since this court first approved the Settlement Agreement on August 28, 2000.  <u>Diet Drugs</u>, 2010 WL 3292787, at *9.  This factor weighs in favor of granting to the 2013 Joint Class Fee Applicants their requested awards.

-5-

### B.   PRESENCE OR ABSENCE OF SUBSTANTIAL OBJECTIONS

We must next consider the "presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." Gunter, 223 F.3d at 195 n.1.  Less than thirty objections were filed in connection with the 2007 petition for fees and costs.  Diet Drugs, 553 F. Supp. 2d at 473.  All of these objections were either overruled by this court with no further appeal or appealed and dismissed.  Id.  No objections were filed in response to the fee petitions covering the years 2007-2012.  See In re Diet Drugs Prods. Liab. Litig., No. 99-20593, 2011 WL 2174611, at *4 (E.D. Pa. June 2, 2011); 2013 WL 3326480, at *4.

Similarly, no objections have been filed regarding the current 2013 fee petition.  As we stated previously, the "paucity of objections filed in response to the original and renewed petitions for attorneys' fees and costs does not necessarily establish that the requests in the Joint Petition are proper." Diet Drugs, 553 F. Supp. 2d at 474.  Nonetheless, the absence of any objection is indicative of the fairness of the petition.  Id. Thus, this factor weighs in favor of granting the current fee petition but does not relieve this court of its independent obligation to ensure the fairness of the award.

### C.   THE SKILL AND EFFICIENCY OF THE ATTORNEYS INVOLVED

We previously found that the Joint Fee Applicants "handled with superior skill and efficiency the resolution of claims in this exceedingly complex class action." Diet Drugs,

-6-

2010 WL 3292787, at *10 (citing Diet Drugs, 553 F. Supp. 2d at
474).  The 2013 MDL Fee Applicant has likewise handled with great
skill those cases transferred to MDL 1203 for pretrial
proceedings.  In 2013, the Joint Class Fee Applicants helped to
resolve several difficult issues regarding the interpretation of
the Settlement Agreement.  In addition, they assisted in the
administration of Matrix claims, litigated issues related to
primary pulmonary hypertension ("PPH"), and helped to administer
the Cardiovascular Medical Research and Education Fund ("CMREF")
to promote research regarding PPH, its causes, treatment, and
cure.  They performed this work in a diligent and timely manner.
Thus, the skill and efficiency of the attorneys involved weighs
in favor of granting the requested awards.

### D.  COMPLEXITY AND DURATION OF THE LITIGATION

In PTO No. 7763, this court recognized that the "sheer
breadth of the Settlement Agreement and its many moving parts
created a virtual labyrinth through which the Joint Fee
Applicants were forced to navigate."  Diet Drugs, 553 F. Supp. 2d
at 477-78.  This litigation has been pending for well over a
decade.  In addition to the administration of the Class Action,
there is the related MDL.  According to statistics maintained by
the Judicial Panel on Multidistrict Litigation, more than 20,000
civil actions involving Diet Drugs have been transferred to or
filed in this court for coordinated or consolidated pretrial
proceedings as part of MDL 1203.  To date, this court has issued
almost 9,300 pretrial orders in connection with MDL 1203.

Michael Fishbein, Esquire, who serves as Class Counsel in connection with the Settlement Agreement and has served as Co-Chairman of the PMC, has submitted an affidavit in support of the Joint Petition describing the work performed by the Joint Fee Applicants during 2013.  We will briefly summarize some of the work that Mr. Fishbein reports in his affidavit.

First, the 2013 Joint Class Fee Applicants reviewed 94 claims and referred a number of them to the Consensus Expert Panel ("CEP") for re-audit.[1]  As a consequence of the re-audits by the CEP, Class Members received approximately $4,700,000 in additional Matrix benefits during 2013.  The 2013 Joint Class Fee Applicants also provided assistance to 73 Matrix claimants in preparing and submitting claims to the AHP Settlement Trust ("Trust") through the Class Counsel Claims Office.

In 2013, the Joint Class Fee Applicants also dealt with a novel interpretation issue related to the Settlement Agreement as follows:

> • Whether percutaneous balloon valvuloplasty constitutes surgery to repair or replace the mitral valve pursuant to Section IV.B.2.c(3)(a) of the Settlement Agreement and the standard of review of such a determination under the terms of the Settlement Agreement.

---

1.  This court approved the creation of the CEP in PTO No. 6100. The CEP reviews claims to determine if the auditor departed from accepted standards of practice in applying the Settlement Agreement.  The CEP can then order the termination or retraining of the auditor and/or re-audit of the claim.

-8-

Class Counsel determined its position with respect to this issue and communicated its position to Wyeth and the Trust.

Furthermore, the 2013 Joint Class Fee Applicants actively participated in the litigation of numerous show cause matters in our Court of Appeals.  For example, they submitted briefs in connection with the appeal of Thomas S. Yeary to address whether this court properly applied the reasonable medical basis standard.  They also negotiated with Wyeth a procedure by which Medicare lien issues could be resolved.  We approved this new procedure in July, 2013.

The 2013 MDL Fee Applicant continued to manage the CMREF to promote research regarding PPH, its causes, treatment, and cure.  It also worked with the Seventh Amendment Fund Administrator of the Trust to resolve issues surrounding checks that remained uncashed by Class Members.

The 2013 MDL Fee Applicant also actively participated in PPH litigation.  In addition to reviewing all motions to enforce the Settlement Agreement, it worked with Wyeth to develop suggested modifications to PTO No. 2383, which this court approved; monitored current medical developments regarding Diet Drugs, including PPH; and consulted with individual PPH plaintiffs.  As we have noted in past PTOs, the 2013 Joint Fee Applicants continue to undertake many complex matters within this litigation.  We also have recognized, however, that the Class Action administration and MDL 1203 are in their sunset period and that the number of individuals who benefitted from the Settlement

-9-

Agreement in 2013 has declined considerably when compared with earlier years. This decline must be considered when determining the appropriate amount of any fee award.

### E. RISK OF NON-PAYMENT

With respect to this Gunter/Prudential factor, we have stated that the "risk of non-payment must be judged as of the inception of the action and not through the rosy lens of hindsight." Diet Drugs, 553 F. Supp. 2d at 478. However, we must also "reassess the risk" faced by the 2013 Joint Class Fee Applicants throughout the litigation, including during 2013. In re Diet Drugs Prods. Liab. Litig., 582 F.3d 524, 543 (3d Cir. 2009). The 2013 Joint Class Fee Applicants have already received a generous fee for work performed through 2012. Because this court has created a reserve fund to compensate Class Counsel for work performed after 2008, the Joint Class Fee Applicants concede that the risk of non-payment during 2012 was minimal.[2]

### F. AMOUNT OF TIME DEVOTED TO THE CASE BY PLAINTIFFS' COUNSEL

As discussed above, the 2013 Joint Class Fee Applicants spent a total of 2,514 hours of professional time on compensable class common benefit activities during 2013 according to the Ninth Audit Report. This is the equivalent of more than 314 eight-hour work days. We accept the Auditor's finding.

---

2. Class counsel requested that the Fund A Escrow Account, which had a balance of $1,790.39 as of January 31, 2014, be terminated and disbursed to the Trust to offset the attorney's fees awarded for 2013. We will direct that the account be terminated.

## G.  AWARDS IN SIMILAR CASES

The instant fee petition seeks an award of 0.0159% of the value of the Settlement Fund.  When this percentage is added to the awards previously made by this court in PTO Nos. 7763A, 8516, 8646, 8869, and 9102, counsel will have received a total award equaling 7.1122% of the Settlement Fund.  We note that the present award requested represents 4.02% of the $25,524,508 in Settlement Benefits paid to class members during 2013.

We previously determined that the awards sought in cases similar to this one range from 4.8% to 15%.  Diet Drugs, 553 F. Supp. 2d at 480.  We noted that these figures should serve as "guideposts" when determining the appropriate award.  Id.  The award sought by the 2013 Joint Fee Applicants falls within these guideposts, and thus this factor weighs in favor of the requested award.

## H.  THE VALUE OF BENEFITS ATTRIBUTABLE TO THE EFFORTS OF CLASS COUNSEL RELATIVE TO THE EFFORTS OF OTHER GROUPS

Under this factor, we must consider the benefits created by other groups, such as government agencies, when deciding on a reasonable fee.  We have previously stated that "Joint Fee Applicants should ... not receive fees based upon efforts that are not their own."  Diet Drugs, 553 F. Supp. 2d at 480.  A failure to distinguish the work of other groups "would create an incentive for plaintiffs [sic] attorneys to 'minimize the costs of failure ... by free riding on the monitoring efforts of others.'"  In re Prudential Ins. Co. Am. Sales Practice

Litig., 148 F.3d 283, 337 (3d Cir. 1998) (quoting John C. Coffee, Jr., Understanding the Plaintiff's Attorney, 86 Colum. L. Rev. 669, 681 (1986)).  We conclude now, as we did in the past, that "[n]either the Government, nor its agencies, provided the type of heavy-lifting that is sometimes provided in antitrust or securities cases."  Diet Drugs, 2010 WL 3292787, at *12.  Because no group has provided aid to the Joint Fee Applicants for work performed during 2013, this factor weighs in favor of the requested fee award.

## I. THE PERCENTAGE FEE THAT WOULD HAVE BEEN NEGOTIATED HAD THE CASE BEEN SUBJECT TO A PRIVATE CONTINGENT FEE AGREEMENT AT THE TIME COUNSEL WAS RETAINED

We have previously looked to the Major Filers[3] Agreement when analyzing this fee.  Id. (citing Diet Drugs, 553 F. Supp. 2d at 482).  The Major Filers "were, in essence, the market for the Joint Fee Applicants' services."  Id. (citing Diet Drugs, 553 F. Supp. 2d at 482).  The Major Filers have stipulated that the fees awarded to Class Counsel should include the interest earned in the Fund A Escrow Account.  Id.  The instant petition seeks an award of an additional portion of the interest

---

3.  The Major Filers:
> (1) represent[ed] about 97% of the Class Members who exercised Downstream Opt-Outs and filed lawsuits subject to the MDL 1203 fee assessments; (2) filed 26,000 Level I and Level II Matrix Benefit claims that became Category One Claims under the Seventh Amendment; (3) represented about half of the Class Members who have had Matrix Benefits claims processed by the Trust.

Diet Drugs, 553 F. Supp. 2d at 482.

earned by this account and is thus consistent with the Major
Filers Agreement.  Because the Major Filers Agreement continues
to serve as the best predictor of what would have been negotiated
through a private contingent fee agreement, this factor weighs in
favor of granting the requested award.

### J.   INNOVATIVE TERMS OF THE SETTLEMENT

As we stated previously in connection with the 2007-
2009 fee petition, "we cannot deny that the Settlement Agreement
provisions [...] were indeed innovative at the time they were
drafted and have already served as models for other cases."  Id.
at *13 (citing Diet Drugs, 553 F. Supp. 2d at 485).  The 2013
Joint Class Fee Applicants have not had the opportunity in 2013
to craft any additional innovative Settlement Agreement terms.
Although we continue to recognize the past innovation of the
Applicants, this factor does not weigh strongly against or in
favor of the requested award.

### III.   THE LODESTAR CROSS-CHECK

We must next perform a lodestar cross-check of the fee
award generated using the percentage-of-recovery method to ensure
that the 2013 Joint Class Fee Applicants will not receive a
windfall.  The "lodestar cross-check is performed by multiplying
the hours reasonably expended on the matter by the reasonable
hourly billing rate which then provides the court with the
'lodestar calculation.'"  Diet Drugs, 553 F. Supp. 2d at 485.
This number is divided into the proposed fee award.  The
resulting figure is the lodestar multiplier.  We must then

-13-

compare this number to lodestar multipliers in similar cases.
Id.

　　　　According to Mr. Winikur's Ninth Audit Report, the
lodestar value of this professional time expended by the 2013
Joint Class Fee Applicants, using the applicable 2013 billing
rates, is $1,026,425.  The requested fee of $1,026,425 divided by
this lodestar value yields a lodestar multiplier of 1.[4]  We
previously declined to apply a multiplier greater than 1 to the
2010 requested fee award.  See Diet Drugs, 2011 WL 2174611, at
*9.  Because the lodestar cross-check yields a multiplier of 1
and based on application of the Gunter/Prudential factors, we
find that the requested 2013 award is reasonable.

### IV.  **THE AWARD OF FEES FROM THE MDL 1203 ACCOUNT**

　　　　The 2013 MDL Fee Applicant, Levin, Fishbein, Sedran &
Berman, also seeks an award of $944,700 from the MDL 1203 Fee and
Cost Account.  In 2013, there were 86 active civil actions
pending in MDL 1203 which had not been terminated or remanded
back to their respective transferor courts.  During 2013,
plaintiffs obtained recoveries in MDL 1203 and coordinated state-
court cases that were subject to assessment in the amount of
$1,926,646.25.  This produced additional deposits into the MDL

---

4.  We have previously recognized that the manner in which the
Joint Fee Applicants were required to maintain and report time
does not allow the attorneys to distinguish between time spent
pursuing class activities and that spent working on Opt-Out and
PPH cases.  Diet Drugs, 553 F. Supp. 2d at 487.  As a result, the
multiplier here is "artificially low" and could be as high as
1.9.

-14-

1203 Account totaling only $114,367.93.  The lodestar value of
the services performed by Levin, Fishbein, Sedran & Berman during
2013 totaled $944,700.

The 2013 MDL Fee Applicant also continued to:  (1)
maintain a database to track MDL 1203 actions; (2) update the MDL
Trial Package; (3) send copies of the Trial Package to attorneys
to assist them in preparing Diet Drug cases; (4) explain multi-
district litigation practice and procedure to attorneys; and (5)
help to litigate PPH claims against Wyeth.

Our Court of Appeals has declared that the standard for
awarding to court-appointed management committees a portion of
the claim recoveries earned is as follows:

> Under the common benefit doctrine, an award
> of attorney's fees is appropriate where the
> plaintiff's successful litigation confers a
> substantial benefit on the members of an
> ascertainable class, and where the court's
> jurisdiction over the subject matter of the
> suit makes possible an award that will
> operate to spread the costs proportionately
> among them.  Thus, in order to obtain common
> benefit fees, an attorney must confer a
> substantial benefit to members of an
> ascertainable class, and the court must
> ensure that the costs are proportionately
> spread among that class.

Diet Drugs, 582 F.3d at 546 (internal citations omitted).

As we recognized previously, the administrative
functions performed by the PLC have conferred a substantial
benefit on the individuals in MDL 1203.  See Diet Drugs, 2010 WL
3292787, at *14.  The PLC has "helped to administer the MDL by
tracking individual cases, distributing court orders, and serving

-15-

as a repository of information concerning the litigation and settlement" to the benefit of these individuals.  <u>Id.</u> (citing <u>Diet Drugs</u>, 582 F.3d at 548).

Although the requested fee award is greater than the amount of new assessments paid into the MDL 1203 Account, this amount is roughly equal to the amount per year previously awarded by the court for work performed since 2008.  In addition, we note that the fee amount requested yields a lodestar multiplier of 1. Accordingly, we will grant the 2013 MDL Fee Applicant, Levin, Fishbein, Sedran & Berman, an award of $944,700 from the MDL 1203 Fee and Cost Account.

### V.   THE AWARD AND ALLOCATION OF EXPENSE REIMBURSEMENTS

The 2013 Joint Fee Applicants incurred a total of $58,336.37 in properly documented expenses for the common benefit of the class and the plaintiffs in MDL 1203 in 2012.  We have already entered orders authorizing reimbursement of $49,461.73 of these expenses from the MDL 1203 Account.  The remaining balance represents expenses that were advanced by the following 2013 Joint Fee Applicants in the following amounts:  (1) $7,790.07 from Levin, Fishbein, Sedran & Berman and (2) $1,084.57 from Cummings, Cummings & Dudenhefer.

In PTO No. 7763, we approved a stipulation between Wyeth and Class Counsel that at least 50% of the expenses from the funds on deposit in the MDL 1203 Fee and Cost Account and/or advanced by the 2013 Joint Fee Applicants should be paid by the

Settlement Fund as they were expended for the common benefit of the class.

Therefore, we will enter an order directing that the Settlement Fund reimburse the MDL 1203 Fee and Cost Account in the amount of $24,730.86, which represents 50% of the expenses paid from the MDL 1203 Fee and Cost Account during 2013. We will also order that 50% of the out-of-pocket costs advanced by the 2013 Joint Fee Applicants be reimbursed to them from the MDL 1203 Fee and Cost Account and the remaining 50% be reimbursed from the Settlement Fund.

### VI. CONCLUSION

In conclusion, we will award attorneys' fees and expenses for work performed in 2013 as set forth in the attached pretrial order.

-17-